# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff/Respondent

vs.
                                        No. CIV 19-1201 JB\CG
                                        No. CR 95-0014 JB

 SEBASTIAN LEIGH ECCLESTON,

       Defendant/Petitioner.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for Rehearing, filed August 17, 2020 (CIV. Doc. 41); (ii) the Defendant's Motion for Rehearing Addendum, filed August 17, 2020 (CIV. Doc. 40)("Addendum to Motion for Rehearing I"); (iii) the Defendant's Motion for Addendum to Motion for Rehearing, filed August 25, 2020 (CIV. Doc. 42)("Addendum to Motion for Rehearing II"); (iv) the Defendant's Motion to Alter or Amend the Judgment and, in the Alternative, for a Certificate of Appealability, filed August 25, 2020 (CIV. Doc. 43)("Motion to Reconsider"); (v) the Defendant's Addendum to Motion for Rehearing 2255, filed August 31, 2020 (CIV. Doc. 49)("Addendum to Motion for Rehearing III"); and (vi) the Defendant's Addendum to Motion for Rehearing Pursuant to Rule 59(e), filed August 31, 2020 (CIV. Doc. 50)("Addendum to Motion for Rehearing IV").[1]  The Court held a hearing on October 21, 2020. <u>See</u> Notice of Hearing, filed August 28, 2020 (CIV. Doc. 46)(text only).  The Defendant Sebastian Leigh Eccleston's asks the Court to reconsider its Memorandum Opinion and Order, No. CIV 19-1201 JB\CG, 2020 WL 4336361, filed July 28, 2020 (CIV. Doc. 33)(Browning, J.)("MOO"), or

---

[1]Defendant Sebastian Leigh Eccleston's counsel filed his Motion to Reconsider, but Eccleston, acting pro se, filed the other five motions.

in the alternative, to grant a Certificate of Appealability.  See Motion to Reconsider at 1.   The primary issues are: (i) whether the Court erred in placing the burden of proof on Eccleston, because the law regarding the residual clauses in 18 U.S.C. § 924(e) and 18 U.S.C. § 924(c) is not interchangeable; (ii) whether the Court erred in finding the Hobbs Act, 18 U.S.C. § 1951(a), is divisible and therefore subject to the modified categorical approach, because § 1951(a) is made up of means, not elements; (iii) whether attempted Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(A)(3)'s requirement that it have "an element" of "use, attempted use, or threatened use of physical force against the person or property of another"; (iv) whether the Court erred when it considered the factual basis for Eccleston's sentence to determine that Eccleston was convicted of substantive Hobbs Act robbery, 18 U.S.C. § § 1951(a); and (v) whether, in the alternative, the Court should grant Eccleston's request for a Certificate of Appealability, because Eccleston has made a substantial showing that jurists of reason could disagree with the Court's resolution of Eccleston's constitutional claims.  See Motion to Reconsider at 6-31.  The Court concludes that (i) it did not err in placing the burden of proof on Eccleston to prove that it is more likely than not that his 18 U.S.C. § 924(c) conviction rests on an invalid predicate; (ii) the Hobbs Act, 18 U.S.C. § 1951(a), is comprised of elements, meaning it is divisible, and therefore subject to the modified categorical approach; (iii) even if attempted Hobbs Act robbery is not a crime of violence, Eccleston was convicted of substantive Hobbs Act robbery; (iv) the Court did not err when it considered the factual basis for Eccleston's sentence to determine that Eccleston was convicted of substantive Hobbs Act robbery; and (v) the Court will not grant a Certificate of Appeal, because jurists of reason would not disagree with the Court's resolution of Eccleston's constitutional claims.  Accordingly, the Court denies Eccleston's (i) Motion for Rehearing; (ii) requests in the Addendum to Motion for Rehearing I; (iii) requests in the Addendum to Motion for

Rehearing II; (iv) Motion to Reconsider; (v) requests in the Addendum to Motion for Rehearing III; (vi) requests in the Addendum to Motion for Rehearing IV; and (vii) request for a certificate of appealability.

## FACTUAL BACKGROUND

The Court previously has stated the factual background in its MOO, 2020 WL 4336361.

The Court below gives that recitation:

> The Court takes its facts from the Presentence Report.  On December 15, 1994, Eccleston and his codefandant, Ronald Marvin Martinez, were in a Motel 6 Parking lot in Albuquerque, New Mexico, when they confronted Robert Boyle as he was exiting his car.  See PSR ¶ 9, at 3.  Martinez approached Boyle, "racked the action of a shotgun, pointed the weapon at the victim's head and ordered him out of the vehicle."  PSR ¶ 9, at 3.  Boyle heard another sound towards the car's rear that he "associated with a firearm being chambered" and, when Boyle turned, he saw Eccleston pointing a second firearm at him.  PSR ¶ 9, at 3.  After Boyle fled, Eccleston and Martinez both got into Boyle's car and drove away.  See PSR ¶ 9, at 3.
>
> Shortly thereafter, Albuquerque Police Department ("APD") officers responded to an armed-robbery call at another Albuquerque motel.  See PSR ¶ 10, at 3.  The victims, David Henkemeyer and Karen Kuepers, told police that they were in the motel's parking lot when a white car with two passengers approached them and demanded their money.  See PSR ¶ 10, at 3.  Henkemeyer later identified Eccleston and said that Eccleston held and pointed a firearm at Kuepers as Eccleston took her purse, and at Henkemeyer as Eccleston took his wallet.  See PSR ¶ 10, at 4.
>
> While APD officers were taking the armed robbery report, Bernalillo County Sheriff's Office ("BCSO") deputies attempted to stop a vehicle that matched Henkemeyer's description of Martinez and Eccleston's vehicle.  See PSR ¶ 11, at 4.  After a "high speed pursuit," the vehicle crashed, and the occupants fled.  PSR ¶ 11, at 4.  BCSO deputies apprehended Martinez, but Eccleston escaped.  See PSR ¶ 11, at 4.  APD officers took all three robbery victims to the crash site, where the victims "positively identified the vehicle" and found some of their property in the vehicle.  PSR ¶ 11, at 4.  BCSO deputies found a shotgun and eight twelve-gauge shotgun rounds in the crashed vehicle.  See PSR ¶ 12, at 4.  Boyle also positively identified Martinez.  See PSR ¶ 12, at 4.  Federal agents later interviewed the sales manager for the dealership that sold the car that Martinez and Eccleston stole, and the sales manager confirmed that the vehicle was not manufactured in the State of New Mexico.  See PSR ¶ 15, at 5.

A federal Grand Jury issued a ten-count Second Superseding Indictment on July 6, 1995.  See Second Superseding Indictment at 1, filed July 7, 1995 (Cr. Doc. 34)("Indictment").   The Indictment charges Eccleston with: (i) carjacking in violation of 18 U.S.C. § 2119(1), and aiding and abetting carjacking in violation of 18 U.S.C. § 2; (ii) three counts of using and carrying a firearm during the carjacking in violation of 18 U.S.C. § 924(c); (iii) five counts of interference with commerce by threats of violence against Boyle in violation of 18 U.S.C. 1951(a), and aiding and abetting the interference in violation of 18 U.S.C. § 2; and (iv) against Martinez only, possession of an unregistered firearm in violation of  26 U.S.C. §§ 5861(d) and 5485(a)(2).  See PSR ¶ 3, at 2.

On May 3, 1996, Eccleston pled guilty to four counts: (i) carjacking in violation of 18 U.S.C. § 2119(1), and aiding and abetting in violation of 18 U.S.C. § 2; (ii) "us[ing and carry[ing] a firearm . . . during and in relation to a crime of violence," carjacking, in violation of 18 U.S.C.  §§ 924(c) and 2119(1), and aiding and abetting in violation of 18 U.S.C. § 2; (iii) "obstruct[ing], delay[ing] and affect[ing], and attempt[ing] and conspir[ing] to obstruct, delay and affect commerce . . . by robbery . . . in that [Eccleston] did unlawfully take and obtain personal property" from Karen Kuepers "by means of actual and threatened violence, and fear of injury, in violation of 18 U.S.C. 1951(a) and aiding and abetting in violation of 18 U.S.C. 2"; and (iv) "us[ing[ and carry[ing] a firearm . . . during and in relation to a crime of violence," in violation of 18 U.S.C. §§ 1951(a) and 924(c) and aiding and abetting in violation of 18 U.S.C. § 2.  Plea Agreement ¶ 7, at 4-5, filed May 3, 1996 (Cr. Doc. 70).  See PSR ¶ 3, at 2.

MOO, 2020 WL 4336361, at *1-3.

## PROCEDURAL HISTORY

The Court previously has summarized most of the procedural history in its MOO.  See 2020 WL 4336361.  The Court below gives that recitation.  The Court also includes footnotes from the MOO.  The MOO summarizes:

After sentencing, Eccleston extensively litigated this case in both direct and collateral appeals.[2]  The Court summarizes those aspects of this case's procedural

---

[2]The Honorable Robert Brack, United States District Judge for the District of New Mexico, recently summarized Eccleston's litigation while denying Eccleston's motion to correct manifest injustice:

On May 4, 2001, Eccleston filed his first motion to vacate or correct sentence pursuant to 28 U.S.C. § 2255.  (CR Doc. 93); Eccleston v. United States, 01-CV-00500-LH-WD.   Eccleston argued his federal sentences should run concurrently with his state sentence for murder.  The Court dismissed his federal

history that are relevant to Eccleston's Motion.  The PSR, his sentencing, and the United States Court of Appeals for the Tenth Circuit's review of Eccleston's sentence all bear on the issue at hand: whether, in light of <u>Davis v. United States,</u> Eccleston's Count V Hobbs Act conviction is a crime a violence such that Eccleston's conviction and sentence for Count VI is constitutional.

1.      **The Plea Hearing.**

On May 3, 1996, the Honorable LeRoy Hansen, then-United States District Judge for the United States District Court for the District of New Mexico, accepted Eccleston's Plea Agreement.  <u>See</u> Transcript of Proceedings at 1:1 (taken May 3, 1996), filed September 29, 1996 (Cr. Doc. 279)("Plea Tr.").  After ensuring that Eccleston reviewed and understood the Plea Agreement, Judge Hansen stated:

> [T]he government has an obligation to prove . . . that on or about December 15th, 1994, in Albuquerque, . . . New Mexico, that you . . . did unlawfully, in Count V, obstruct, delay, and affect and attempt and conspire to delay, and affect commerce as that term is defined in 18 U.S. Code, Section 1951, and the movement of articles and commodities in such commerce by robbery, as that term is defined therein that you did unlawfully take and obtain personal property consisting of jewelry, personal checks, a purse, a wallet, a camera, and credit cards from the person and in the presence of Karen Kuepers against her will by means of actual and threatened force, violence, and fear of injury, immediate and future, to her

---

§ 2255 motion because it was barred by the one-year statute of limitations.  (CR Doc. 96.)  In 2003, Eccleston attempted to raise the same concurrent-sentence argument in a 28 U.S.C. § 2254 habeas petition.  <u>See</u> <u>Eccleston v. Master</u>, 03-cv-00406 BB-DJS.  However, that proceeding was also dismissed as time-barred.  (Docs. 19; 21 in 03-cv-00406 BB-DJS.)

Between 2009 and 2014, Eccleston filed at least five petitions in the Tenth Circuit seeking permission to file a second or successive § 2255 motion.  <u>See</u> <u>In re Eccleston</u>, No. 09-2022 (10th Cir. Jan. 23, 2009); <u>In Re Eccleston</u>, No. 10-2231 (10th Cir. Oct. 26, 2010); <u>In re: Sebastian L. Eccleston</u>, No. 10-2256 (10th Cir. Nov. 30, 2010); <u>In re: Eccleston</u>, No. 11-2215 (10th Cir. Nov. 1, 2011); <u>In re Eccleston</u>, No. 14-2092 (10th Cir. June 5, 2014).  Some motions were construed under 28 U.S.C. § 2241, <u>see</u>, <u>e.g.</u>, No. 09-2022, but regardless of the construction, each motion was denied.  <u>Id.</u>  Eccleston also filed various motions in this Court under § 2255 and 18 U.S.C. § 3582.  (CR Docs. 212; 218; 252.)  To date, the Court has refused to alter his sentence.  (CR Doc. 255.)

<u>Eccleston v. United States</u>, No. CIV 19-538 RB\CG, 2020 WL 953792, at *1 (D.N.M. Feb. 27, 2020)(Brack, J.).

> person and a person in her company, that is, the threat that if Karen
> Kuepers did not give defendant property, you were going to injure
> or kill her and David Henkemeyer, and in Count VI that you did use
> and carry a firearm made from a Remington Shotgun . . . , which
> weapon as modified has a barrel of less than 18 inches in length,
> during and in relation to a crime of violence for which you may be
> prosecuted in a court of the United States, namely, the charge in
> Count V that I have reviewed with you.

Plea Tr. at 10:10-11:20 (Hansen, J.).  Eccleston responded that, after the carjacking, the car did not have any gas, so he

> went to another motel, and that's where I got out with a pistol and
> held up a lady and a guy and asked them for the guy's wallet and the
> lady's purse and -- but I didn't have a Remington shotgun in my
> possession as it says here.  I had a pistol, an automatic pistol.  And
> that's what happened.  That's what I'm pleading to.

Plea Tr. at 12:10-15 (Eccleston).  Judge Hansen then asked Eccleston if he "did take, then, the personal property from the two people at the second motel?"  Plea Tr. at 13:19-20 (Hansen, J.).  Eccleston responded affirmatively.  See Plea Tr. at 13:22 (Eccleston).

Judge Hansen then asked the United States what it would prove at trial.  See Plea Tr. at 14:3 (Hansen, J.).  The United States responded that it could prove at trial that, about a half-hour after the carjacking,

> two Oregon residents, . . . Kuepers and . . . Henkemeyer, were
> robbed at gun point in the parking lot of another motel.  Ms. Kuepers
> had an individual identified as Mr. Martinez, Mr. Eccleston's co-
> defendant, come up to her, point a sawed-off shotgun at her,
> chamber a[ ]round once again and take her purse, telling her to give
> him her purse.  The second individual, who, in this case, was
> positively identified as Mr. Eccleston, went up to Ms. Kuepers'
> companion, Mr. Henkemeyer, took his wallet at gunpoint at the
> same time that his companion and co-defendant, Mr. Martinez, got
> back into the white rental car and drove off.

Plea Tr. at 14:24-15:11 (Kimball).  The United States continued: "For all of these reasons, the United States contends that we could prove that Mr. Eccleston either committed or aided and abetted in the commission of these crimes within the meaning of Section 2 of Title 18, United States Code."  Plea Tr. at 16:15-19 (Kimball).  Eccleston agreed with the United States' characterization of the offenses.  See Plea Tr. at 16:20-22 (Hansen, J; Eccleston).  Eccleston then pled guilty to Counts I, II, V, and VI.  See Plea Tr. at 16:23-25 (Hansen, J.; Eccleston).  Judge Hansen accepted Eccleston's guilty plea.  See Plea Tr. at 17:9 (Hansen, J.).

**2.      The PSR.**

The United States Probation Office ("USPO") calculated Eccleston's base offense level as 27 and his criminal history category as III, resulting in a United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") imprisonment range of 87 to 108 months.  See PSR ¶¶ 80-90, at 19.  The USPO noted, however, that, as to Count II, there was a mandatory 120-month consecutive sentence, and, as to Count VI, there was a mandatory 240-month consecutive sentence, because Count V is Eccleston's second or successive conviction for using a firearm during a crime of violence.  See PSR ¶ 88, at 19.  Accordingly, a thirty-year period of imprisonment would have run consecutively to the Guidelines range, thus establishing a Guidelines range of 447 to 468 months.  See PSR ¶ 88, at 19.

### 3.    **The Objections.**

Eccleston objected to the PSR's calculation of the § 924(c) mandatory consecutive sentences.  See Defendant Eccleston's Objections to Pre-Sentence Report and Supporting Memorandum of Points and Authorities at 1, filed August 28, 1996 (Cr. Doc. 79)("Objections").  Eccleston first clarified that he did not object to the information that the PSR contains, and he acknowledged that, "[g]iven caselaw and the posture of this case, . . . the [USPO] Officer preparing the report could have arrived at no other conclusion."  Objections at 1.  Eccleston contended, however, that "recent Supreme Court caselaw compels a reexamination of previous Tenth Circuit caselaw regarding sentencing on the Section 924(c) Counts." Objections at 1.  As for his § 924(c) conviction regarding the carjacking offense as Count II charges, Eccleston stated that Martinez used a shotgun to effect the carjacking and that Eccleston was an "accessary to the carjacking by Martinez, and that he used a firearm."  Objections at 2.  Relying on Bailey v. United States, 516 U.S. 137 (1995), Eccleston maintained that, if he did not use or actively employ a sawed-off shotgun during and in relation to the carjacking, he may not be sentenced to the ten-year mandatory minimum under 18 U.S.C. § 924(c)(1).  See Objections at 2 (citing 18 U.S.C. § 924(c)(1)).[3]  Eccleston asserted, alternatively, that, if his Count II conviction "is pursuant to accessory liability," his Count VI § 924(c) conviction "may be construed as a second or subsequent conviction for sentencing

---

[3]In 1996, § 924(c)(1) provided:

Whoever, during and in relation to any crime of violence . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . , be sentenced to imprisonment for five years, and if the firearm is a . . . short-barreled shotgun . . . , to imprisonment for ten years. . . .  In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.

18 U.S.C. § 924(c)(1) (1996).

purposes." Objections at 3. To support this argument, Eccleston distinguished <u>Deal v. United States</u>, 508 U.S. 129 (1993), and <u>United States v. Abreu</u>, 962 F.2d 1447 (10th Cir. 1992), by asserting that the defendants in those case were principals rather than accessories. <u>See</u> Objections at 3. Eccleston thus asserted that, if he "used" a pistol in the carjacking, he should "receive a five year, not a ten year, enhancement pursuant to the Count II conviction." Objections at 3-4. Eccleston alternatively argued that, if his Count II conviction is founded on accessory liability and for use of a sawed-off shotgun, "this factual dissimilarity from <u>Deal</u> would permit this court to distinguish the facts in <u>Deal</u> and find that Defendant's conviction of Count VI is a first conviction and not subject to the twenty-year mandatory sentence, but to the five-year sentence for another first conviction." Objections at 4.

> If, in order for § 924(c)(1) liability to attach, the defendant must actively employ a firearm, and if Defendant Eccleston did not actively employ the shotgun but was convicted of such employment as an accessory to Martinez' active employment, it is a violation of due process to sentence him to the enhanced "second or subsequent conviction" penalty of § 924(c)(1) in light of the <u>Bailey[ v. United States]</u> test.

Objections at 4 (quoting 18 U.S.C. § 924(c)(1)).

## 4.    <u>The Sentencing</u>.

On October 29, 1996, Judge Hansen sentenced Eccleston. <u>See</u> Transcript of Proceedings at 3:2 (taken October 29, 1996)(Hansen, J.), filed February 5, 1997 (Cr. Doc. 267)("Sentencing Tr."). Eccleston did not object to the PSR's factual findings but rather maintained his § 924(c) argument. <u>See</u> Sentencing Tr. at 3:3-8 (Hansen, J.; Eccleston; Storment). Eccleston acknowledged, however, "that, . . . given the state of the case law, this Court can[not] do anything other than what was recommended in the presentence report as to the 924(c) counts." Sentencing Tr. at 7:3-6 (Storment). The United States responded that Martinez' racking and brandishing the shotgun at Boyle "fits exactly the talk about brandishing or using a firearm that is in the <u>Bailey</u> decision." Sentencing Tr. at 7:5-7 (Kimball). The United States further asserted that, "while [Martinez] was holding a gun on these people, [Eccleston] was aiding and abetting his action, first in carjacking the car from Mr. Boyle, and second, in stealing the belongings of the two tourists[.]" Sentencing Tr. at 7:6-9 (Kimball). The United States thus argued that, "even after <u>Bailey</u>, when you're talking about using a firearm, you're still subject to the penalties of 924(c) if you aid and abet somebody who used a firearm and you knew it." Sentencing Tr. at 8:16-19 (Kimball). The United States asserted that Eccleston admitted to knowing about the firearms, thus satisfying the United States' asserted knowledge test for aiding and abetting. <u>See</u> Sentencing Tr. at 8:22-24 (Kimball).

Judge Hansen then accepted the PSR's factual findings and concluded that, as to Counts I and V, the Guidelines imprisonment range is 57 to 71 months, and

that mandatory sentences of 127 months and 240 months applied to Counts II and VI, respectively.  See Sentencing Tr. at 13:6-9 (Hansen, J.).  Judge Hansen applied these latter sentences to run consecutively to each other and to the Counts I and V sentences.  See Sentencing Tr. at 13:9-11 (Hansen, J.).  Judge Hansen took "further judicial notice that the defendant committed two separate violent acts while armed with a handgun."  Sentencing Tr. at 13:13-15 (Hansen, J.).  Judge Hansen then sentenced Eccleston to 417 months imprisonment.  See Sentencing Tr. at 14:4-5 (Hansen, J.).[4]

**5.    The Direct Appeal.**

The Tenth Circuit affirmed Eccleston's sentence.  See United States v. Eccleston, 132 F.3d 43, 1997 WL 774758, at *1 (10th Cir. 1997)(unpublished table opinion).  Eccleston's primary argument was that he was not subject to the mandatory ten-year sentence for Count II for using or carrying a sawed-off shotgun in relation to a crime of violence, because, as an accomplice, he did not actively employ the shotgun.  See United States v. Eccleston, 1997 WL 774758, at *1.  The Tenth Circuit rejected Eccleston's argument and concluded that the caselaw provided no support for Eccleston's argument.  See 1997 WL 774758, at *1.  Eccleston also argued that Judge Hansen erred in applying the mandatory twenty-year sentence for Count VI, because the same Indictment charges both the predicate § 924(c) violation -- Count I -- and the successive § 924(c) violation -- Count V -- and because the Indictment charges him only as an accessory in the predicate § 924(c) violation.  See 1997 WL 774758, at *2.  The Tenth Circuit also rejected this argument, relying on Deal v. United States and United States v. Abreu.  See 1997 WL 774758, at *2.  The Tenth Circuit noted that, in Deal v. United States, the Supreme Court held that district courts may apply the mandatory twenty-year sentence for the second or subsequent § 924(c) violation "even though the first sentence has not become final."  1997 WL 774758, at *2.[5]  The Tenth Circuit also

---

[4]Although not referenced at the sentencing hearing, the Tenth Circuit has concluded that Eccleston's federal sentence runs consecutively with a state life sentence for first degree murder. See United States v. Eccleston, 545 F. App'x 774, 775 (10th Cir. 2013)(unpublished), as amended on denial of reh'g and reh'g en banc (Dec. 20, 2013).  Although Judge Hansen issued Eccleston's federal sentence before Eccleston received his state sentence, the State of New Mexico had primary jurisdiction over Eccleston, because it was first to take him into custody following his arrest.  See United States v. Eccleston, 545 F. App'x at 775.  Eccleston is thus serving a state sentence of life imprisonment plus nine years, consecutively to his federal sentence, for a murder that Eccleston committed the day before the federal offense at issue in this Motion.  See United States v. Eccleston, 545 F. App'x at 775, 777.

[5]In 2018, Congress amended § 924(c) to provide that the twenty-year minimum applies only when the predicate § 924(c) conviction has already "become final," such that the Tenth Circuit's statement no longer correctly describes § 924(c) prosecutions.  Pub. L. No. 115-391, § 403(a), 132 Stat. 5221.

disagreed with Eccleston's accessory argument, noting that 18 U.S.C. § 2 provides that accessories may be punished as principals.  See 1997 WL 774758, at *2.  The Tenth Circuit thus affirmed Eccleston's sentence.  See 1997 WL 774758, at *3.

### 6.      **The Motion.**[6]

Eccleston first contends that the Supreme Court, in <u>Davis v. United States</u>, held that § 924(c)(3)(B) is unconstitutionally vague.  See Motion [to Vacate Conviction Pursuant to 28 U.S.C. § 2255 at 2, filed December 20, 2020 (CIV. Doc. 1)("Motion to Vacate")] (citing <u>Davis v. United States</u>, 139 S. Ct. at 2336).  Eccleston further notes that the Tenth Circuit has determined that <u>United States v. Davis</u>' holding "'is a new constitutional rule that is retroactive on collateral review.'"  Motion [to Vacate] at 2 (quoting <u>United States v. Bowen</u>, 936 F.3d 1091, 1097-98 (10th Cir. 2019)).  Eccleston thus contends that his conviction for Count VI "may be sustained only if the crime of violence on which it is predicated 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'"  Motion [to Vacate] at 3 (quoting 18 U.S.C. § 924(c)(3)(A)).  Eccleston avers that Count VI "referred to three separate crimes, one of which is no longer a constitutionally valid predicate," and so the Court must vacate Eccleston's conviction on Count VI, because the record does not disclose with certainty the crime to which Count VI refers.  Motion [to Vacate] at 3.

Eccleston contends that the Court should apply the modified categorical approach to determine whether Count VI is permissibly predicated on a crime of violence, because the statutory violation that Count VI charges is "divisible."  Motion [to Vacate] at 3.  Eccleston asserts that, under this approach, the reviewing court "'looks to a limited class of documents (for example, the indictment, jury instructions or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.'"  Motion [to Vacate] at 3 (quoting <u>Mathis v. United States</u>, 136 S. Ct. 2243, 2249 (2016)).  Eccleston avers, however, that the modified categorical approach restricts the Court's assessment to Count VI's elements rather than to the facts on which Count VI is based.  See Motion [to Vacate] at 3-4 (citing <u>Descamps v. United States</u>, 570 U.S. 254, 262-63 (2013)).  Eccleston further contends that, under the modified categorical approach, "a court cannot lawfully make a crime of violence determination unless the limited class of available documents establish with 'certainty' that the defendant 'necessarily' pled guilty to elements constituting a crime of violence."  Motion [to Vacate] at 4 (quoting <u>Shepard v. United States</u>, 544 U.S. 13, 21 (2005)).

Eccleston argues that Count VI could be predicated on conspiracy to commit robbery as the Hobbs Act, 18 U.S.C. § 1951, defines.  See Motion [to Vacate] at 4.  Eccleston notes that Count V, which is Count VI's predicate offense,

---

[6]On October 25, 2019, the Tenth Circuit, based on the United States' stipulation, granted Eccleston leave to file a second or successive § 2255 motion.  See Order at 1, filed October 25, 2019 (Cr. Doc. 299).

charges Eccleston with unlawfully "obstruct[ing] delay[ing] and affect[ing], <u>and</u> attempt[ing] <u>and</u> conspir[ing] to obstruct, delay and affect commerce[.]" Motion [to Vacate] at 4 (quoting Indictment ¶ 5, at 3)(emphasis and alterations in Motion but not in Indictment). Eccleston accordingly asserts that Count VI charges him with three separate crimes: (i) "substantive" Hobbs Act robbery; (ii) attempt to commit Hobbs Act robbery; and (iii) conspiracy to commit Hobbs Act robbery. Motion [to Vacate] at 4 (citing <u>United States v. Washington</u>, 653 1251, 1263 n.12 (10th Cir. 2011)("[W]hen the government uses both the terms conspiracy and attempt in a single count [alleging a Hobbs Act violation], it has improperly charged two separate offenses in the same count."); <u>United States v. Starks</u>, 515 F.2d 112, 116 (3d Cir. 1975); <u>United States v. Silva</u>, 889 F.3d 704, 717 (10th Cir. 2018)).

Eccleston acknowledges that Hobbs Act robbery and attempted Hobbs Act robbery are "categorically" crimes of violence. Motion [to Vacate] at 5 (citing <u>United States v. Melgar-Cabrera</u>, 892 F.3d 1053, 1065-66 (10th Cir. 2018)). Eccleston asserts, however, that conspiracy to commit Hobbs Act robbery "does not categorically fall within § 924(c)(3)(A)'s definition of a crime of violence." Motion [to Vacate] at 5 (citing <u>United States v. Brown</u>, 942 F.3d 1069, 1075 (11th Cir. 2019)(concluding that conspiracy to commit Hobbs Act robbery is not a crime of violence as § 924(c)(3)(A) defines)). Eccleston avers that the relevant documents -- namely, the PSR and the Plea Agreement -- do not indicate "with certainty" the precise crime on which Count VI relies. Motion [to Vacate] at 5-6 (citing Plea Agreement ¶ 4(c), at 4 ("'On or about December 15, 1994, . . . the defendant . . . did unlawfully obstruct, delay and affect, *and* attempt *and* conspire to obstruct delay and affect commerce . . . by robbery[.]'" (emphasis in Motion but not in Plea Agreement))). Eccleston avers that, when both the Indictment and the Plea Agreement allege facts that "could potentially describe a completed robbery, they do not preclude a conspiracy." Motion [to Vacate] at 6 (citing <u>United States v. Horse Looking</u>, 828 F.3d 744, 748 (8th Cir. 2016)("'The plea colloquy establishes that Horse Looking *could have been* convicted [of a valid predicate,] . . . [b]ut the colloquy does not exclude the possibility that Horse Looking was convicted [of an invalid predicate.]'" (emphasis and alterations in Motion and not in <u>United States v. Horse Looking</u>))). Eccleston further asserts that the proper inquiry focuses not on whether a defendant admitted facts that could support a crime of violence, but rather whether the record documents indicate that the conviction's statutory offense is a crime of violence. <u>See</u> Motion [to Vacate] at 6 (citing <u>United States v. Kennedy</u>, 881 F.3d 14, 21 (1st Cir. 2018)). Eccleston thus asserts that, while the record could support a valid conviction for a crime of violence, "what is missing here 'is *any specificity* as to which offense was charged and admitted.'" Motion [to Vacate] at 6 (quoting <u>United States v. Kennedy</u>, 881 F.3d at 21 (emphasis in Motion and not in <u>United States v. Kennedy</u>)). Eccleston avers that this "'elements-focus avoids unfairness to defendants,'" so the Court must assume that he pled guilty to "'the least serious' of the disjunctive elements of the statute.'" Motion [to Vacate] at 6-7 (first quoting <u>Mathis v. United States</u>, 136 S. Ct at 2253, and then quoting <u>United States v. Chapman</u>, 666 F.3d 220, 228

- 11 -

(4th Cir. 2012)).  Eccleston accordingly avers that, under the modified categorical approach, the Court should conclude that Eccleston pled guilty to using and carrying a firearm during and in relation to conspiring to commit Hobbs Act robbery.  See Motion [to Vacate] at 7.  Because conspiracy to commit Hobbs Act robbery "only qualifies as a crime of violence under the now defunct residual clause found at § 924(c)(3)(B), and not under the still valid force-clause found at § 924(c)(3)(A)," Eccleston contends that the Court must vacate his conviction for Count VI.  Motion [to Vacate] at 7 (quotation marks omitted).

## 7.    **The Response.**

The United States responds.  See United States' Response to Petitioner's Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255 at 1, filed April 17, 2020 (CIV. Doc. 11)("Response").  The United States asserts that Eccleston must prove that it "'was more likely than not' that a sentencing court relied on the now defunct residual clause at sentencing."  Response at 3 (quoting United States v. Driscoll, 892 F.3d 1127, 1138 (10th Cir. 2018), and citing Rodella v. United States, __ F. Supp. 3d __, 2020 WL l406389, at *11 (D.N.M. Jan. 23, 2020)(Browning, J.).  The United States contends that, if the record is ambiguous, the Court should: (i) look at the sentencing record to confirm that there is no mention of § 924(c)'s residual clause; and (ii) examine the "'relevant background legal environment' at the time of sentencing to determine whether the district would have *needed* to rely on the residual clause."  Response at 4 (emphasis in Response)(quoting United States v. Driscoll, 892 F.3d at 1132).

The United States agrees with Eccleston that conspiracy to commit Hobbs Act robbery is not a crime of violence.  See Response at 4 (citing Brown v. United States, 942 F.3d at 1075-76).  The United States also agrees that § 1951, which defines Hobbs Act Robbery, is divisible, but the United States attributes this divisibility to the statute's prohibition of both robbery and extortion.  See Response at 5 (citing 18 U.S.C. § 1951; United States v. O'Connor, 874 F.3d 1147, 1152 (10th Cir. 2017)).  The United States also agrees with Eccleston that the Court should use the modified categorical approach.  See Response at 6.

The United States avers that Eccleston was not convicted of conspiracy to commit Hobbs Act robbery.  See Response at 6.  The United States first asserts that conspiracy "requires additional evidence to include the existence of an agreement."  Response at 6 (citing United States v. Brown, 942 F.3d at 1075).  The United States acknowledges that the Indictment and the Plea Agreement refer to conspiracy, because both "incorporate the entire charging language of 18 U.S.C. § 1951(a)."  Response at 7.  The United States contends, however, that both the Plea Agreement and the PSR specify that Eccleston either committed Hobbs Act robbery or aided and abetted Hobbs Act robbery.  See Response at 7.  The United States further argues that the Plea Agreement and the PSR are "completely devoid of any specific language as to what would be required for an offense for Conspiracy to Commit Hobbs Act Robbery," such as allegations of agreement or of a conspiracy's

objective.  Response at 7-8.  Instead, the United States asserts that the Indictment and the Plea Agreement "contain[] the necessary element of substantive Hobbs Act Robbery: actual and threatened force, violence, and fear of injury."  Response at 8 (emphasis omitted).  The United States notes that, at the plea hearing, Eccleston told Judge Hansen that Eccleston committed the robbery that Count V alleges.  See Response at 8.  The United States further says that Judge Hansen did not ask Eccleston about an agreement "or otherwise . . . elicit details relating to elements specific to Conspiracy to Commit Hobs Act Robbery," and that the United States did not characterize Eccleston's offense as conspiracy.  Response at 8.  The United States thus avers that the record does not support that Eccleston was convicted of conspiracy to commit Hobbs Act robbery or that Eccleston's conviction "relied upon" § 924(c)'s residual clause.  Response at 9.  Accordingly, the United States asks that the Court deny the Motion.  See Response at 9.

**8.     The Reply.**

Eccleston replies.  See Reply to United States' Response to Petitioner's Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255, filed May 8, 2020 (CIV. Doc. 14)("Reply").  Eccleston first asserts that United States v. Driscoll "and its progeny" are inapposite.  Reply at 1.  Eccleston asserts that United States v. Driscoll provides that a defendant "'must prove that the sentencing court, more likely than not relied on the residual clause to enhance his sentence under the'" Armed Career Criminal Act, 18 U.S.C. § 924(e) (2012) ("ACCA").  Reply at 1 (quoting United States v. Driscoll, 892 F.3d at 1135).  Eccleston asserts that "such a rule makes sense when the question is what prior conviction a district court relied on in determining a defendant's sentence," but that "it has no bearing where the issue is, as here, what crime was the defendant actually convicted of[.]"  Reply at 1 (citing United States v. Wilfong, 733 F. App'x 920, 926 (10th Cir. 2018)(unpublished)).  Eccleston acknowledges that the Court relied on United States v. Driscoll in deciding a similar § 2255 petition in Rodella v. United States, 2020 WL 406389, at *11, but Eccleston argues that "this analysis erroneously conflates two distinct concepts."  Reply at 2.  Eccleston asserts, "on the one hand," that § 924(e) is not a criminal statute for which a defendant may be charged and convicted, but rather § 924(e) provides a sentencing enhancement where a defendant is convicted of a separate, relevant offense.  Reply at 2.  Eccleston avers that, in that situation, a sentencing court determines whether a defendant's previous conviction of a separate crime triggers the ACCA enhancement.  See Reply at 3.  Eccleston argues, "on the other hand," that § 924(c) "is a distinct crime for which a defendant may be substantively charged and convicted."  Reply at 2 (citing United States v. Armour, 840 F.3d 904, 907 (7th Cir. 2016)("Armour was not sentenced under the ACCA enhancement under § 924(e) but was convicted under . . . .§ 924(c)(1)(A)."))  Eccleston contends that, in that situation, "there is nothing for the sentencing court [to] decide or rely on -- if convicted of a § 924(c) charge . . . , the sentencing court must sentence the defendant" to the appropriate consecutive sentence.  Reply at 2.  Eccleston thus asserts that, here, the issue is not whether

Judge Hansen relied on the residual clause when sentencing Eccleston, but rather "simply whether the predicate crime of violence underlying his § 924(c) conviction is valid after United States v. Davis." Reply at 2. Eccleston argues, in the alternative, that he satisfies the rule from United States v. Driscoll, because the record is ambiguous as to what crime serves as the predicate for his § 924(c) conviction, and this "ambiguity does not meet the Supreme Court's requirement of certainty." Reply at 3.

Eccleston next maintains that the Court should grant the Motion using the modified categorical approach. See Reply at 3. Eccleston notes the United States' agreement that the modified categorical test is proper here, but Eccleston asserts that the United States "ignores precedent repeatedly cautioning courts that the analysis is narrow and carefully circumscribed." Reply at 3. Eccleston contends that, under the modified categorical test, courts must determine not what the defendant and the sentencing judge understood as the plea's factual basis, but rather "'only to assess'" whether the defendant pled guilty to a valid predicate offense. Reply at 3 (quoting United States v. Descamps, 570 U.S. at 263)(emphasis in Reply but not in United States v. Descamps). Eccleston contends that the modified categorical approach serves solely to identify the predicate conviction's elements when a statute's disjunctive phrasing renders those elements opaque, and that the modified categorical approach is not a means to identify whether the predicate conviction rests on facts that could satisfy a valid offense's elements. See Reply at 3 (citing Mathis v. United States, 136 S. Ct. at 2253-54; United States v. Titties, 852 F.3d 1257, 1266 (10th Cir. 2017)). Eccleston contends that this approach avoids unfairness to the defendant, because, at "'trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law.'" Reply at 4 (quoting Mathis v. United States, 136 S. Ct. at 2253). Eccleston contends that the United States, in the Response, contravenes the modified categorical approach by looking at the sentencing record to determine the facts underlying Eccleston's conviction and not to see if the record sets forth Count V's elements. See Reply at 4.

Eccleston instead "maintains that, analyzed correctly, it is impossible to determine with the certainty required . . . whether his § 924(c) conviction rested on a valid or invalid predicate" offense. Reply at 4 (citing Sherpard v. United States, 544 U.S. 13 (2005); Taylor v. United States, 495 U.S. 575 (1990)). Eccleston avers that each of the documents on which Shepard v. United States permits the Court to rely in the modified categorical approach refers to conspiracy to commit Hobbs Act robbery. See Reply at 4 (citing Indictment ¶ 5, at 3 (charging Eccleston, in part, with conspiracy to commit Hobbs Act robbery); Plea Agreement ¶ 7(c), at 4 (admitting, in part, to conspiracy to commit Hobbs Act robbery)). Eccleston also notes that the Plea Agreement does not list each admitted offense's elements, and Eccleston asserts that this omission further obscures the offense to which he pled. See Reply at 4. Eccleston further notes that, at the plea colloquy, Judge Hansen lists conspiracy to commit Hobbs Act robbery among other Hobbs Act offenses, and that Judge Hansen did not "inform Mr. Eccleston of the specific elements of

the crime to which he was pleading guilty." Reply at 4-5 (citing Plea Tr. at 10:20-11:8 (Hansen, J.)).   Eccleston thus contends that, because the record does not establish the elements of the Count V offense to which Eccleston pled guilty, it is impossible to determine with certainty whether Count VI is based on a valid predicate offense. See Reply at 5.

Eccleston maintains that this impossibility remains even if the Court considers the brute facts that the Indictment alleges or that the parties and Judge Hansen discussed at the plea hearing. See Reply at 5. Eccleston says that, while the facts set forth in the PSR and the Plea Agreement "might, as a factual matter, establish that Mr. Eccleston committed substantive Hobbs Act robbery, they equally establish that he conspired with another to commit that crime." Reply at 5. To support this argument, Eccleston says that, at the Plea Hearing, the parties and Judge Hansen discussed Eccleston and Martinez' "interaction and interdependence," rendering the "fact of a conspiracy . . . equally apparent as . . . any substantive robbery." Reply at 5 (citing United States v. Weidner, 437 F.3d 1023, 1033 (10th Cir. 2006)("[C]onspiracy convictions may be based on circumstantial evidence, and the jury may infer conspiracy from the defendant's conduct and other circumstantial evidence indicating coordination and concert of action."); United States v. Pulido-Jacobo, 377 F.3d 1124, 1129 (10th Cir. 2004)(noting that an agreement may be informal and "inferred entirely from circumstantial evidence")). Eccleston accordingly maintains that the United States is mistaken in its assertion that "the factual basis provided at the plea hearing 'was wholly devoid of any reference to an agreement or to a conspiracy.'" Reply at 5-6 (quoting Response at 8). Eccleston avers, instead, that the facts to which Eccleston admitted at the plea hearing are "just as 'consistent and germane' to a conspiracy to commit a Hobbs Act robbery as they are to a substantive Hobbs Act robbery." Reply at 6 (quoting United States v. Kennedy, 881 F.3d at 23, and citing United States v. Horse Looking, 828 F.3d at 748 ("But the colloquy does not exclude the possibility that Horse Looking was convicted" of an invalid predicate)). Eccleston thus asserts that the Court should grant the Motion.

MOO, 2020 WL 4336361, at *2-8.

**9.   The MOO.**

On July 27, 2020, the Court issued the MOO. 2020 WL 4336361, at *1. In the MOO, the Court first concludes that Count V alleges a divisible violation, meaning that the Court employs the modified categorical approach in reviewing the Motion. See 2020 WL 4336361, at *1, *28. Next, the Court concludes that Count VI is predicated upon aiding and abetting Hobbs Act robbery or substantive Hobbs Act robbery, 18 U.S.C. § 1951. See 2020 WL 4336361, at *1, *28. Because

either count qualifies as a crime of violence, the Court concludes that Eccleston's sentence for Count VI is based on a permissible predicate, and, the Court, therefore, denies the Motion.  See 2020 WL 4336361, at *1, *28.

The Court first determines that Hobbs Act robbery is divisible.  See 2020 WL 4336361, at *28.  The Court then determines that conspiracy to commit Hobbs Act robbery is not categorically a crime of violence.  See 2020 WL 4336361, at *28.  In reaching these conclusions, the Court, in adherence to Tenth Circuit guidance, first evaluates whether Count V and its § 1951 allegation are divisible.  See 2020 WL 4336361, at *28. (citing United States v. Titties, 852 F.3d 1257, 1269 (10th Cir. 2017)( "The Supreme Court requires us to begin the analysis . . . at the means/elements inquiry")(citing Mathis v. United States, 136 S. Ct. 2243, 2256 (2016))).  As the Court notes, "a divisible statute sets out one or more elements of an offense in the alternative." 2020 WL 4336361, at *28 (citing Descamps v. United States, 570 U.S. 254, 257 (2013).  The Court then evaluated the language of Count V, which states that on December 15, 1994,

> Eccleston and [Martinez] did unlawfully obstruct delay and affect, and attempt and conspire to obstruct, delay and affect commerce as that term is defined in [18 U.S.C. § 1951], and the movement of articles and commodities in such commerce, by robbery as that term is defined in [18 U.S.C. § 1951], in that the defendants, [Eccleston and Martinez], did unlawfully take and obtains personal property consisting of jewelry, personal property consisting of jewelry, personal checks, a purse, a wallet, a camera, and credit cards from the person and in the presence of Karen Kuepers against her will by means of actual and threatened force, violence, and fear of injury, immediate and future, to her person and a person in her company, that is, the treat that if Karen Kuepers would not give defendants . . . [her] property, the defendants . . . were going to injure or kill Karen Kuepers and David C. Henkemeyer.

2020 WL 4336361, at *29 (quoting Indictment ¶ 5, at 3-4).

Based on the language of the indictment, and in light of Tenth Circuit precedent, the Court concludes that Hobbs Act robbery is divisible.  2020 WL 4336361, at *29.  Hobbs Act robbery is

divisible, because, as the Court noted, the statute is divisible, "on the one hand, between substantive Hobbs Act robbery and aiding and abetting Hobbs Act robbery, and, on the other hand, conspiracy to commit Hobbs Act robbery, because the statute's subparts describe alternative crimes as opposed to different ways of committing the same offense."  2020 WL 4336361, at *32 (citing United States v. Pam, 867 F.3d 1191, 1203 (10th Cir. 2017)(citing Descamps v. United States, 570 U.S. at 262-63).  The Court then goes on to explain that:

> conspiracy to commit Hobbs Act robbery includes elements that substantive or attempted Hobbs Act robbery do not. A conviction under § 1951(b)(1) for substantive robbery requires a finding of "actual or threatened force, or violence, or fear of injury, immediate or future." 18 U.S.C. § 1951(b)(1). Under § 1951(a), conspiracy to commit Hobbs Act robbery requires: (i) that two or more persons agreed to commit Hobbs Act robbery; (ii) the defendant knew the conspiracy's "essential objectives"; (iii) the defendant knowingly and voluntarily "took part in the conspiracy"; and (iv) "the conspirators were interdependent." United States v. Wright, 506 F.3d 1293, 1297-98 (10th Cir. 2007). The Hobbs Act therefore "list[s] elements in the alternative, and thereby define[s] multiple crimes," rendering it a divisible statute.

2020 WL 4336361, at *33 (citing Mathis v. United States, 136 S. Ct. at 2249).  As a result, the Court applies the modified categorical approach.  See 2020 WL 4336361, at *33.  See also 2020 WL 4336361 at n. 9.

The Court next concludes that because Eccleston was convicted of a crime of violence in Count V, Count VI rests on a valid predicate.  See 2020 WL 4336361, at *37.  In support of this holding, the Court explains initially that, "'[t]he modified approach serves -- and serves solely -- as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque.'" 2020 WL 4336361, at *37 (quoting Mathis v. United States, 136 S. Ct. at 2253)).  The Court then explains that "[t]he modified categorical approach allows a court to peer around the statute of conviction and examine certain record documents underlying the defendant's prior offense[.]"  United States v. Titties, 852 F.3d at 1266.  This

principle means, therefore, as the Court outlines,, that "[c]ourts may "consult[] the trial record --

including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and

conclusions of law from a bench trial, and jury instructions and verdict forms."" 2020 WL

4336361, at *37 (quoting Johnson v. United States, 559 U.S. at 144).  Furthermore, as the Court

explains, while "the record may reveal factual details of the offense, '[a] court may use the

modified approach only to determine which alternative element in a divisible statute formed the

basis of the defendant's conviction.'" 2020 WL 4336361, at *37 (quoting United States v. Titties,

852 F.3d at 1266).

Next referring to the language of the Indictment's Count V, see 2020 WL 4336361, at *37-

38 (citing Indictment ¶ 5, at 3-4), the Court explains that, while "the Indictment refers to

conspiracy, the Indictment alleges substantive Hobbs Act robbery" in its allegations that Eccleston

"'did unlawfully take and obtain personal property' by means of "actual and threatened force,

violence, and fear of injury[.]"  2020 WL 4336361, at *38 (quoting Indictment ¶ 5, at 3-4).

Importantly, as the Court concludes, because "[t]he Indictment makes no mention of any

agreement between Eccleston and Martinez," 2020 WL 4336361, at *38, and "makes no mention

of the elements necessary for a conspiracy conviction," 2020 WL 4336361, at *38, this omission

is "strong evidence that Eccleston was not convicted of conspiracy," 2020 WL 4336361, at *39.

See 2020 WL 4336361 at 39, n. 10.  Furthermore, as the Court explains, "[a]lthough Eccleston

mentions the word 'conspiracy,' he admits to substantive Hobbs Act robbery," 2020 WL 4336361,

at *39 (quoting Plea Agreement § 7.c., at 4), and Eccleston "does not refer to a conspiracy's

constituent elements, but rather substantive Hobbs Act robbery's constitute elements," 2020 WL

4336361 at 39 (citing United States v. Melgar-Cabrera, 892 F.3d at 1064-65; United States v.

Addonizio, 451 F.2d 49, 59 (3d Cir. 1971)("The statute requires only (1) that the defendants induce

their victims to part with property, (2) that they do so through the use of fear, and (3) that, in so doing, they adversely affect interstate commerce.").  Last, and most importantly, as the Court notes, "the Indictment and the Plea Agreement's structure suggest strongly that Eccleston was charged with and admitted to substantive Hobbs Act robbery."  2020 WL 4336361, at *40.  As the Court concludes, therefore, "[t]he record thus does not support that Eccleston was convicted of conspiracy to commit Hobbs Act robbery and instead supports that Eccleston was convicted of substantive Hobbs Act robbery."  2020 WL 4336361, at *42.

The Court then turns to its next ruling, concluding that Eccleston is not entitled to relief under his asserted test, because it is not possible that Eccleston pled guilty to Hobbs Act robbery conspiracy.  2020 WL 4336361, at *44.  Although stating that Eccleston has the burden to demonstrate "that it is more likely than not that Count VI rests on an invalid predicate," 2020 WL 4336361, at *44, the Court determines that Eccleston cannot prevail under his asserted test," 2020 WL 4336361, at *44, because "the record establishes with certainty that Eccleston's predicate offense is a crime of violence," 2020 WL 4336361, at *44.  When reaching the conclusion, the Court dismisses Eccleston's reference to United States v. Horse Looking, 828 F.3d 744, 746 (8th Cir. 2016), a case from the United States Court of Appeals for the Eight Circuit, which Eccleston cites for "the proposition that, if the reviewing court cannot determine with certainty that Eccleston's Count V conviction rests on a crime of violence, the reviewing court must vacate Eccleston's sentence in Count VI."  2020 WL 4336361, at *44 (citing Motion at 6; Reply at 6). The Court explains that United States v. Horse Looking "does not command Eccleston's requested standard of review," because (i) "the Eighth Circuit does not bind the Court," 2020 WL 4336361 at *46, and (ii) unlike the situation at hand, "United States v. Horse Looking involves a direct appeal and not review of a § 2255 petition, and thus the United States bore the burden to

demonstrate each federal element beyond a reasonable doubt," 2020 WL 4336361 at *46. Cf. Cagle v. Ciccone, 368 F.2d 183, 184 (8th Cir. 1966)(noting that, in habeas cases, the petitioner holds the burden of proof and persuasion). As the Court explains, therefore, United States v. Driscoll's reasoning . . . that a § 2255 petitioner holds the burden to demonstrate that it is more likely than not that a conviction rests on an invalid predicate, thus governs this case." 2020 WL 4336361 at 46 (citing United States v. Driscoll, 892 F.3d at 1135 n.5). See United States v. Rodella, 2020 WL 406389, at *11. Eccleston maintains, however, that the Court must apply United States v. Horse Looking, 828 F.3d at 746, meaning "that the Court must vacate his sentence for Count VI if the Court cannot determine with certainty whether he was convicted of a crime of violence in Count V." 2020 WL 4336361 at *46 (citing Reply at 1-2). As the Court explains, though, "even under Eccleston's asserted test, the record meets the certainty requirement," because "the Indictment's mere mention of conspiracy, when tracking § 1951(a)'s language, is not enough to demonstrate that Eccleston was possibly convicted of conspiracy to commit Hobbs Act robbery, because the Indictment's more specific language refers only to substantive Hobbs Act robbery." 2020 WL 4336361, at *46 (citing Indictment ¶ 5, at 4-5). The Court determines, therefore, that, "unlike in United States v. Horse Looking, here the Indictment and the sentencing record 'exclude the possibility' that Eccleston was convicted of conspiracy to commit Hobbs Act robbery." 2020 WL 4336361, at *46 (quoting United States v. Horse Looking, 828 F.3d at 748)).

Based on the Court's conclusions, see 2020 WL 4336361, at *30-48 , the Court orders that (i) Eccleston's Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255,  see CIV. Doc. 1, be denied; and (ii) the case is dismissed with prejudice. See 2020 WL 4336361, at *48.

### 10.    The Final Judgment and the Notice of Appeal.

The same day the Court issued the MOO denying the Motion, the Court entered Final Judgment pursuant to rule 58 of the Federal Rule of Civil Procedure, dismissing the case with prejudice and entering Final Judgment.  See Final Judgment, filed July 27, 2020 (CIV. Doc. 34). On August 13, 2020, Eccleston filed his Notice of Appeal from the Final Judgment with the United States Court of Appeals for the Tenth Circuit.  See Notice of Appeal, filed August 13, 2020 (Doc. 37).

      **11.**      **The Motion for Rehearing and the Addenda.**

On August 17, 2020, Eccleston filed the pro se Motion for Rehearing, arguing that he "has a colorable claim that a 'constitutional error has probably resulted in the conviction of one who is actually innocent.'"  Motion for Rehearing at 7 (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)).  Eccleston argues that the Court errs in its MOO, because it "must have relied on the now defunct residual clause of 924(c) an applying the categorical approach the Court must assume that at the time of Mr. Eccleston's conviction the conviction did not sustain a 924(c) conviction." Motion for Rehearing at 3.  Eccleston contends that his conviction is premised on an indivisible statute.  See Motion for Rehearing at 3, 5.  Eccleston argues his Count VI conviction does "not meet the active employment requirement set forth in Bailey [v. United States, 516 U.S. 137 (1995)]."  Motion for Rehearing at 7 (citing Bailey v. United States, 516 U.S. 137).

The same day, Eccleston filed his pro se Addendum to Motion for Rehearing I, requesting that the Court reconsider its MOO, because the Court did not address a "vital point."  Addendum to Motion for Rehearing I at 1.  To support his point, Eccleston references page 30 of the MOO, see 2020 WL 4336361, at *30, where the Court states that,  "[w]hereas the Hobbs Act provides disjunctive elements, the Indictment provides conjunctive elements . . . the indictment however

alleges Eccleston 'did unlawfully obstruct . . . and attempt and conspire to obstruct . . . commerce . . . by robbery.   Addendum to Motion for Rehearing I at 1 (quoting 2020 WL 4336361, at *30).

Eccleston then references another point the Court makes, where the Court explains that "[t]he Tenth Circuit had described it as 'hornbook law that a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive."   Addendum to Motion for Rehearing I at 2 (quoting 2020 WL 4336361, at *30 (quoting United States v. Powell, 226 F.3d 1181, 1192 (10th Cir. 2000))(quoting United States v. Gunter, 546 F.3d 861, 868-869 (10th Cir. 1976))).

Here, Eccleston states that he agrees with the Court that the Indictment "is not duplicitous," and the "categorical approach applies because separate elements of a crime cannot be charged conjuctively [sic] in a single count."   Addendum to Motion for Rehearing I at 2.  As Eccleston notes, therefore, when the Indictment charges that Eccleston "did unlawfully obstruct . . . and attempt and conspire to obstruct commerce . . . by robbery," these are predicate acts underlying the single violation charge in Count 5.   Addendum to Motion for Rehearing I at 3 (quoting Indictment at 4-5).  Therefore, as Eccleston asserts, "there is only one possible conclusion: This means the statute is indivisible," Addendum to Motion for Rehearing I at 3, because, as he notes, "whereas a statute defines a single offense that may be committed by several alternative means it is proper for the government to charge different means of a crime connected by conjunctions in the indictment when the means are listed disjunctively in the statute,"  Addendum to Motion for Rehearing I at 3 (citing United States v. Arreola, 467 F.3d 1153 (9th Cir. 2000).  Ultimately, as Eccleston concludes, "[i]t is not proper to charge elements by conjunction in a single count and therefore the statute must be indivisible and the categorical approach applies, not the modified

categorical approach because they are predicate acts not elements."   Addendum to Motion for

Rehearing I at 3.

Relatedly, in referencing <u>United States v. Romero</u>, 122 F.3d 1334 (10th Cir. 1997),

Eccleston argues that his due process right was violated when this Court applied the modified

categorical approach to an indivisible statute.  <u>See</u> Addendum to Motion for Rehearing I at 3.  On

this point, he states:

> If the categorial approach were appropriately applied, there is a broader swath of conduct because conspiracy is not a valid crime of violence and that is the most innocent conduct that was charged by conjunction in Count 5 of Mr. Eccleston's indictment.  A jury need not have found anything past the fact that Mr. Eccleston violated the single violation in count 5 Interference with Commerce.

 Addendum to Motion for Rehearing I at 6.

This assertion means, according to Eccleston, that the Court "cannot exclude conspiracy

because a jury need not have excluded it as a predicate act and the 924(c) conviction cannot stand

on a predicate which came under the residual clause of 924(c)."   Addendum to Motion for

Rehearing I at 6.   Eccleston argues, therefore, that "[t]his Court went beyond its discretion in

applying the modified categorial approach and finding a valid predicate to affirm the 924(c)

conviction." Addendum to Motion for Rehearing I at 6.

On August 25, 2020, Eccleston filed pro se the Motion for Addendum to Motion for

Rehearing II.  <u>See</u> Motion for Addendum to Motion for Rehearing II.  Eccleston argues that,

although he filed a Notice of Appeal, his notice of appeal does not divest the Court of jurisdiction

to hear his Motion for Rehearing.  <u>See</u> Motion for Addendum to Motion for Rehearing II at 1.

Eccleston continues that he disagrees with the Court's conclusion that Eccleston's Indictment

contains conjunctive elements.  <u>See</u> Motion for Addendum to Motion for Rehearing II at 1.

Instead, Eccleston argues that § 924(c) is indivisible.  <u>See</u> Motion for Addendum to Motion for

Rehearing II at 6.  Last, Eccleston contends that, because "alternative elements cannot be charged conjunctively," there must "be predicate acts underlying the single violation."   Motion for Addendum to Motion for Rehearing II at 6.

       **12.**      **The Motion to Reconsider**.

On August 25, 2020, Eccleston filed his Motion to Reconsider.  See Motion to Reconsider at 1.  Eccleston requests that the Court, under rule 59(e) of the Federal Rules of Civil Procedure, should reconsider its MOO and alter or amend its Final Judgment, and grant Eccleston's Motion. See Motion to Reconsider at 1.  In the alternative, Eccleston moves the Court to issue a certificate of appealability under Rule 11(a) of the Rules Governing § 2255 Proceedings.  See Motion to Reconsider at 1.

Eccleston avers that Rule 59(e) motions are appropriate in § 2255 cases.[7]  See Motion to Reconsider at 1(citing rule 12 of the Rules Governing § 2255 Proceedings("The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.")).  Eccleston contends that "'district court[s] have considerable discretion in ruling on a motion to reconsider under rule 59(e)," Motion to Reconsider at 3 (quoting Lujan v. City of Santa Fe, 122 F. Supp. 3d 1215, 1231 (D.N.M. Aug. 15, 2015)(Browning, J.)),  and that "'a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law,'" Motion to Reconsider at 3 (quoting N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs., 340 F. Supp. 3d 1112, 1151-52 (D.N.M. 2018)(Browning, J.)).

---

[7]Eccleston notes that "[t]he procedural posture of this Motion has been complicated slightly by Mr. Eccleston's pro se filing of a Notice of Appeal," but contends that the Court still has jurisdiction to hear and decide a post-judgment motion to reconsider.  Motion to Reconsider at 1-2.

Eccleston argues that the Tenth Circuit's restrictions on second or subsequent motions to reconsider under rule 59(e) in <u>Nelson v. City of Albuquerque</u>, 921 F.3d 925, 929 (10th Cir. 2019) are not applicable because this is his first motion to reconsider.  <u>See</u> Motion to Reconsider at 3 n.3.

Eccleston contends that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," but that it did not decide that issue when it issued its MOO and entered Final Judgment.  Motion to Reconsider at 3-4 (quoting rule 11(a) of the Rules Governing § 2255).  Eccleston quotes  28 U.S.C. § 2253(c)(2)-(3), which provides: "'A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right,' and it must on its face 'indicate which specific issue or issues satisfy th[at] showing.'"  Motion to Reconsider at 4.

As background, Eccleston argues that § 924(c) is not a sentencing enhancement, but a distinct offense, and, as an offense, its elements must be proven to a jury beyond a reasonable doubt.  <u>See</u> Motion to Reconsider at 4 (citing <u>In re Winship</u>, 397 U.S. 358 (1970); <u>United State v. Hill</u>, 971 F.2d 1461, 1464 (10th Cir. 1992)).  Eccleston contends that, for a § 924(c) conviction, the predicate crime-of-violence offense does not need to be a conviction; the United States needs to state in the indictment only the predicate offense it alleges satisfies the first element of § 924(c). <u>See</u> Motion to Reconsider at 5.  Eccleston maintains that, here, the § 924(c) count in the Indictment is predicated on Count V, which, even if the Hobbs Act is divisible, is divided in six parts, only one of which is a proper predicate crime-of-violence.  <u>See</u> Motion to Reconsider at 6.

Eccleston argues that the Court should grant his Motion to Reconsider, because the Court erred in placing the burden of proof on Eccleston to prove that he was convicted of a non-violent crime.  <u>See</u> Motion to Reconsider at 6.  Eccleston argues that the Court's citation to its decision in <u>Rodella v. United States</u>, 2020 WL 406389, at *11 n.6 (D.N.M. Jan. 23, 2020)(Browning, J.), "for

the preposition that the residual clauses[, 18 U.S.C. § 924(e)(2)(B) and 18 U.S.C. § 924(c)(c)(b),] at issue in Johnson v. United States[, 576 U.S. 591 (20150("Johnson")] and United States v. Davis[, 139 S. Ct. 2319 (2019)("Davis")] are interchangeable," is incorrect.  Motion to Reconsider at 6-7 (citing MOO, 2020 WL 4336361, at *11 n.7 (D.N.M. July 28, 2020)).  Eccleston argues that "Rodella's preposition that the two residual clauses are interchangeable is at odds with Tenth Circuit cases regularly holding, during the nearly four years between Johnson and Davis, that § 924(c)'s clause was not invalidated by Johnson, because the two residual clauses were not similar enough."  Motion to Reconsider at 6-7.  Eccleston argues the delay in the Tenth Circuit extending Johnson to § 924(c)(2) means that the two residual clauses are not interchangeable.  See Motion to Reconsider at 7.  Eccleston maintains that the two residual clauses are distinguishable because § 924(c)(2) is a crime, in contrast to § 924(e)(2)(B), which is a sentencing enhancement.  Motion to Reconsider at 7.  Eccleston contends that because § 924(c) is a crime, the prosecution has the burden of proof to show that a defendant violated § 924(c) by using or carrying a firearm during a crime-of-violence.  Motion to Reconsider at 7-8 (citing Jones v. United States, 526 U.S. 227, 243 n.6 (1999)("[A]ny fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.")).  Eccleston argues because the two residual clauses are vastly different, they should have different burdens of proof.  See Motion to Reconsider at 8.  Eccleston contends that the United States typically has the burden of proof for sentencing enhancements by a preponderance of the evidence standard., meaning here, for predicate offenses, the burden on the government should be even greater.  See Motion to Reconsider at 8.

Next, Eccleston argues the Court erred in concluding Hobbs Act robbery is divisible.  See Motion to Reconsider at 9.  Eccleston argues where there is any uncertainty whether a statute is

divisible into means or elements, courts should default to means not elements.  See Motion to

Reconsider at 9 (citing United States v. Degeare, 864 F.3d 1241, 1248 (10th Cir. 2017) ("[U]nless

we are certain that a statute's alternatives are elements rather than means, the statute isn't divisible

and we must eschew the modified categorical approach.").  Eccleston contends that § 1951(a)'s

use of the preposition "by" -- " Whoever . . . affects commerce . . . by robbery or extortion or

attempts or conspires so to do . . ." -- indicates the statute's plain meaning is divisible into means.

Motion to Reconsider at 10 (quoting 18 U.S.C. § 1951(a) and citing Shorter Oxford English

Dictionary (6th Ed. 2007) (defining "by" as "indicating agency, means, cause, attendant

circumstance, conditions, manners, effects."); New Oxford American Dictionary (3rd ed. 2010)

(defining "by" as "indicating the means of achieving something")).  Eccleston argues that the

"plain meaning of the preposition 'by' suggests that Congress was concerned with different means

of interfering with interstate commerce, not defining separate crimes.  . . . Interfering with

commerce is therefore the overarching crime, not robbery or extortion."  Motion to Reconsider at

10.

Eccleston also argues that § 1951(a)'s structure and grammar indicates that the statute is

indivisible, because it does not have different subsections, and because it "is only one sentence,

with the alternatives separated by commas."  Motion to Reconsider at 11.  Eccleston argues a

means interpretation is consistent with the original criminal judgment, which states that his crime's

Nature of Offense was "Interference with Commerce by Threat or Violence Against the Victim."

Motion to Reconsider at 12 (quoting Judgment in a Criminal Case at 1 filed Nov. 12, 1996, (Cr.

Doc. 88)).  Eccleston concludes, therefore, that "[i]t is more likely than not that the Government

thought they were alleging different means in the indictment than providing themselves with future

work (in the form of making an election among the multiple crimes) later."  Motion to Reconsider

at 13.  In alternative, Eccleston argues that the statute's use of "by" and its grammatical structure create uncertainty, meaning the Court should have applied the default of means.  See Motion to Reconsider at 13.

Next, Eccleston contends that the Court's citation to United States v. O'Connor, 873 F.3d 1147, 1152 (10th Cir. 2017), in the MOO, for the preposition that the Hobbs Act is divisible between robbery and extortion, is inapposite because the defendant in United States v. O'Connor did not contest the issue.  See Motion to Reconsider at 14.  Eccleston argues that even if the Hobbs Act is divisible between robbery and extortion, he pled guilty only to robbery and that Hobbs Act robbery is not divisible.  See Motion to Reconsider at 14 (citing other Courts of Appeals for the proposition that Hobbs Act robbery is not divisible and contending that United States v. Jefferson, 911 F.3d 1290 (10th Cir. 2018), vacated for reconsideration in light of First Step Act of 2018, Pub. L. No. 115-391 (2018), applies the categorical approach, not the modified categorical approach, to Hobbs Act robbery).  Eccleston contends that the Hobbs Act should be divided into only two subparts -- robbery and extortion -- and not more, because the Hobbs Act only defines these offenses, and does define conspiracy or attempt.  See Motion to Reconsider at 15.  Eccleston takes the Hobbs Act structure to imply that conspiracy and attempt are alternative means of conducting robbery and extortion, and not crimes themselves.  See Motion to Reconsider at 15.  Eccleston concludes that "it is impossible to be certain that the [Hobbs Act] dictates the provided alternatives of conspiracy and attempt are means and not elements.  Therefore, the categorical approach would apply to Defendant's case."  Motion to Reconsider at 16.

Next, Eccleston presses the argument that he "might have been convicted of attempted robbery under the Hobbs Act, which is not a crime of violence."  Motion to Reconsider at 16. Eccleston contends that the Court did not decide if attempted Hobbs Act robbery is a crime of

violence and that the Tenth of Circuit has not ruled on this issue.  See Motion to Reconsider at 16

(citing United States v. Kayarath, 2020 WL 4360778, at *4 (10th Cir. July 30,

2020)(unpublished)(declining to determine if attempted Hobbs Act robbery is a crime of violence

because of the defendant's § 924(c) charge clearly being associated with a substantive Hobbs Act

robbery)).  Eccleston argues that attempted Hobbs Act Robbery does not require an attempted use

of violence:

> The mens rea requirement for attempted Hobbs Act robbery requires a specific intent to complete every element of the crime, but the actus reus component requires only a "significant step" towards the crime overall -- a defendant arrested driving to a bank he intends to rob has committed attempted Hobbs Act robbery, but has not engaged in any violence.

Motion to Reconsider at 17.  Eccleston maintains that "'[i]ntending to commit each element of a

crime involving the use of force simply is not the same as attempting to commit each element of

that crime.'" Motion to Reconsider at 17 (quoting United States v. St. Hubert, 918 F.3d 1174, 1212

(11th Cir. 2019)(Pryor, J., dissenting from rehearing en banc)).  Under the categorical approach,

Eccleston argues that, because Hobbs Act robbery allows for both violent and non-violent means,

Hobbs Act robbery is not categorically a crime of violence under the force clause.  See Motion to

Reconsider at 17 (citing United States v. Simms, 914 F.3d 229, 233 (4th Cir. 2019)(en banc)).

Eccleston then cites cases of attempted Hobbs Act robbery that do not involve use of physical

force.  See Motion to Reconsider at 18.  Eccleston cites, for example, United States v. McFadden,

739 F.2d 149, 152 (4th Cir. 1984), which held that a significant step for a federal bank robbery

statute

> include[s] lying in wait, reconnoitering the place contemplated for the commission of the crime, possession of materials to be employed in the commission of the crime, and possession and collection of materials to be employed in the commission of the crime at or near the place contemplated for its commission, where such

possession and collection serve no lawful purpose of the actor under the circumstances.

United States v. McFadden, 739 F.2d at 152.

Eccleston maintains that, when considering the least culpable conduct necessary for attempted Hobbs Act robbery, Hobbs Act robbery could not be a crime of violence. See Motion to Reconsider at 18-19. Eccleston then cites several cases for the proposition that that attempted Hobbs Act robbery is not a crime of violence. See Motion to Reconsider at 20 (citing United States v. Culbert, 453 F.Supp. 3d 595 (E.D.N.Y. April 13, 2020)(Cogan, J.); United States v. Cheese, 2020 WL 705217 (E.D.N.Y. Feb. 12, 2020)(Garaufis, J.); United States v. Tucker, 2020 WL 93951, at *6 (E.D.N.Y. Jan. 8, 2020)(Johnson, J.); Lofton v. United States, 2020 WL 362348, at *9 (W.D.N.Y. Jan. 22, 2020)(Telesca, J.)); United States v. Sheffield, 832 F.3d 296, 315 (D.C. Cir. 2016)(finding D.C.'s attempted robbery offense does not satisfy the force clause because its "expansive overt act requirement is not tied to any type of robbery -- violent or otherwise"); United States v. Alfonso, 2019 WL 1916199 (D. Conn. Apr. 30, 2019)(Arterton, J.)(holding that, because, activities like lying in wait or reconnoitering van satisfy the substantial-step element of Connecticut's attempted-robbery statute, the crime "could clearly be met without any use, attempted use, or threatened use of violence whatsoever")). Eccleston contends therefore that, because "attempted Hobbs Act robbery does not require the use, attempted use, or threatened use of violent physical force, it cannot qualify as a crime of violence under § 924(c)'s force clause." Motion to Reconsider at 20.

Eccleston contends that "[w]ithout engaging in fact-finding, it is impossible to determine if Mr. Eccleston pled guilty to substantive Hobbs Act robbery or attempted Hobbs Act robbery." Motion to Reconsider at 21. Eccleston argues that the Court relied on the plea colloquy in its original ruling, "citing the factual basis for the plea multiple times." Motion to Reconsider at 23.

- 30 -

Eccleston argues that the Court also erred by relying on the PSR, contending that the "Tenth Circuit has routinely held that a PSR cannot be used under the modified categorical approach if it is partially based on police reports."  Motion to Reconsider at 24 (citing United States v. Thrasher, 2020 WL 2787597, at *3 (10th Cir. May 29, 2020)("[I]n order to rely solely on the PSR to determine the crime of conviction, the PSR must be derived from Shepard documents."); United States v. Taylor, 413 F.3d 1146, 1157 (10th Cir. 2005); Shepard v. United States, 544 U.S. 13, 16 (2005)). Eccleston concludes that, if the Court disregards "the PSR and factual basis of the plea colloquy, it is impossible to ascertain if Mr. Eccleston pled guilty to substantive Hobbs Act Robbery."  Motion to Reconsider at 25.

Next, Eccleston argues that his Indictment charges him with different means, and not elements.  See Motion to Reconsider at 25.  Eccleston avers that the United States never proved his case in the disjunctive, because the United States fails to establish whether he was charged with or pleaded to conspiracy or substantive Hobbs Act robbery.  See Motion to Reconsider at 26. Eccleston contends that, if he had gone to trial, the United States would have had to pick one of the three offenses in Count V; otherwise his Indictment would have been found to be duplicitous. See Motion to Reconsider at 26.

Last, Eccleston argues that the Court should issue a certificate of appealability.  See Motion to Reconsider at 28.  Eccleston contends that he need only make a substantial showing that jurists of reason could disagree with the Court's resolution of his constitutional claims.  See Motion to Reconsider at 28 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).  Eccleston points to the fact that he was appointed counsel as a reason that his motion has merit.  See Motion to Reconsider at 29. Eccleston asks for certificate of appealability of four issues:

[i] The issue of the proper burden of proof in establishing what offense Mr. Eccleston pled guilty to.

[ii] The issue of whether the categorical approach should have been employed.

[iii] The issue of whether Count V of the indictment alleged (in whole or in part) conspiracy to commit robbery under the Hobbs Act, and whether conspiracy to commit robbery under that Act is a crime of violence.

[iv] The issue of whether Count V of the indictment alleged (in whole or in part) attempted robbery under the Hobbs Act, and whether attempted robbery under that Act is a crime of violence.

Motion to Reconsider at 30.

### 13.     The Motion for Certificate of Appealability.

On August 28, 2020, Eccleston filed a pro se Application for Issuance of a Certificate of Appealability, filed  August 28, 2020 (CIV. Doc. 45).  Eccleston raises two grounds: (i) whether the Court violated his right to due process when the Court found Hobbs Act is divisible and applied the modified categorical approach; and (ii) whether the Court violates "the Tenth Amendment of the United States Constitution [by] imping[ing] upon the Sovereign authority of the State of New Mexico to regulate wholly local conduct," because "robbery and attempt and conspiracy [are] . . . purely local crimes that are under State authority and jurisdiction not federal."  Application for Issuance of a Certificate of Appealability at 1-3.

### 14.     The Tenth Circuit Order.

On August 28, 2020, the Tenth Circuit issued an order abating Eccleston's appeal of the Court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence, because "[t]wo matters pending in the district court prevent this appeal from moving forward at this time."  Order, filed August 28, 2020 (CIV. Doc. 47)("Tenth Circuit Order").  The Tenth Circuit Order notes that the

docket reveals four pending motions seeking some form of reconsideration of the order and judgment being appealed.  It appears these motions to reconsider may

have been timely filed, which would toll the time to appeal from the order denying the § 2255 motion. Fed. R. App. P. 4(a)(4)(A)(iv); <u>see also</u> Fed. R. CIV. P. 59(e). The notice of appeal will become effective when the district court enters an order (or orders) deciding the pending motions to reconsider. <u>See</u> Fed. R. App. P. 4(a)(4)(B)(i); <u>see also id.</u> 4(a)(4)(B)(ii) <u>and</u> <u>Breeden v. ABF Freight Sys., Inc.</u>, 115 F.3d 749, 752 (10th Cir. 1997). Until these motions are fully resolved, this appeal cannot proceed.

Tenth Circuit Order at 1-2. The Tenth Circuit Order also states that Eccleston needs to obtain a certificate of appealability to proceed with his appeal and notes that the Court has not yet ruled on the two certificates of appealability. <u>See</u> Tenth Circuit Order at 2. The Tenth Circuit order concludes by stating: "If the district court has not decided the pending motions by November 2, 2020, the appellant through counsel shall file a status report in this court to advise what events have occurred toward resolution of the pending motions." Tenth Circuit Order at 3.

### 15.   <u>Eccleston's Addendums to Motion for Rehearing III and IV</u>.

On August 31, 2020, Eccleston filed pro se his Addendum to Motion for Rehearing III and his Addendum to Motion for Rehearing IV. <u>See</u> Addendum to Motion for Rehearing III; Addendum to Motion for Rehearing IV. Eccleston repeats his arguments from previous filings urging the Court to apply the "categorical approach" to his conviction. Addendum to Motion for Rehearing III at 1. Eccleston argues that attempted carjacking by intimidation and attempted Hobbs Act robbery are not crimes of violence. Addendum to Motion for Rehearing III at 1. Eccleston concludes that, if "attempted car-jacking by intimidation is not a valid crime of violence this Court must vacate Count 2 for 924(c)." Motion for Rehearing III at 2. Eccleston also argues that the Indictment fails to allege that he interfered with interstate commerce. <u>See</u> Addendum to Motion for Rehearing IV.

### 16.   <u>The Response to Motion to Reconsider</u>.

The United States responds to the Motion to Reconsider.  See United States' Response to Defendant's Motion to Alter or Amend the Judgment, and in the Alternative, for a Certificate of Appealability, filed September 15, 2020 (CIV. Doc. 53)("Response to Motion to Reconsider"). The United States argues that the Court should deny Eccleston's Motion to Reconsider, because such a motion is an improper attempt to reargue issues the Court has already decided.   See Response to Motion to Reconsider at 1 (citing Servants of the Paracelete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000); United States v. Cos, 498 F.3d 1115, n.2 (10th Cir. 2007)).  The United States argues that Eccleston's Motion to Reconsider is improper, because Eccleston does not point to any intervening new law or any new relevant evidence.   See Response to Motion to Reconsider at 2.  The United States argues that there is no manifest injustice to correct.  See Response to Motion to Reconsider at 2 (citing United States v. Loera, 182 F.Supp. 3d 1173, 1189 (D.N.M. 2016)(Browning, J.)).

The United States argues that the Court is correct in placing the burden of proof on Eccleston for "an-after-the-fact § 2255 motion," even though typically the government has the burden to prove the existence of priors at an initial sentencing.  Response to Motion to Reconsider at 2 (citing In Re, Jasper Moore, 830 F.3d 1268, 1273 (11th Cir. 2016); United States v. Rodella, 2020 WL 1495752, at *7 (D.N.M. 2020)(Browning, J.)).  Next, the United States argues Hobbs Act robbery and attempted Hobbs Act robbery are categorically crimes of violence, a point that Eccleston concedes in his Motion to Vacate, and which the Tenth Circuit has acknowledged.  See Response to Motion to Reconsider at 2 (citing United States v. Melgar-Cabrera, 892 F.3d 1053, 1065-66 (10th Cir. 2018)).  The United States contends that, in his Motion to Reconsider, Eccleston has "shifted course and now asserts that the statute is not divisible, but fails to square his new argument with Melgar-Cabrera. Contrary to Defendant's new argument, the statute in fact is

divisible as a conspiracy to commit Hobbs act robbery or extortion would require different elements and different jury instructions."  Response to Motion to Reconsider at 2-3 (citing United States v. O'Connor, 874 F.3d 1147, 1152 (10th Cir. 2017)).  The United States contends Eccleston's argument focusing on the Hobbs Act use of the proposition "by" fails, because it overlooks the statute's use of the proposition "or," which "underscores that the statute contains several divisible elements."  Response to Motion to Reconsider at 3 (citing United States v. Mendez, 992 F.3rd 1488, 1490 (9th Cir. 1993)).

The United States contends that Eccleston makes two new arguments in his Motion to Reconsider: (i) that Eccleston could have been convicted of attempted Hobbs Act robbery, and (ii) that an attempted Hobbs Act offense is not a crime of violence.  See Response to Motion to Reconsider at 3.  The United States contends that Eccleston was convicted of substantive robbery or aiding and abetting robbery, and that attempted Hobbs Act robbery is a crime of violence.  See Response to Motion to Reconsider at 3 (citing In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016); United States v. Dominguez, 954 F.3d 1251, 1255-56 (9th Cir. 2020)("Since Hobbs Act robbery is a crime of violence, it follows that the attempt to commit Hobbs Act robbery is a crime of violence.")).

Next, the United States maintains that the Court's reliance on the PSR is appropriate under the modified categorical approach.  See Response to Motion to Reconsider at 3-4 (citing United States v. Titties, 852 F.3d 1257, n.9 (10th Cir. 2017); United States v. Kennedy, 881 F.3d 14, 21 (1st Cir. 2018)).  The United States seeks to distinguish Eccleston's citations, arguing that Eccleston "authorities largely appear to be in the context of state plea hearings to determine sentencing issues in federal court -- not § 2255 motions like the case at hand. Plea hearing

transcripts are fair game as part of the modified categorical approach . . . ."  Response to Motion to Reconsider at 3.

Last, the United States asks the Court to deny Eccleston's request for a Certificate of Appealability, because "the Court correctly concluded in its MOO that Defendant was convicted of substantive Hobbs Act robbery."  Response to Motion to Reconsider at 4.

### 17.  **The Reply**.

Eccleston replies.  See Defendant's Reply in Support of His Motion to Alter or Amend the Judgment and, in the Alternative, for a Certificate of Appealability, filed September 29, 2020 (CIV. Doc. 30)("Reply to Motion to Reconsider").  Eccleston argues that the United States incorrectly applies the standard for a motion to reconsider, because "a motion to reconsider is appropriate when the court has obviously misapprehended a party's position."  Reply to Motion to Reconsider at 1 (quoting Regents of the Univ. of New Mexico v. Knight, No. CIV 99-577 JC, 2003 WL 26475526, at *1 (D.N.M. Aug. 8, 2003)(Conway, Senior J.)).  Eccleston argues that he is entitled to litigate points that his former counsel conceded.  See Reply to Motion to Reconsider at 2. Eccleston argues that there are several cases suggesting that attempted Hobbs Act is not a crime of violence and that the Tenth Circuit recently declined to address this issue.  See Reply to Motion to Reconsider at 2 (citing United States v. Kayarath, 2020 WL 4360778, at *4 (10th Cir. July 30, 2020)(unpublished)).  Eccleston contends that to prevent manifest injustice, Eccleston should be given the chance to litigate "still-developing case law supporting a position that has not been determined within the Tenth Circuit."  Reply to Motion to Reconsider at 2.

Eccleston argues that "the Court incorrectly merged attempted Hobbs Act robbery with substantive Hobbs Act robbery."  Reply to Motion to Reconsider at 2.  Eccleston contends that dividing the Hobbs Act "runs contrary to the cases it cited for support that the Hobbs Act is

divisible." Reply to Motion to Reconsider at 3 (citing <u>Harrison Johnson v. United States</u>, No. 2:12-cr-00336-JAD-CWH, 2018 WL 3518448, at *3 (D. Nev. July 19, 2018)(Dorsey, J.)(dividing Hobbs Act into six distinct crimes); <u>United States v. Hancock</u>, 168 F. Supp. 3d 817, 821 (D. Md. 2016)(dividing Hobbs Act into robbery and extortion)).  Eccleston argues that that the Hobbs Act is not divisible.  <u>See</u> Reply to Motion to Reconsider at 3.  Eccleston avers that courts often consider jury instructions to determine if a statute is divisible, <u>see</u> Reply to Motion to Reconsider at 3 (citing <u>United States v. Degeare</u>, 884 F.3d 1241, 1248 (10th Cir. 2018)("[I]f the indictment and jury instructions reiterate of the statutory alternatives, that is as clear an indication as any that each alternative is only a possible means of commission." (internal citations and quotations omitted)); <u>United States v. Bouziden</u>, 725 F. App'x 653, 656 (10th Cir.)), and that Hobbs Act jury instructions show that the statute is not disable, <u>see</u> Reply to Motion to Reconsider at 3 (citing <u>United States v. Merinord</u>, No. 5:15-CR-136, 2015 WL 6457166, at *3 (E.D.N.C. Oct. 26, 2015)("It does not appear that the [Hobbs Act] is divisible, as juries need not decide whether the defendant used actual force, threatened force, violence, fear, or acted under color of official right."); <u>United States v. Buffey</u>, 899 F.2d 1402, 1403 (4th Cir. 1990)).

Eccleston contends that the United States' argument that the preposition "or" indicates that the Hobbs Act is divisible fails, because the "word 'or' does not and cannot provide the certainty that is required to determine if a statute is divisible."  Reply to Motion to Reconsider at 4 (citing <u>United States v. Johnson</u>, 911 F.3d 1062, 1067 (10th Cir. 2018)("A statute containing alternatives is divisible only if we are certain that the alternatives are elements rather than means."); <u>Jimenez v. Sessions</u>, 893 F.3d 704, 712 (10th Cir. 2018)).  Eccleston maintains that, even if the Hobbs Act is divisible, it is only divisible into two component parts -- robbery and extortion: "It is simply impossible to be certain that the Hobbs Act is divisible into six distinct crimes in light of the

language used, jury instructions, Congressional intent, and the structure of the statute."  Reply to Motion to Reconsider at 4.

Next, Eccleston argues the United States is incorrect to rely on "United States v. Rodella and In re Moore[, 830 F.3d 1268 (11th Cir. 2016)], an out-of-circuit case, for the preposition that Mr. Eccleston must prove by a preponderance of the evidence standard that he is entitled to relief." Reply to Motion to Reconsider at 5.  Eccleston maintains that Tenth Circuit distinguishes the Armed Career Criminal Act's ("ACCA") residual clause from the Hobbs Act residual clause, meaning those cases are inapposite.  See Reply to Motion to Reconsider at 5.  Eccleston also attempts to distinguish these two cases, because "[i]n both Rodella and Moore, the underlying crime was known. . . . Here, though, Mr. Eccleston's crime is not known."  Reply to Motion to Reconsider at 6. Eccleston contends therefore that "[e]ven if Rodella was decided correctly, Mr. Eccleston would only have a burden of proof after the Government proves that Mr. Eccleston was convicted of a particular crime."  Reply to Motion to Reconsider at 6.

Next, Eccleston argues that attempted Hobbs Act robbery is a crime of violence in the Tenth Circuit.  See Reply to Motion to Reconsider at 6.  Eccleston contends the United States incorrectly relies on United States v. Melgar-Cabrera, 892 F.3d 1053, 1065-66 (10th Cir. 2018), because the case does not discuss attempted Hobbs Act robbery at all.  See Reply to Motion to Reconsider at 6-7.

Last, Eccleston contends that the Court impermissibly considered the factual basis for Defendant's sentence in its original sentence.  See Reply to Motion to Reconsider at 7.  Eccleston contends that the indictment alleges the elements necessary for attempted Hobbs Act robbery, but the Court failed to consider attempted Hobbs Act robbery in any regard.  See Reply to Motion to Reconsider at 7.  Eccleston argues the Court conducted "impermissible fact-finding that goes

against the heart of Shepard and the categorical and modified-categorical approaches," to "support a conviction for substantive Hobbs Act robbery."  Reply to Motion to Reconsider at 7-8.  Eccleston maintains that the Court failed to consider that defendants often do not challenge the basis for their convictions and that the factual basis for a plea can be different from what someone actually pleads to.  See Reply to Motion to Reconsider at 8 (citing Mathis v. United States, 136 S. Ct. 2243, 2253 (2016)("[A]t plea hearings, a defendant may have no incentive to contest what does not matter under the law; to the contrary, he 'may have good reason not to' — or even be precluded from doing so by the court."); United States v. Marcia-Acosta, 780 F.3d 1244, 1251 (9th Cir. 2015)("Admissions made during a plea hearing may be downright wrong, because the defendant often has little incentive to contest facts that are not elements of the charged offense, and the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations."); United States v. Preston, 682 F. App'x 509, 510 (8th Cir. 2017)).  Eccleston concludes, arguing that "[w]ithout engaging in impermissible fact-finding, the Court is left unable to determine if Mr. Eccleston pled to attempted or substantive Hobbs Act robbery.  The question is vague at best in the indictment, plea agreement, judgement, and on other Shepard documents."  Reply to Motion to Reconsider at 8.

**18.    The Hearing.**

The Court held a hearing on the Motion to Reconsider on October 21, 2020.  See Notice of Hearing, filed August 28, 2020 (CIV. Doc. 46)(text only).  Eccleston asked the Court to focus its opinion on his Motion to Reconsider; the United States' Response to Motion to Reconsider; and his Reply to Motion to Reconsider.  See Tr. at 4:13-16 (Harrison).  The Court noted that Eccleston had filed documents on his own and that his attorneys had also filed documents.  See Tr. at 4:17-25 (Court).  Eccleston noted that his attorney has moved to withdraw from representing Eccleston

and explained that "we're wrapping this case up." Tr. at 6:13-16 (Harrison). Eccleston stated that, although the case will continue at the Tenth Circuit, his attorney is asking "not to represent Mr. Eccleston . . . as to whether he wants to have continued representation . . . I think that's a matter for the Tenth Circuit." Tr. at 6:21-7:3 (Harrison).

Next, Eccleston asked the Court to focus its order on his argument that he "was indicted with attempted Hobbs Act robbery." Tr. at 12:10-12 (Harrison). Eccleston noted that, until recently, there was a district court split whether attempted Hobbs Act robbery is a crime of violence. See Tr. at 12:23-13:7 (Harrison). Eccleston argued that the Court should find that attempted Hobbs Act robbery is a crime of violence, because "the federal test for attempt is simply the substantial step not commission of a crime, that substantial step could involve no violence and no attempted violence." Tr. at 13:17-20 (Harrison). Eccleston emphasized that the Honorable Judge Diana Gribbon Motz, Circuit Judge for the United States Court of Appeals for the Fourth Circuit, in United States v. Taylor, 2020 WL 6053317 (4th Cir. Oct. 14, 2020), determined that "attempted Hobbs Act robbery is not a crime of violence for purposes of § 924(c)." Tr. at 13:21-14:4 (Harrison). Moreover, Eccleston continued that his Indictment is not "an indictment for conspiracy to commit Hobbs Act Robbery." Tr. at 14:18-20 (Harrison). Eccleston quoted from the concurrence of the Honorable Judge Robert E. Bacharach, Circuit Judge for the United States Court of Appeals for the Tenth Circuit when the Tenth Circuit denied en banc review in Nelson v. City of Albuquerque, 925 F.3d 1187, 1198 (10th Cir. 2019)(Bacharach, J., concurring):

> We faithfully apply the Servants of the Paracletes and the panel opinion in Nelson, which involved two motions under rule 59(e). We did not question the availability of rule 59 to correct the prior error. Here, for example, no one has questioned the district court's decision to decide the merits of the first rule 59(e) motion, which had been the defendants' first opportunity to challenge the correctness of the court's award of judgment as a matter of law to the plaintiffs.

Tr. at 17:19-25 (Harrison)(quoting <u>Nelson v. City of Albuquerque</u>, 925 F.3d at 1198 (Bacharach, J., concurring)(citing <u>Servants of Paraclete v. Does</u>, 204 F.3d 1005 (10th Cir. 2000); <u>Nelson v. City of Albuquerque</u>, 921 F.3d 925 (10th Cir. 2019))).  Eccleston insisted that, therefore, the body of law upon which the Court relied in the MOO "is not what the Court has in front of it today." Tr. at 18:1-9 (Harrison).  Eccleston concluded that the Court can respond to all pending motions in a single opinion.  <u>See</u> Tr. at 19:1-12 (Harrison).

The United States responded, and first noted that Eccleston has been convicted "of the two § 924(c) [offenses] in connection with the Hobbs Act robbery and carjacking offence."  Tr. at 23:18-22 (Walsh).  The United States maintained that the issue before the Court is "the § 924(c) in connection with the Hobbs Act robbery."  Tr. at 23:23-25 (Walsh).  The United States argued that, as the Court notes in the MOO, Eccleston "was convicted of substantive Hobbs Act robbery." Tr. at 25:1-6 (Walsh).  The United States disputed Eccleston's contention that he could have been convicted of attempted Hobbs Act robbery and instead argued that "the same reasons why the Court decided that he was not convicted of the conspiracy . . . pertain to the new argument in terms of attempted Hobbs Act robbery."  Tr. at 25:14-20 (Walsh).  The United States also asked the Court for a certificate of appealability.  <u>See</u> Tr. at 28:5-6 (Walsh).

## LAW REGARDING MOTION TO ALTER OR AMEND UNDER RULE 59(E)

Motions to reconsider in civil cases fall into three categories:

(i) a motion to reconsider filed within twenty-eight[8] days of the entry of judgment is treated as a motion to alter or amend the judgment under rule 59(e); (ii) a motion

---

[8]Former rule 59 provided for a ten-day period after entry of judgment to file motions to reconsider.  In 2009, the rule was amended, extending the filing period to twenty-eight days:

Experience has proved that in many cases it is not possible to prepare a satisfactory post-judgment motion in 10 days, even under the former rule that excluded intermediate Saturdays, Sundays, and legal holidays.  These time periods

to reconsider filed more than [twenty-eight] days after judgment is considered a motion for relief from judgment under rule 60(b); and (iii) a motion to reconsider any order that is not final is a general motion directed at the Court's inherent power to reopen any interlocutory matter in its discretion.

Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. 453, 462 (D.N.M. 2009)(Browning, J.)(citing Price v. Philpot, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005)), superseded by statute as stated in 2019 WL 1085179.  See Computerized Thermal Imaging, Inc. v. Bloomberg. L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).

Whether a motion for reconsideration should be considered a motion under rule 59 or rule 60 is not only a question of timing, but also "depends upon the reasons expressed by the movant." Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194, 1200 (10th Cir. 2011).   Where the motion "involves 'reconsideration of matters properly encompassed in a decision on the merits,'" a court considers the motion under rule 59(e).  Phelps v. Hamilton, 122 F.3d 1309, 1323-24 (10th Cir. 1997)(quoting Martinez v. Sullivan, 874 F.2d 751, 753 (10th Cir. 1989)).   In other words, if the reconsideration motion seeks to alter the district court's substantive ruling, then it should be considered a rule 59 motion and be subject to rule 59's constraints.   See Phelps v. Hamilton, 122 F.3d at 1324.   "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."  Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  A motion to alter or

---

are particularly sensitive because Appellate Rule 4 integrates the time to appeal with a timely motion under these rules.  Rather than introduce the prospect of uncertainty in appeal time by amending Rule 6(b) to permit additional time, the former 10-day periods are expanded to 28 days.

Fed. R. Civ. P. 59 advisory committee's notes.

amend under rule 59(e), however, is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of Paraclete v. Does, 204 F.3d at 1012. A district court has considerable discretion in ruling on a motion to reconsider. See Phelps v. Hamilton, 122 F.3d at 1324.

The Tenth Circuit reviews a district court's ruling on a motion to alter or amend "under an abuse of discretion standard." Phelps v. Hamilton, 122 F.3d at 1324. Under that standard "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." 122 F.3d at 1324. "The purpose [of a rule 59(e)] motion is to correct manifest errors of law or to present newly discovered evidence." Monge v. RG Petro-Machinery (Group) Co. Ltd., 701 F.3d 598, 611 (10th Cir. 2012)(internal quotation marks omitted)(quoting Webber v. Mefford, 43 F.3d 1340, 1345 (10th Cir. 1994)). "Where the motion requests a substantive change in the district court's judgment or otherwise questions its substantive correctness, the motion is a Rule 59 motion, regardless of its label." Yost v. Stout, 607 F.3d 1239, 1243 (10th Cir. 2010).

The Tenth Circuit has determined that the "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another." Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1252 (10th Cir. 2011)(citing Been v. O.K. Indus., Inc., 495 F.3d at 1225). In this context, "the doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" Been v. O.K. Indus., Inc., 495 F.3d at 1225 (quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)). "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., 495

F.3d at 1225.  In short, a district court can use whatever standard it wants to review an earlier interlocutory order.  It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether.

The best approach, in the Court's eyes, is to analyze motions to reconsider differently depending on three factors.  Cf. Been v. O.K. Indus., Inc., 495 F.3d at 1225 ("[T]he doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" (quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)).  First, the Court should restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges.  How "thoroughly" a point was addressed depends both on the amount of time and energy the Court spent on it, and on the amount of time and energy that the parties spent on it -- in briefing and orally arguing the issue, but especially if they developed evidence on the issue.  A movant for reconsideration thus faces a steeper uphill challenge when the prior ruling was on a criminal suppression motion, class certification motion, or preliminary injunction,[9] than when the prior

---

[9]The Court typically makes findings of fact and conclusions of law in ruling on these motions.  At first glance, it appears that the Federal Rules of Civil Procedure set forth additional standards -- beyond that which applies to other interlocutory orders -- for amending findings of fact and conclusions of law: "**Amended or Additional Findings.**  On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings -- or make additional findings -- and may amend the judgment accordingly.  The motion may accompany a motion for a new trial under Rule 59."  Fed. R. Civ. P. 52(b).  This rule appears to limit motions to reconsider orders with findings of fact and conclusions of law to twenty-eight days.  The rule's use of the term "entry of judgment," its reference to rule 59, and its adoption of the same time period that applies to motions to alter or amend a judgment, all lead the Court to conclude, however, that rule 52(b) -- and its twenty-eight-day time limit -- does not apply to interlocutory orders.  The time limit applies only to findings of fact and conclusions of law supporting a case-

- 44 -

ruling is, e.g., a short discovery ruling.  The Court should also look, not to the prior ruling's overall thoroughness, but to the thoroughness with which the Court addressed the exact point or points that the motion to reconsider challenges.  A movant for reconsideration thus faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.

Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence that the parties may produce, and use those factors to assess the degree of reasonable reliance which the opposing party has placed in the Court's prior ruling.  See 18B Charles Alan Wright, et al., Federal Practice & Procedure § 4478.1 (2d ed. 2018)("Stability becomes increasingly important as the proceeding nears final disposition . . . .  Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling.").  For example, if a defendant (i) spends tens of thousands of dollars removing legacy computer hardware from long-term storage; then (ii) obtains a protective order in which the Court decides that the defendant need not produce the hardware in discovery; then (iii) returns the hardware to long-term storage, sustaining thousands more in expenses; and (iv) several months pass, then the plaintiffs should face a higher burden in moving the Court to reconsider its prior ruling than they faced in fighting the motion for protective order the first time.

---

ending judgment -- such as those entered after a bench trial -- and to those giving rise to an interlocutory appeal that, if filed, divests the district court of its jurisdiction -- such as those entered in support of a preliminary injunction.

Third, the Court should consider the factors from Servants of the Paraclete v. Does.  The Court should be more inclined to grant motions for reconsideration if the movant presents (i) new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework; (ii)  new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around; or (iii) a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the Court erred.

These three factors should influence the degree to which the Court restricts its review of a prior ruling, but they do not necessarily mean that the Court should always apply a deferential standard of review.  The Court should pause before applying a standard of review to its own interlocutory orders that is more deferential than the standard that the Court of Appeals will apply to it, unless the Court concludes that the alleged error in the prior ruling was harmless, or the party moving for reconsideration waived its right to appeal the alleged error by not raising the appropriate argument.  Even in circumstances where the Court concludes that it is insulated from reversal on appeal, there are principled reasons for applying a de novo standard.  After all, if the Court was wrong in its earlier decision, then, generally speaking, it is unjust to maintain that result -- although the Court should weigh this injustice against any injustice that would result from upending the parties' reliance on the earlier ruling, which is the balancing test that the three factors above represent.

What the Court means by "restricting its review" is less about applying a deferential standard of review -- although that may be appropriate in some circumstances -- and more about reducing (i) the depth of the Court's analysis the second time around -- thus conserving judicial resources; and (ii) the impositions that relitigation of the prior ruling will impose on the party opposing the motion for reconsideration.  The Court should consider the time and expense that the

party opposing reconsideration spent in winning the earlier ruling, and should try to prevent that party from having to bear the same impositions again.  Basically, even if the Court ultimately analyzes a motion to reconsider under the same standard which it analyzed the motion that produces the earlier ruling, it should analyze the motion in a different way -- one focused on reducing the litigation burdens of the party opposing reconsideration.  For example, when a party moves the Court for a preliminary injunction, standard practice is that the Court holds an evidentiary hearing as a matter of course, regardless whether it looks as if the party has a good chance of prevailing.  If the party loses and the Court denies the injunction, however, and the party moves for reconsideration, the party should not be entitled to the presumption of an evidentiary hearing merely because he or she received that presumption the first time the Court considered the motion.

In light of these statements, it is perhaps better to characterize the increased burden that a movant for reconsideration faces as one of production and not of persuasion.  The Court analyzes motions to reconsider by starting where it ended in the prior ruling -- not by starting anew.  Parties opposing reconsideration can do the same, and they may stand on whatever evidence and argument they used to win the earlier ruling.  Movants for reconsideration, on the other hand, carry the full burden of production: they must persuade the Court, using only the evidence and argument they put before it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research; and they must convincingly refute both the counterarguments and evidence that the opposing party used to win the prior ruling and any new arguments and evidence that the opposing party produces while opposing the motion to reconsider.  Unlike the motion that produced the prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally.  The deck is stacked against a movant for

reconsideration, and if such a movant hopes to prevail, he or she must have not only a winning legal position, but the work ethic and tenacity to single-handedly lead the Court to his or her way of thinking.

The Court has recently commented on parties rearguing the same issues on a rule 59(e) motion:

> Under rule 59(e)'s framework, the Court is not restricted to rule 50(b)'s remedies and may alter the judgment when there is: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d at 1012. The Tenth Circuit has noted that motions to alter, amend, or reconsider should not rehash old arguments, or advance new arguments or facts that could have been raised earlier. See United States v. Amado, 841 F.3d [867], 871 [(10th Cir. 2016)]("A proper motion to reconsider does not simply state facts previously available or make arguments previously made."); Servants of Paraclete v. Does, 204 F.3d at 1012 ("Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."). As the Court has already noted, the Defendants' Motion raises the same arguments that the Defendants previously argued during their Motion to Alter. The Court, however, also concludes that Servants of Paraclete v. Does does not force the Court to deny a motion to amend or alter, simply because it raises identical issues; rather, it affords the Court the option to deny that motion for reasons of judicial efficiency. A court need not review a motion to alter or amend with the same rigor if the motion raises issues already considered, because it would waste time by forcing a judge to rewrite an opinion already rendered. If, on the other hand, a party raises an identical issue on a motion to alter, and, upon the district judge's reflection, perhaps after passions have cooled, he or she concludes that he or she erred previously, Servants of Paraclete v. Does does not chain that district judge to an erroneous legal conclusion. There is no sound reason for a district judge to be unable to change a ruling he or she has made if he or she has become concerned that he or she is wrong.

Nelson v. City of Albuquerque, 283 F. Supp. 3d 1048, 1099 (D.N.M. 2017)(Browning, J.)(altering a judgment, because officers were entitled to qualified immunity).

## LAW REGARDING RULE 60(b)

Rule 60(b) allows a court to relieve a party from a judgment or order.  See Fed. R. CIV. P. 60(b).  "Rule 60(b) is an extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule."  Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983).  Rule 60(b) "is not a substitute for appeal and must be considered with the need for finality of judgment."  Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v. McCormick, 608 F.2d 410, 413 (10th Cir. 1979)).  The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice.  Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (quoting Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 401 (5th Cir. 1981)).  Once a case is "unconditionally dismiss[ed],"[10] the Court loses all jurisdiction over the case other than the ability

---

[10]Rule 41(a)(2), which governs all dismissals undertaken by way of a court order, grants courts discretion to condition dismissal "on terms that the court considers proper," Fed. R. CIV. P. 41(a)(2), formerly, "on terms and conditions as the court deems proper," Smith v. Phillips, 881 F.2d 902, 904-05 (10th Cir. 1989)(quoting Fed. R. Civ. P. 41(a)(2) (1988)).  Such conditions "could include retention of some jurisdiction by the court."  Smith v. Phillips, 881 F.2d at 905 (citing McCall-Bey v. Franzen, 777 F.2d 1178, 1188-90 (7th Cir. 1985)).  The Tenth Circuit has stated that, if the dismissal is pursuant to rule 40(a)(1)(A)(ii), undertaken without a court order, then the court "is powerless to condition dismissal . . . upon a retention of jurisdiction."  Smith v. Phillips, 881 F.2d at 905.  This rule is likely no longer true; the district court can probably attach a condition retaining jurisdiction, but only if the parties agree.

> Even when . . . the dismissal is pursuant to Rule 41(a)(1)(ii) [(now rule 41(a)(1)(A)(ii))] (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain jurisdiction over the settlement contract) [sic] if the parties agree.

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381-82 (1994).
The only factors counseling hesitation in endorsing the view that a court may retain jurisdiction of a case dismissed pursuant to rule 41(a)(1)(A) are that: (i) the proclamation in Kokkonen v. Guardian Life Insurance Co. of America was dicta, and "[i]t is to the holdings of [the Supreme Court's] cases, rather than their dicta, that we must attend," 511 U.S. 375, 379; and

to hear motions under rule 60(b).  Smith v. Phillips, 881 F.2d 902, 904 (10th Cir. 1989)("We agree with the [United States Court of Appeals for the] Seventh Circuit that '[a]n unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by [Fed. R. CIV. P.] 60(b)." (alterations in original)(quoting McCall-Bey v. Franzen, 777 F.2d 1178, 1190 (7th Cir. 1985))).  See Thompson v. THI of N.M. at Casa Arena, 2008 WL 5999653, at *28 (requiring, after dismissing a complaint, that a plaintiff reopen the case before amending the complaint, because "[w]hen a complaint has been dismissed, there is nothing to amend. . . .  Allowing amendment of a dismissed complaint would also evade the specific grounds, such as rule 60(b), that the Federal Rules of Civil Procedure have established for court action on cases in which final judgment has been entered").

Motions to obtain relief from a judgment or order based on "mistake, inadvertence, surprise, or excusable neglect," Fed. R. CIV. P. 60(b)(1), must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding," Fed. R. CIV. P. 60(c)(1).  See Blanchard v. Cortes-Molina, 453 F.3d 40, 44 (1st Cir.

---

(ii) the Court refers to "embody[ing] the settlement contract in its dismissal order," but rule 41(a)(1)(A) provides -- in its very title -- that it pertains to dismissals effectuated "*Without a Court Order*," Fed. R. Civ. P. 41(a)(1)(A) (emphasis in original).  Smith v. Phillips must, however, be interpreted in light of the Supreme Court's subsequent decision in Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375 (1994), in which the Supreme Court held that a district court's ancillary jurisdiction does not extend to the post-dismissal enforcement of federal case settlement agreements, unless: (i) there is an independent basis of federal subject-matter jurisdiction to hear the claims; (ii) the court incorporated the terms of the settlement agreement into its order of dismissal; or (iii) the court includes a term "'retaining jurisdiction'" in its order of dismissal.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 381.  That decision continues to permit district courts to condition dismissals under rule 41(a)(2), see 511 U.S. at 381, and appears to have no bearing on courts' power to reopen cases pursuant to rule 60(b), see 511 U.S. at 378 (noting, without opining on, the practice of "[s]ome Courts of Appeals" to "reopen[ ] . . . dismissed suit[s] by reason of breach of the agreement that was the basis for dismissal").

2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought within one year of the judgment." (quoting Fed. R. CIV. P. 60(b))).  This deadline may not be extended and is not subject to the court's discretion.  See Fed. R. CIV. P. 6(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).").  The pendency of an appeal does not toll the time requirement for pursuing a motion under rule 60(b).  See Fed. R. CIV. P. 60(c)(1); Griffin v. Reid, 259 F. App'x 121, 123 (10th Cir. 2007)(unpublished);[11] Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year time limit of Rule 60(b).").  No time limit applies to rule 60(b)(6), other than that the motion be made within a reasonable time.  See Fed. R. CIV. P. 60(c)(1).

    1.    **Rule 60(b)(1).**

The Tenth Circuit uses three factors in determining whether a judgment may be set aside in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the default; (ii) whether the moving party has a meritorious defense; and (iii) whether setting aside the

---

[11]Griffin v. Reid is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Griffin v. Reid, Pyeatt v. Does, 19 F. App'x 785 (10th Cir. 2001)(unpublished), and Chavez v. Primus Auto. Fin. Servs., 125 F.3d 861, 1997 WL 634090 (10th Cir. 1997)(unpublished table decision), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

judgment will prejudice the nonmoving party.  See United States v. Timers Preserve, 999 F.2d

452, 454 (10th Cir. 1993).   Under some circumstances, for instance, a party can rely on rule

60(b)(1) for a mistake by their attorney or when their attorney acted without their authority.  See

Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon

mistake are intended to provide relief to a party . . . when the party has made an excusable litigation

mistake or an attorney has acted without authority . . . .").   Mistake in this context entails either

acting without the client's consent or making a litigation mistake, such as failing to file or comply

with deadlines.  See Yapp v. Excel Corp., 186 F.3d at 1231.  If the alleged incident entails a

mistake, then it must be excusable, meaning that the party was not at fault.  See Pioneer Inv. Servs.

v. Brunswick Assocs. Ltd. P'ship, 507 U.S. at 395 ("This leaves, of course, the Rule's requirement

that the party's neglect be 'excusable.'"); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th

Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief

under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the

party."); Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding attorney

carelessness is not a basis for relief under Rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result

of an attorney's deliberate litigation tactics.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 577.

This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot
> now avoid the consequences of the acts or omissions of this freely selected agent.
> Any other notion would be wholly inconsistent with our system of representative
> litigation, in which each party is deemed bound by the acts of his lawyer agent and
> is considered to have notice of all facts, notice of which can be charged upon the
> attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. at 397 (internal quotation marks omitted)(quoting Link v. Wabash R.R., 370 U.S. 626, 633-34 (1962)).  The Tenth Circuit has held that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct" and has noted that those "who act through agents are customarily bound," even though, when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences."  Gripe v. City of Enid, 312 F.3d 1184, 1189 (10th Cir. 2002).  The Court has previously stated:

> There is a tension between how the law treats attorney actions that are without authority, thus permitting relief under rule 60(b), and how the law treats those attorney actions which are inexcusable litigations decisions, thus failing to qualify for relief; although the distinction between those actions may not always be logical, it is well established.

Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at *7 (D.N.M. May 10, 2012)(Browning, J.).[12]

---

[12]The Supreme Court has recognized that individuals must be "held accountable for the acts and omissions of their chosen counsel," and that the "proper focus is upon whether the neglect of respondents and their counsel was excusable."  Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. at 397 (emphasis in original).  At the same time, the Tenth Circuit has held that, when counsel acts without authority, rule 60(b)(1) provides relief from judgment.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 576 ("[A]s a general proposition, the 'mistake' provision in Rule 60(b)(1) provides for the reconsideration of judgment only where . . . an attorney in the litigation has acted without authority from a party . . . .")(quoting Fed. R. Civ P. 60(b)(1).  "There is a tension between these decisions, because, ordinarily, a client will not authorize his or her attorney to act in a negligent manner or to make a mistake."  Wilson v. Jara, 2012 WL 1684595, at *7 n.7.  When the client acknowledges that he or she has hired the attorney, there is a difference between decisions which terminate the litigation, such as settlement or a stipulation of dismissal, and other litigation decisions, because decisions to terminate the litigation are ordinarily left to the client.  See Chavez v. Primus Auto. Fin. Servs., 125 F.3d 861, 1997 WL 634090, at *4-5 (10th Cir. 1997)(unpublished table decision)(citing Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., 1988-NMSC-010 ¶ 3, 749 P.2d 90, 92; Bolles v. Smith, 1979-NMSC-019 ¶ 11, 526, 591 P.2d 278, 280).  "Otherwise the Court has difficulty explaining attorney decisions which are made without authority and attorney decisions for which it is acceptable that the client suffer the consequences."  Wilson v. Jara, 2012 WL 1684595, at *7 n.7.

_____

In <u>Chavez v. Primus Automotive Financial Services</u>, the Tenth Circuit recognized that "the mere employment of an attorney does not give him the actual, implied or apparent authority to compromise his client's case." 1997 WL 634090, at *4. Few Tenth Circuit cases analyze whether an attorney has acted without authority. The cases in which the Tenth Circuit has found a lack of authority appear to fall into two categories: (i) cases in which the attorney entered an appearance without the client's knowledge, see <u>FDIC v. Oaklawn Apartments</u>, 959 F.2d 170, 175-76 (10th Cir. 1992)(finding that there were factual issues which the district court needed to resolve where "[t]here is nothing in the record indicating when Appellants became aware of the lawsuit and of Newcombe's purported representation"); and (ii) cases in which the attorney's actions terminate the litigation, see <u>Thomas v. Colo. Tr. Deed Funds, Inc.</u>, 366 F.2d 136, 139-40 (10th Cir. 1966)(finding that, as to one of the plaintiffs, "the record shows that he did not participate in the transactions and negotiations with the S.E.C. and did not consent to the execution of the stipulation of the judgment"); <u>Cashner v. Freedom Stores, Inc.</u>, 98 F.3d at 577 (citing with approval <u>Surety Ins. Co. of Cal. v. Williams</u>, 729 F.2d 581, 582-83 (8th Cir. 1984), which held that a "judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry"). Because decisions that terminate the litigation are ordinarily the client's prerogative, those decisions fit more squarely within rule 60(b)(1)'s "lack of consent" prong.

Decisions where the purported client is unaware of the litigation, or of the attorney's attempt to act on his or her behalf, would also fit within rule 60(b)(1)'s "lack of consent" prong, because an individual has the right to choose his or her own attorney, or to decide whether he or she wishes to have any attorney. Other litigation decisions are made jointly or are within the attorney's control, see Model Code of Prof'l Conduct R. 1.2 cmt. 1 (2011)("With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client . . . and may take such action as is impliedly authorized to carry out the representation."); <u>Pittman ex rel. Sykes v. Franklin</u>, 282 F. App'x 418, 427 n.6 (6th Cir. 2008)(unpublished)("[T]he decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstances in which an attorney may act without consulting his or her client."), and, thus, to give final judgments meaning and allow cases to terminate, it is logical that those decisions must fall within the "excusable litigation mistake" prong, or be based on a substantive mistake of law or fact.

Although the Tenth Circuit does not appear to have expressed its views on where the line is drawn between attorneys acting without consent and litigation mistakes, or acknowledged the tension between these two categories, the Court concludes that the appropriate division is, when the client is aware that the attorney is acting on his or her behalf, between decisions which dispose of the case and ordinarily require client consent, and other routine attorney decisions which take place over the course of the case. The Court also notes that rules of professional conduct require, "[i]n a criminal case," for a lawyer to "abide by the client's decision, after consultation with the lawyer, as to the plea to be entered, whether to waive a jury trial and whether the client will testify." Model Rules of Prof'l Conduct R. 1.2(a). While a decision on the plea to be entered in a criminal case is comparable to whether to settle a civil case, the Court has not located any decisions permitting rule 60(b) relief when a civil attorney waives his or her client's right to jury trial. One unpublished decision from the United States Court of Appeals for the Fourth Circuit discusses briefly a scenario where, without resolving the issue's merits, a criminal defendant raised through

2.      **Rule 60(b)(6).**

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or proceeding for "any other reason that justifies relief."  Fed. R. CIV. P. 60(b)(6).  No time limit applies to rule 60(b)(6), save that the motion be made within a reasonable time.  See Fed. R. CIV. P. 60(c)(1).  "Thus, to the extent it is applicable, clause (6) appears to offer a means of escape from the one-year limit that applies to motions under clauses (1), (2), and (3)."  11 Charles Alan Wright, Arthur R. Miller & Mary Kane, Federal Practice & Procedure § 2864, at 490 (2d ed. 2012).  In Pioneer Investment Services Co. v. Brunswick Associates Ltd., the Supreme Court reasoned that, to avoid abrogating the one-year time limit for rule 60(b)(1) to (3), rule 60(b)'s "provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)."  507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988)).  "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)."  12 James Wm. Moore et al., Moore's Federal Practice, Civil § 60.48[2], at 60-182 (3d ed. 2013).  Accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 n.11 ("This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive.").

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case."  Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted)(quoting Pierce v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975).  "The Rule does not

---

a rule 60(b) motion in a habeas preceding that "his trial counsel had prevented him from testifying in his defense."  United States v. McMahan, 8 F. App'x 272, 274 (4th Cir. 2001)(unpublished).

particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 (quoting Klapprott v. United States, 335 U.S. 601, 614-15 (1949)).  Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief.  See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence.").  Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)].  In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured."  Pierce, 518 F.2d at 723. However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6).  Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

Van Skiver v. United States, 952 F.2d at 1244-45.

"Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief.'"  Wright et al., supra, § 2864, at 483 (quoting Fed. R. CIV. P. 60(b)(6)).  See Marcotte, In re Ortega v. Burlington N. Santa Fe Rail Corp., No. CIV 04-0836 JB/RLP, 2007 WL 5685130, at *29 (D.N.M. Oct. 11, 2007)(Browning, J.)("Rule 60(b)(6), given its more liberal time restraints, is reserved for the most egregious cases.).  The Supreme Court expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable. In Klapprott [v. United States, 335 U.S. 601 (1949)], for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control. Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 & n.11; Ackerman v. United States, 340 U.S. 193, 197-200 (1950); Klapprott v. United States, 335 U.S. at 613-14). See Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment."(quoting Ackerman v. United States, 340 U.S. at 199)). In Gonzalez v. Crosby, the Supreme Court found a change in the law during the pendency of a habeas petition was not an extraordinary circumstance. See 545 U.S. at 537.

When the Supreme Court first addressed rule 60(b)(6) a year after it was introduced to the federal rules, while the Justices were sharply divided on other issues, no dispute arose from the statement of the Honorable Hugo Black, former Associate Justice of the Supreme Court: "[O]f course, the one year limitation would control if no more than 'neglect' was disclosed by the petition. In that event the petitioner could not avail himself of the broad 'any other reason' clause of 60(b)." Klapprott v. United States, 335 U.S. at 613 (quoting Fed. R. CIV. P. 60(b)). See Wright et al., supra, § 2864, at 493.

Examples where courts apply rule 60(b)(6) include "settlement agreements when one party fails to comply" and courts use the rule "to return the parties to the status quo," or in cases where fraud is used by a "party's own counsel, by a codefendant, or by a third-party witness," which does

not fit within rule 60(b)(3)'s provision for fraud by an adverse party.  Wright et al., supra, § 2864, at 485, 487.  The most common application is to grant relief "when the losing party fails to receive notice of the entry of judgment in time to file an appeal."[13]  Wright et al., supra, § 2864, at 488. When moving for relief pursuant to rule 60(b)(6), it is not enough to argue the same issues that a court has already addressed.   See Pyeatt v. Does, 19 F. App'x 785, 788 (10th Cir. 2001)(unpublished)(concluding that a motion to reconsider that "simply reasserts information considered by the district court in its initial determination . . . does not meet the extraordinary circumstances standard required for Rule 60(b)(6) relief").

## LAW REGARDING 28 U.S.C. § 2255

Eccleston seeks collateral review of his sentence under 28 U.S.C. § 2255.  See Motion [to Vacate] at 1.  Section 2255 provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

[13]According to commentators,

[m]ost of those cases, however, predate the 1991 amendment to Appellate Rule 4(a)(6), which now provides relief from the strict appellate filing rule if the party did not learn of the entry of the judgment.  In light of that change, most courts have held that resort to Rule 60(b) as a means of extending the appeal time no longer is appropriate, although the Rule 60(b) approach is still utilized in some courts, primarily in the [United States Court of Appeals for the] Sixth Circuit.

Wright et al., supra, § 2864, at 489-90 (citations omitted).  See Clark v. Lavallie, 204 F.3d 1038, 1041 (10th Cir. 2000)("Rules 4(a)(6) and 77(d) 'preclude[] the use of Fed. R. Civ. P. 60(b)(6) to cure problems of lack of notice.'" (citations omitted)).

28 U.S.C. § 2255(a).  The defendant is to file the initial motion under 28 U.S.C. § 2255 with the

court that imposed the sentence for that court's consideration.  See Browning v. United States, 241

F.3d 1262, 1264 (10th Cir. 2001).  Rule 4(b) of the Rules Governing Section 2255 Proceedings

states:

> The judge who receives the motion must promptly examine it.  If it plainly
> appears from the motion, any attached exhibits, and the record of prior proceedings
> that the moving party is not entitled to relief, the judge must dismiss the motion and
> direct the clerk to notify the moving party.

Rules Governing Habeas Proceedings 4(b).  Section 2255 provides that a United States Court of

Appeals panel must certify a second or successive motion in accordance with § 2244 to contain:

(i) newly discovered evidence that would be sufficient to establish by clear-and-convincing

evidence that no reasonable factfinder would have found the movant guilty of the offense; or (ii) a

new rule of constitutional law that was previously unavailable and the Supreme Court made

retroactive to cases on collateral review.  See 28 U.S.C. § 2255(h).  Section 2244 requires that,

before a second or successive application is filed in the district court, the applicant shall move the

appropriate court of appeals for an order authorizing the district court to consider the application.

See 28 U.S.C. § 2244(b)(3)(A).  A district court lacks jurisdiction to consider a second or

successive motion absent the requisite authorization.  Here, the Tenth Circuit has certified

Eccleston's Motion such that the Court has jurisdiction.  See Certification Order at 1.

## LAW REGARDING 18 U.S.C. § 924

Section 924 of Title 18 of the United States Code provides penalties for crimes of violence

involving firearms.  Section 924(c)(1)(A) states that

> Except to the extent that a greater minimum sentence is otherwise provided
> by this subsection or by any other provision of law, any person who, during and in
> relation to any crime of violence or drug trafficking crime (including a crime of
> violence or drug trafficking crime that provides for an enhanced punishment if

committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime --

    (i)    be sentenced to a term of imprisonment of not less than 5 years;

    (ii)    if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

    (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A).  The statute provides the definition for "crime of violence":

    (3)    For purposes of this subsection the term "crime of violence" means an offense that is a felony and --

    (A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

    (B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Courts have titled the first clause, 18 U.S.C. § 924(c)(3)(A), the "elements clause," and the second clause, 18 U.S.C. § 924(c)(3)(B), the "residual clause."  E.g. United States v. Davis, 139 S. Ct. at 2325.  Because the residual clause is "almost identical" to clauses in related statutes, United States v. Davis, 139 S. Ct. at 2325 (discussing the similarity between the residual clauses in the Armed Career Criminal Act and the Immigration and Nationality Act), courts have interpreted these clauses in a consistent manner, see United States v. Davis, 139 S. Ct. at 2329 (stating that "the same language in related statutes carries a consistent meaning").  The key similar features are "an ordinary-case requirement and an ill-defined risk threshold -- combined in the same constitutionally problematic way."  Sessions v. Dimaya, 138 S. Ct. 1204, 1207 (2018).

The Tenth Circuit generally uses the "categorical approach"[14] when deciding whether a

predicate offense qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(b), as long as the

---

[14]The categorical approach is not without critics.  The approach's focus on statutory convictions rather than on actual conduct has led some judges to characterize it as a "judicial charade," Ovalles v. United States, 905 F.3d 1231, 1253 (11th Cir. 2018)(Pryor, J., concurring), and note that the categorical approach "require[s] that judges ignore the real world," United States v. Chapman, 866 F.3d 129, 136 (3d Cir. 2017)(Jordan, J., concurring).  Justice Thomas recently called the approach "an absurdity."  Quarles v. United States, 139 S. Ct. 1872, 1880 (2019)(Thomas, J., concurring).  The Honorable J. Harvie Wilkinson, United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, described the categorical approach as "a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence," United States v. Doctor, 842 F.3d 306, 313 (4th Cir. 2016)(Wilkinson, J., concurring), and pleads: "Heaven help us," United States v. McCollum, 885 F.3d 300, 314 (4th Cir. 2018)(Wilkinson, J., dissenting).

Although Justice Alito has described the categorical approach as a recent judicial invention, see Chambers v. United States, 555 U.S. 122, 132 (2009)(Alito, J., concurring)("[O]nly Congress can rescue the federal courts from the mire into which . . . [United States v. Taylor, 495 U.S. 575 (1990)]'s 'categorical approach' have pushed us."), the interpretive canon dates at least to 1891, when Congress provided that noncitizens were removable on the basis of criminal conviction involving moral turpitude, see Act of Mar. 3, 1891, ch. 551, § 1, 26 Stat. 1084, 1084.  Courts interpreted this provision as requiring examination not of an offense's facts, but rather of the statute of conviction.  See, e.g., United States ex rel. Guarino v. Uhl, 107 F.2d 399, 400 (2d Cir. 1939)("[D]eporting officials may not consider the particular conduct for which the [noncitizen] has been convicted."); United States ex rel. Mylius v. Uhl, 210 F. 860, 863 (2d Cir. 1914)(explaining that whether a crime involves moral turpitude "must be determined from the judgment of conviction and not from the testimony adduced at the trial"); Alina Das, The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law, 86 N.Y.U. L. Rev. 1669, 1689 (2011).  Further, the categorical approach's proponents note that Congress typically requires the categorical approach in relevant statutes.  See United States v. Davis, 139 S. Ct. at 2328 ( "It's not even close; the statutory text commands the categorical approach."); Mathis v. United States, 136 S. Ct. at 2552; Taylor v. United States, 495 U.S. at 600-01.  Finally, the Supreme Court says that the categorical approach avoids practical challenges in reviewing, as is the case here, decades-old conviction records.  See Moncrieffe v. Holder, 569 U.S. 184, 200-01 (2013).

> The factual approach . . . would transform the sentencing hearing into a series of mini-trials in which the defendant rehashes his version of the events that led to his predicate convictions and the prosecution searches for stale evidence to prove an element that was necessarily proved or admitted at the prior proceeding.

statute of conviction is indivisible.  United States v. Melgar-Cabrera, 892 F.3d at 1061.  See United States v. Bowen, 936 F.3d at 1102.  When the court uses the categorical approach to determine whether the predicate act is a crime of violence, the court looks "'only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction.'"  United States v. Bowen, 936 F.3d at 1102 (quoting United States v. Serafin, 562 F.3d 1105, 1107-08 (10th Cir. 2009))(quotations omitted in original).  The Supreme Court has described elements as that which the prosecution must necessarily prove at trial or to which the defendant must plead "'to sustain a conviction.'"  Mathis v. United States, 136

---

United States v. Wilson, 951 F.2d 586, 590 (4th Cir. 1991).  Similarly, two defendants with identical conduct could face very different sentencing results depending on the detail that each's sentencing record provides.

The Supreme Court has also held that the categorical approach safeguards constitutional interests: the Sixth Amendment to the Constitution of the United States of America generally prohibits the sentencing judge from determining facts underlying a prior conviction to determine a sentencing enhancement's applicability, because "only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction."  Mathis v. United States, 136 S. Ct. at 2252.  The categorical approach thus requires that prior-conviction enhancements rest on legally defined predicate convictions.  See Mathis v. United States, 136 S. Ct. at 2252.  The Supreme Court has also noted that the approach safeguards rights to fair notice that the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution guarantee, see Mathis v. United States, 136 S. Ct. at 2253, because, "at the time that a defendant decides to plead guilty to a [predicate] crime, the defendant would likely have no real notice of the potentially severe federal consequences of a decision not to challenge the [government's] characterization of the defendant's underlying conduct," United States v. Faust, 853 F.3d 39, 64 (1st Cir. 2017)(Barron, J., concurring).  Accordingly, the categorical approach may, in some instances, yield absurd results, but the Supreme Court has concluded that those results are the cost of achieving the best systemic outcome.

Nonetheless, it is evident that the categorical approach subverts Congressional intent to enhance sentences for repeat, violent offenders, even where it is clear that a defendant's predicate conviction factually rests on a violent crime.  The categorical approach invites post hoc counterfactuals that allow judges to vacate sentences that are clearly based on violent crimes.  "The upshot of this 'counterintuitive' exercise, see Mathis, 136 S. Ct. at 2251, is that the categorical approach can serve as a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence."  United States v. Doctor, 842 F.3d at 313 (Wilkinson, J., concurring).

S. Ct. at 2248 (quoting <u>Black's Law Dictionary</u> at 634 (10th ed. 2014)).  Alternatively, the Supreme Court has described facts, in the categorical context, as "mere real-world things -- extraneous to the crime's legal requirements . . . .  They are 'circumstance[s]' or 'event[s]' having no 'legal effect [or] consequence'" that "need neither be found by a jury nor admitted by a defendant." <u>Mathis v. United States</u>, 136 S. Ct. at 2248 (quoting <u>Black's Law Dictionary</u> at 709))(alterations in <u>Mathis v. United States</u>).  Using the categorical approach, the court compares the "scope of conduct covered by the elements of the crime" with the statute's "'definition of crime of violence.'"  <u>United States v. O'Connor</u>, 874 F.3d at 1151 (quoting U.S.S.G. § 4B1.2(a)).

"Some statutes, however, have a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder. . . .  A single statute may list elements in the alternative, and thereby define multiple crimes." <u>Mathis v. United States</u>, 136 S. Ct. at 2249.  The court must modify the categorical approach "in a narrow range of cases where the statute of conviction is divisible" -- meaning that the statute's subparts describe alternative crimes as opposed to different ways of committing the same offense.  <u>United States v. Pam</u>, 867 F.3d 1191, 1203 (10th Cir. 2017)(citing <u>Descamps v. United States</u>, 133 S. Ct. at 2281).  If the statute is divisible, this "modified categorical approach" allows the court to "consult record documents from the defendant's prior case for the limited purpose of identifying which of the statute's alternative [crimes] formed the basis of the prior conviction."  <u>United States v. Titties</u>, 852 F.3d at 1266.  Once identified, the Court "compares those elements" of the alternative crime to the statute's definition of "crime of violence" as it would under the categorical approach.  <u>United States v. Titties</u>, 852 F.3d 1266 (quoting <u>Descamps v. United States</u>, 133 S. Ct. at 2281).  <u>See</u> <u>United States v. Henry</u>, No. CR 11-2660 JB, 2017 WL 6729963, at *4 (D.N.M. Dec. 31, 2017)(Browning, J.).

The reviewing court must decide the statutory provision on which the sentencing court relied for conviction.  See United States v. Driscoll, 892 F.3d at 1135.  The Tenth Circuit has stated that the movant carries the burden at the merits stage of the movant's first § 2255 challenge to prove that it is "'more likely than not'" that the sentencing court used the residual clause as the basis of sentencing.  See United States v. Driscoll, 892 F.3d at 1135 (quoting from and adopting the test of Beeman v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017)).[15]

---

[15]The Court previously relied on United States v. Driscoll in Rodella v. United States.  See 435 F. Supp. 3d 1222, 1241 n.6 (D.N.M. 2020)(Browning, J.).  There, the Court stated:

> Although the Tenth Circuit announced this rule in a Johnson v. United States, __ U.S. __, 135 S. Ct. 2551(2015), challenge, the Tenth Circuit has treated both the Johnson v. United States and United States v. Davis residual clauses interchangeably, so the Court treats the challenges to those clauses using law applicable to both clauses.

Rodella v. United States, 435 F. Supp. 3d 1222, 1241 n.6.  Eccleston challenged the Court's reliance on United States v. Driscoll in his Reply to United States' Response to Petitioner's Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255, filed May 8, 2020 (Civ. Doc. 14)("Reply").  The Court recites its analysis from its MOO below and addresses Eccleston's new arguments raised in his Motion to Reconsider in its Analysis § I, infra.  In its MOO, the Court explained:

> Eccleston argues that United States v. Driscoll is inapposite.  See Reply at 1.  Eccleston asserts, instead, that, although United States v. Driscoll provides that the defendant holds the burden of demonstrating that the sentencing court relied on an impermissible statute in a § 2255 collateral proceeding, "such a rule . . . has no bearing where the issue is, as here, what crime was the defendant actually convicted of[.]"  Reply at 1.  The Court previously relied on United States v. Driscoll in Rodella v. United States.  See 2020 WL 406389, at *11 n.6.  There, the Court stated:
>
>> Although the Tenth Circuit announced this rule in a Johnson v. United States, __ U.S. __, 135 S. Ct. 2551(2015), challenge, the Tenth Circuit has treated both the Johnson v. United States and United States v. Davis residual clauses interchangeably, so the Court treats the challenges to those clauses using law applicable to both clauses.

Rodella v. United States, 2020 WL 406389, at *11 n.6.  Eccleston acknowledges the Court's reliance on United States v. Driscoll but states that

- 64 -

this analysis erroneously conflates two distinct concepts.  On the one hand, the ACCA, found at § 924(e), is not a criminal statute for which a defendant may be charged and convicted; rather, it is a statute providing for an enhanced sentence when a defendant is convicted of a, separate, § 922(g) charge.  Section 924(c), on the other hand, is a distinct crime for which a defendant may be substantively charged and convicted.

Reply at 2.  The Court explained, on the defendant's motion for a certificate of appealability in Rodella v. United States, No. CV 19-0275 JB/CG, 2020 WL 1495752, at *1 (D.N.M. Mar. 27, 2020)(Browning, J.), that there is a "Court of Appeals split regarding a 28 U.S.C. § 2255 petitioner's burden of proof," but that Tenth Circuit precedent binds the Court, 2020 WL 1495752, at *1, *7.  The Tenth Circuit has established that a petitioner has the burden to demonstrate that he or she is entitled to relief in a 28 U.S.C. § 2255 motion.  See In re Moore, 830 F.3d 1268, 1273 (11th Cir. 2016)(collecting cases from the United States Courts of Appeals for the First, Second, Fourth, Fifth, Eighth, and Seventh Circuits).  The Tenth Circuit has "required movants to show something more" than some other courts to bring a Johnson v. United States claim.  United States v. Taylor, 873 F.3d 476, 480 (5th Cir. 2017)(citing United State v. Snyder, 871 F.3d 1122, 1129 (10th Cir. 2017)).  The preponderance-of-the-evidence standard requires the petitioner to demonstrate that he or she is entitled to relief in a 28 U.S.C. § 2255 proceeding.  The preponderance-of-the-evidence standard for United States v. Davis claims, therefore, is consistent with the petitioner's burden of proof in Tenth Circuit Johnson v. United States cases and in other 28 U.S.C. § 2255 cases in other courts.

Eccleston notes, however, that the issue here is whether Eccleston's Count V predicate conviction rests on aiding and abetting or substantive Hobbs Act robbery rather than on conspiring to commit Hobbs Act robbery.  See Reply at 1-2.  Eccleston avers that the burden of proof that United States v. Driscoll assigns "makes sense when the question is what prior conviction a district court relied on in determining a sentence," but Eccleston contends that this burden allocation is inapposite in the Court's determination of the crime to which Eccleston pled guilty in Count V.  Reply at 1-2.  Removing this burden aids Eccleston, because it entitles him to relief if it is impossible to determine the crime to which he pled guilty.  See, e.g., United States v. Chapman, 666 F.3d at 228 ("[W]hen a defendant pleads guilty to a formal charge in the indictment which alleges conjunctively the disjunctive elements of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct.").  Alternatively, if Eccleston holds the burden of proof, he is not entitled to relief unless he can demonstrate, by a preponderance of the evidence, that he pled guilty to conspiracy to commit Hobbs Act robbery, and not to substantive or aiding and abetting Hobbs Act robbery.  See United States v. Driscoll, 892 F.3d at 113 (adopting the rule that "'the movant must show that -- more likely than not -- it was use of the residual clause that led to the sentencing

court's enhancement of his sentence.'" (quoting Beeman v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017))).

In United States v. Driscoll, the Tenth Circuit adopted the United States Court of Appeals for the Eleventh Circuit's rule that the petitioner must prove, "at the merits stage of a first § 2255 challenge," that it is "'more likely than not [that] it was use of the residual clause that led to the sentencing court's enhancement of his sentence.'"  United States v. Driscoll, 892 F.3d at 1135 (quoting Beeman v. United States, 871 F.3d at 1222).  As a preliminary matter, a § 2255 petitioner generally holds the burden of demonstrating that he or she is entitled to relief, see United States v. Snyder, 871 F.3d at 1127 (noting that § 2255 petitioners hold the burden to demonstrate actual prejudice), but that does not necessarily mean that the petitioner "bears the specific burden of showing that the district court relied only on the residual clause in finding that the Section 924(c)(1)(A) violation was based on a statutorily designated predicate offense," Mannie v. United States, No. 3:19-CV-00632, 2020 WL 1923229, at *5 n.8 (M.D. Tenn. Apr. 21, 2020)(Richardson, J.).  The Tenth Circuit does not appear to have ruled on the petitioner's precise burden when asserting error under United States v. Davis, so the Court has relied on the Tenth Circuit's decisions that analyze § 2255 petitions asserting error under analogous Supreme Court precedent.  See Rodella v. United States, 2020 WL 406389, at *11 n.6 (asserting that the Tenth Circuit treats "both the Johnson v. United States and United States v. Davis residual clauses interchangeably, so the Court treats the challenges to those clauses using law applicable to both clauses").  The Tenth Circuit's treatment of challenges under analogous Supreme Court precedent does not support Eccleston's argument that a different standard applies here.  See, e.g., United States v. Snyder, 871 F.3d 1122, 1129 (10th Cir. 2017)(addressing a challenge under Johnson v. United States); United States v. Taylor, 873 F.3d 476, 480 (5th Cir. 2017)(citing United States v. Snyder and stating that the Tenth Circuit has "required movants to show something more" than some other courts to bring a Johnson v. United States claim).

Some courts have concluded, on policy grounds, that requiring a § 2255 petitioner to prove by a preponderance of the evidence that a court relied on a particular § 924 clause could undermine the categorical approach's goals of fairness and determinacy, because results will vary depending on the conviction and sentencing documents' specificity.  See Thrower v. United States, 234 F. Supp. 3d 372, 378 (E.D.N.Y. 2017)(Ross, J.), rev'd on other grounds, 914 F.3d 770 (2d Cir. 2019), cert. denied, 140 S. Ct. 305 (2019)("Adopting the government's position regarding Thrower's burden of proof would mean that Thrower's petition would fail simply because I did not, during the sentencing proceeding, specify on which ACCA clauses I was relying.").  Similarly, "in cases such as this, where the Defendant received his sentence before Johnson and its progeny, applying the Government's proposed rule would be to require § 2255 movants to a hope that the judge sentenced them according to a standard that did not yet exist."  United States v. Lewis, No. 10-CR-622 (ADS), 2020 WL 2797519, at *7 (E.D.N.Y. May 22, 2020)(Spatt, J.). See United States v. Thrower, 234 F. Supp. 3d at 378 ("This was

simply not an issue at the time, when neither I nor the parties could have predicted that one of the clauses would be found unconstitutional seven years later.").

The Court concludes, however, that Tenth Circuit precedent requires Eccleston -- and any § 2255 petitioner asserting error under United States v. Davis -- to prove that it is more likely than not that his § 924(c) conviction rests on an invalid predicate. The Court thus maintains its conclusion in Rodella v. United States that there is no reason that the Tenth Circuit would apply a more lenient standard to § 2255 petitions asserting error under United States v. Davis, but the Court adds an additional, procedural reason specific to Eccleston's petition. First, the Tenth Circuit adopted the Eleventh Circuit's reasoning from Beeman v. United States that § 2255 petitioners asserting error under Johnson v. United States must show that the sentencing court probably relied on § 924(e)'s residual clause. See United States v. Driscoll, 892 F.3d at 1135 (citing Beeman v. United States, 871 F.3d at 1222). District courts in the Eleventh Circuit have since concluded that United States v. Beeman applies to petitioners asserting error under United States v. Davis. See, e.g., Martinez v. United States, No. 19-CV-796 FTM/NPM, 2020 WL 2839442, at *4 (M.D. Fla. June 1, 2020)(Steele, J.). There is little substantive difference between courts' review of an error under Johnson v. United States and United States v. Davis, because both require the reviewing court to determine, using either the categorical approach or the modified categorical approach, whether the defendant's § 924 conviction is validly predicated on a crime of violence. See Johnson v. United States, 135 S. Ct. at 2556-57; United States v. Davis, 139 S. Ct. at 2336. Most importantly, the Tenth Circuit in United States v. Washington, 890 F.3d 891 (10th Cir. 2018), adopted United States v. Beeman's articulation of a § 2255 movant's burden on a second or successive § 2255 petition. See United States v. Washington, 890 F.3d at 896. In a second or successive § 2255 motion, "there are procedural hurdles not present when filing a first § 2255 motion." United States v. Driscoll, 982 F.3d at 1135 n.5. First, the defendant must make a prima facie showing that his or her petition relies on a new rule of constitutional law. See United States v. Washington, 890 F.3d at 894-95. Second, the "defendant must back up the prima facie showing with actual evidence to show he can meet this standard." United States v. Washington, 890 F.3d at 895 (quotations and ellipsis omitted). In United States v. Washington, the Tenth Circuit adopted United States v. Beeman's burden formulation that a petitioner mounting a second or successive § 2255 motion must show with actual evidence that the sentencing court probably relied on an invalid residual clause. See United States v. Washington, 890 F.3d at 896. In United States v. Driscoll, the Tenth Circuit extended United States v. Washington's adoption of United States v. Beeman's burden formulation to initial § 2255 motions. Thus, it is unlikely that a different standard would apply here in Eccleston's successive § 2255 motion that asserts error similar to that which the Tenth Circuit reviewed in United States v. Driscoll. Accordingly, Eccleston must demonstrate that it is more likely than not that Count VI is impermissibly predicated on conspiracy to commit Hobbs Act robbery. Finally, the Court maintains its conclusion in Rodella v. United States that this standard does not result in

## LAW REGARDING CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(1), "[u]nless a circuit justice or a judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . (B) the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1). The petitioner must make "a substantial showing of the denial of a constitutional right [to receive a certificate of appealability]." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability when the district court has rejected the petitioner's constitutional claims on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); Castillo v. Attorney Gen. of New Mexico, 325 F. Supp. 3d 1222, 1226 (D.N.M. 2018)(Browning, J.). To obtain a certificate of appealability when the district court has rejected the petitioner's constitutional claims on procedural grounds, the petition must show "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. at 484, 120 S. Ct. 1595.

## ANALYSIS

Eccleston asks the Court to reconsider its MOO, because there is "the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir.

---

unfairness. The Court disagrees that this standard would result in inequities. "Precisely the opposite: it is imposing a uniform rule," and that "the burden is less friendly to petitioners" "does not make it unequal." Dimott v. United States, 881 F.3d 232, 242 (1st Cir. 2018). See Rodella v. United States, 2020 WL 1495752, at *8.

MOO at 25 n.7.

2000).[16]   Eccleston presses five arguments in his Motion to Reconsider; he argues that: (i) the

Court erred in placing the burden of proof on him; (ii) the Court erred in finding the Hobbs Act,

18 U.S.C. § 1951(a), is comprised of means, meaning it is divisible and therefore subject to the

modified categorical approach; (iii) attempted Hobbs Act robbery is not a crime of violence under

§ 924(c); (iv) the Court erred when it considered the factual basis for Eccleston's sentence when

it determined that Eccleston was convicted of substantive Hobbs Act robbery; and (v) Eccleston

requests the Court grant a Certificate of Appealability.  See Motion to Reconsider at 6-31.  The

Court addresses these arguments in turn.  Because the Court addresses most of these issues at

length in its MOO, and because motions to reconsider under rule 59(e) are not meant to "'relitigate

old matters, or to raise arguments or present evidence that could have been raised prior to the entry

of judgment,'"  Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008)(quoting 11 C. Wright

& A. Miller, Federal Practice and Procedure § 2810.1, 127-28 (2d ed. 1995)), Eccleston faces a

tough task to persuade the Court that it erred, see Pueblo of Jemez v. United States, No. CV 12-

0800 JB\JFR, 2020 WL 5238734, at *62 (D.N.M. Sept. 2, 2020)(Browning, J.)(discussing

reconsideration of interlocutory orders, the Court stated: "Unlike the motion that produced the

---

[16]Eccleston has filed only one motion under rule 59(e), and so the Court may exercise its discretion to reconsider the issues presented in the Motion.  The Honorable Robert E. Bacharach, Circuit Judge for the Tenth Circuit, indicated that successive motions to reconsider are disfavored:

> [O]nce the district court enters judgment, the public gains a strong interest in protecting the finality of judgments.  See Sanchez-Llamas v. Oregon, 548 U.S. 331, 356 (2006)(discussing the "important interest in the finality of judgments"). This interest in finality becomes even stronger when a district court has previously denied relief under Rule 59(e).  See In re Stangel, 68 F.3d 857, 859 (5th Cir. 1995)("[T]he interest of finality requires that the parties generally get only one bite at the Rule 59(e) apple for the purpose of tolling the time for bringing an appeal.").

Nelson v. City of Albuquerque, 921 F.3d 925, 929 (10th Cir. 2019).

prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally. The deck is stacked against a movant for reconsideration . . . .").  The Court concludes that (i) it did not err in placing the burden of proof on Eccleston to prove that it is more likely than not that his 18 U.S.C. § 924(c) conviction rests on an invalid predicate; (ii) the Hobbs Act, 18 U.S.C. § 1951(a), is comprised of elements, meaning it is divisible, and therefore subject to the modified categorical approach; (iii) even if attempted Hobbs Act robbery is not a crime of violence, Eccleston was convicted of substantive Hobbs Act robbery; (iv) the Court did not err when it considered the factual basis for Eccleston's sentence to determine that Eccleston was convicted of substantive Hobbs Act robbery; and (v) the Court will not grant a Certificate of Appeal, because jurists of reason would not disagree with the Court's resolution of Eccleston's constitutional claims.

## I.    THE COURT'S ALLOCATION OF THE BURDEN OF PROOF TO ECCLESTON IS NOT A MANIFEST ERROR OF LAW.

Eccleston argues the Court was wrong to rely upon its previous decision in Rodella v. United States, 2020 WL 406389, at *11 n.6 (D.N.M. Jan. 23, 2020)(Browning, J.), for the proposition that the Tenth Circuit has treated both the Johnson v. United States, 576 U.S. 591 (2015)("Johnson") and United States v. Davis, 139 S. Ct. 2319 (2019)("Davis") residual clauses interchangeably, meaning that the defendant holds the burden of demonstrating that the sentencing court relied on an impermissible statute in a § 2255 collateral proceeding.  See Motion to Reconsider at 7-8.  In his Motion to Reconsider, Eccleston re-urges a similar argument that he raised before, see Reply to United States' Response to Petitioner's Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255 at 2, filed May 8, 2020 (CIV. Doc. 14), namely that the two residual clauses that Johnson and Davis struck down are distinguishable,  see Motion to Reconsider at 6-9.

A motion to alter or amend under rule 59(e), however, is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of Paraclete v. Does, 204 F.3d at 1012. "The purpose [of a rule 59(e)] motion is to correct manifest errors of law or to present newly discovered evidence." Monge v. RG Petro-Machinery (Group) Co. Ltd., 701 F.3d 598, 611 (10th Cir. 2012)(internal quotation marks omitted)(quoting Webber v. Mefford, 43 F.3d 1340, 1345 (10th Cir. 1994)). The Court addresses the burden of proof at length in its MOO, see 2020 WL 4336361, at *11 n. 7, and Eccleston does not raise new controlling case law; therefore, Eccleston faces a steep uphill challenge to the Court's allocation of the burden on the defendant.

Eccleston cites several district court cases from the Tenth Circuit that distinguish the two residual clauses. See Motion to Reconsider at 6-7. For example, Clark v. United States recognized that, at the time, "[t]he question of whether the reasoning of Johnson should extend to the residual clause of § 924(c)(3)(B) remains unsettled." Clark v. United States, 2018 WL 611321, at *3-4 (D.N.M. Jan. 29, 2018)(Parker, J.). The Honorable James A. Parker, United States District Judge for the District of New Mexico, explained:

> Courts have cited several grounds that distinguish the ACCA § 924(e)(2)(B) residual clause from § 924(c)(3)(B). . . . [In the Tenth Circuit] [t]he question of whether the reasoning of Johnson should extend to the residual clause of § 924(c)(3)(B) remains unsettled. However, the Court need not determine in this case whether Johnson should apply to invalidate the residual clause of § 924(c)(3)(B).

2018 WL 611321, at *3-4. See also United States v. Yazzie, 2017 WL 3225480, at *1 (D.N.M. May 31, 2017)(Kelly, J.)(stating that: "§ 924(c)(3)(B) materially differs from the ACCA's residual clause. For example, § 924(c)(3)(B) uses the word 'may,' whereas the ACCA does not.")(citations

omitted).  Eccleston also cites the Court's decision in <u>Lloyd v. United States,</u> where the Court stated:

> The Supreme Court has not decided whether Johnson applies to invalidate § 924(c)'s residual clause.  In <u>Johnson</u>, the Supreme Court indicated that its ruling did not place the language of statutory provisions like the § 924(c)(3)(B) residual clause in constitutional doubt.  The lower courts have divided on how the Johnson ruling applies to § 924(c) and similar provisions. . . . While the Supreme Court and the United States Court of Appeals for the Tenth Circuit have not decided the issue, the Court determines that <u>Johnson</u>'s reasoning should not extend to § 924(c)(3)(B)'s residual clause.

2016 WL 5387665, at *3 (D.N.M. Aug. 31, 2016)(Browning, J).  As Eccleston acknowledges, however, both the Supreme Court and the Tenth Circuit -- since the Court's decision in <u>Lloyd v. United States</u> -- now recognize the overlap between similarly worded residual clauses, such as ACCA's residual clause and § 924(c)(3)(B).  <u>See</u> <u>Sessions v. Dimaya</u>, 138 S. Ct. 1204, 1210 (2018); <u>United States v. Salas</u>, 889 F.3d 681, 684 (10th Cir. 2018), <u>cert. denied</u>, 139 S. Ct. 2773 (2019).  The Supreme Court, in <u>Sessions v. Dimaya</u>, states that, where a "statute's definition of 'crime of violence'" is "similarly worded" to ACCA's residual clause, it is straightforward to apply the Supreme Court's "analysis in <u>Johnson</u> . . . .  [N]one of the minor linguistic disparities in the statutes makes any real difference."  138 S. Ct. at 1210, 1223 (holding that 18 U.S.C. § 16(b) is unconstitutionally vague in light of <u>Johnson</u>).  Then the Tenth Circuit, in <u>United States v. Salas</u>, held that, in light of <u>Sessions v. Dimaya</u>, 138 S. Ct. at 1210, 1223, and <u>Johnson</u>, 576 U.S. at 606, § 924(c)'s residual clause is similarly unconstitutional: "§ 924(c)(3)(B) possesses the same features as the ACCA's residual clause and § 16(b) that combine to produce 'more unpredictability and arbitrariness than the Due Process Clause tolerates,' and <u>Dimaya</u>'s reasoning for invalidating § 16(b) applies equally to § 924(c)(3)(B).  Section 924(c)(3)(B) is likewise unconstitutionally vague."  889 F.3d 686 (quoting <u>Sessions v. Dimaya</u>, 138 S. Ct. at 1223).  The same year, the

Supreme Court also held, that § 924(c)(3)(B) is unconstitutionality vague, noting that, "[f]or years, almost everyone understood § 924(c)(3)(B) to require exactly the same categorical approach that this Court found problematic in the residual clauses of the ACCA and § 16."  United States v. Davis, 139 S. Ct. at 2326 (citing Courts of Appeals' opinions from the Second through the Eleventh Circuits).  Therefore, although district courts may have struggled to align ACCA's residual clause with § 924(c)(3)(B) for a few years after Johnson was decided and before United States v. Salas was decided, those uncertainties have been removed.  See Sessions v. Dimaya, 138 S. Ct. at 1210; United States v. Salas, 889 F.3d at 684.  It is appropriate, therefore, to treat the Johnson and Davis residual clauses interchangeably.   Furthermore, other courts have applied the standard interchangeably.  See United States v. Garcia, 811 F. App'x 472, 477-78 (10th Cir. 2020)("[The defendant] has failed to show that first-degree murder in violation of Kan. Stat. Ann. § 5402(a) is not a crime of violence as defined in § 924(c)(3)(A)'s elements clause . . . .")(emphasis added); United States v. Nguyen, 744 F. App'x 550, 552 (10th Cir. 2018)("Petitioner has not pointed to, nor have we found, anything in the record suggesting that the sentencing court relied on the residual clause of § 924(c)(3)(B) in imposing his sentence.")(citing United States v. Washington, 890 F.3d 891, 896 (2018)("[T]he burden is on the defendant to show by a preponderance of the evidence -- i.e., that it is more likely than not -- his claim relies on Johnson.")); United States v. Wilson, No. 12-CR-197-GKF-3, 2020 WL 3966310, at *2 (N.D. Okla. July 13, 2020)(Frizzell, J.)("The § 2255 movant bears the burden of proving by a preponderance of the evidence that the court relied on the [§ 924(c)(3)(B)] residual clause.")(citing United States v. Copeland, 921 F.3d 1233, 1242 (10th Cir. 2019)(applying the preponderance of the evidence standard in a Johnson-related claim)).

Last, Eccleston contends that the United States typically has the burden of proof to establish sentencing enhancements.  See Motion to Reconsider at 8.  Eccleston, however, does not address the situation here, where § 2255 governs the proceedings.  See In re Moore, 830 F.3d 1268, 1272-73 (11th Cir. 2016)(collecting cases).  In re Moore states:

> [T]he district court cannot grant relief in a § 2255 proceeding unless the movant meets his burden of showing that he is entitled to relief, and in this context the movant cannot meet that burden unless he proves that he was sentenced using the residual clause and that the use of that clause made a difference in the sentence.

830 F.3d at 1272-73.  See also Prost v. Anderson, 636 F.3d 578, 583 (10th Cir. 2011)(Gorsuch, J.)(noting that there are "enhanced finality interests attaching to a conviction already tested through trial, appeal, and one round of collateral review")(emphasis in the original); United States v. Harper, 545 F.3d 1230, 1232 & n.1 (10th Cir. 2008)(Gorsuch, J.).  Eccleston, therefore, does not show that the Court's allocation of the burden of proof to Eccleston is a manifest error of law, and the Court reiterates what it has previously concluded:

> The Tenth Circuit, like most Courts of Appeals, has established that a petitioner has the burden to demonstrate that he or she is entitled to relief in a 28 U.S.C. § 2255 motion.  See In re Moore, 830 F.3d 1268, 1273 (11th Cir. 2016)(collecting cases from the United States Courts of Appeals for the First, Second, Fourth, Fifth, Eighth, and Seventh Circuits).  The Tenth Circuit, furthermore, has "required movants to show something more" than some other courts to bring a Johnson v. United States claim.  United States v. Taylor, 873 F.3d 476, 480 (5th Cir. 2017)(citing United State v. Snyder, 871 F.3d 1122, 1129 (10th Cir. 2017)).  The preponderance-of-the-evidence standard requires the petitioner to demonstrate that he or she is entitled to relief in a 28 U.S.C. § 2255 proceeding.  The preponderance-of-the-evidence standard for Davis claims, therefore, is consistent with the petitioner's burden of proof in Tenth Circuit Johnson v. United States cases and in other 28 U.S.C. § 2255 cases in other courts.

Rodella v. United States, 2020 WL 1495752, at *7.

## II.   THE HOBBS ACT IS DIVISIBLE INTO THREE ROBBERY OFFENSES: (I) SUBSTANTIVE HOBBS ACT ROBBERY; (II) ATTEMPTED HOBBS ACT ROBBERY; (III) AND CONSPIRACY TO COMMIT HOBBS ACT ROBBERY.

Eccleston argues that the Court erred when it determined that the modified categorical applies to the Hobbs Act, because it is divisible.  See Motion to Reconsider at 9.  In his Motion to Vacate, Eccleston concedes that the modified categorical approach applies, see Motion to Vacate at 8 ("Thus, because the charge on which Count 6 relied for its crime of violence is divisible, i.e., some crimes are categorically crimes of violence while another is not, the Court must apply the modified categorical approach."), and, now, in his Motion to Reconsider, he argues the opposite, see Motion to Reconsider at 9.  Despite Eccleston's initial concession, the Court provides, in its MOO, an in-depth analysis, "determin[ing] that Hobbs Act robbery is divisible," and "determin[ing] that conspiracy to commit Hobbs Act robbery is not categorically a crime of violence."  2020 WL 4336361, at *12.  A motion to alter or amend under rule 59(e), however, is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion."  Servants of Paraclete v. Does, 204 F.3d at 1012.  "The purpose [of a rule 59(e)] motion is to correct manifest errors of law or to present newly discovered evidence."  Monge v. RG Petro-Machinery (Group) Co. Ltd., 701 F.3d 598, 611 (10th Cir. 2012)(internal quotation marks omitted)(quoting Webber v. Mefford, 43 F.3d 1340, 1345 (10th Cir. 1994)).  Eccleston does not raise new controlling law or facts; therefore, Eccleston, again, faces a steep uphill challenge to persuade the Court that it erred in determining that the modified categorical approach applies.

Normally, courts apply the categorical approach applies to determine whether a past conviction is a crime of violence under § 924(c), but where the statute of conviction is divisible, courts may apply the modified categorical approach.  See Descamps v. United States, 570 U.S. 254, 261 (2013).  A statute is divisible, if it is "comprise[d of] multiple, alternative versions of the crime."  Descamps v. United States, 570 U.S. at 262.  A statute is comprised of multiple, alternative

versions of the crime, if the statute "lists multiple elements disjunctively" rather than "enumerate[ing] various factual means of committing a single element." Mathis v. United States, 136 S. Ct. at 2248-49.[17]  "'Elements' are the parts of a statute that the prosecution must prove; 'means' are alternative factual methods of committing a single element." United States v. Hamilton, 889 F.3d 688, 692 (10th Cir. 2018)(citing Mathis v. United States, 136 S.Ct. at 2248-49).[18]

The categorical approach, however, requires that the Court examine first the statute of conviction. See, e.g., United States v. Bowen, 936 F.3d at 1102. The Hobbs Act provides:

> (a)    Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything

---

[17]Mathis v. United States provides a useful example:

> To use a hypothetical adapted from two of our prior decisions, suppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime -- or otherwise said, spells out various factual ways of committing some component of the offense -- a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors "conclude[d] that the defendant used a knife" while others "conclude[d] he used a gun," so long as all agreed that the defendant used a "deadly weapon."

136 S. Ct. at 2249 (citations omitted).

[18]The Court notes that the Honorable Terrence W. Boyle, United States District Court Judge for the Eastern District of North Carolina, provided an apt summary of these methods:

> The world of the categorical approach and modified categorical approach is not a model of clarity, to say the least.  Though there is a wealth of jurisprudence on the issue, it appears to have become more, rather than less, confusing over time. Nevertheless, the Court will wade into the morass.

United States v. Merinord, No. 5:15-CR-136, 2015 WL 6457166, at *3 (E.D.N.C. Oct. 26, 2015)(Boyle, J.).

in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

    (b)    As used in this section --

       (1)    The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

       (2)    The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

       (3)    The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

18 U.S.C. § 1951.  The Court, in its MOO, concludes

that Hobbs Act robbery is divisible.  Specifically, the statute is divisible, on the one hand, between substantive Hobbs Act robbery and aiding and abetting Hobbs Act robbery, and, on the other hand, conspiracy to commit Hobbs Act robbery, because the statute's subparts describe alternative crimes as opposed to different ways of committing the same offense.  United States v. Pam, 867 F.3d at 1203 (citing Descamps v. United States, 133 S. Ct. at 2281).  Specifically, conspiracy to commit Hobbs Act robbery includes elements that substantive or attempted Hobbs Act robbery do not.  A conviction under § 1951(b)(1) for substantive robbery requires a finding of "actual or threatened force, or violence, or fear of injury, immediate or future."  18 U.S.C. § 1951(b)(1).  Under § 1951(a), conspiracy to commit Hobbs Act robbery requires: (i) that two or more persons agreed to commit Hobbs Act robbery; (ii) the defendant knew the conspiracy's "essential objectives"; (iii) the defendant knowingly and voluntarily "took part in the conspiracy"; and (iv) "the conspirators were interdependent." United States v. Wright, 506 F.3d 1293, 1297-98 (10th Cir. 2007).  The Hobbs Act therefore "list[s] elements in the alternative, and thereby define[s] multiple crimes," rendering it a divisible statute.  Mathis v. United States, 136 S. Ct. at 2249.  The Court therefore applies the modified categorical approach.

MOO, 2020 WL 4336361, at *14.  Eccleston contends, however, that the Court errs because the Hobbs Act is only comprised of one crime -- interference with commerce -- and that robbery and extortion are the means by which it is committed.  See Motion to Reconsider at 10 (citing 18 U.S.C. § 1951(a)).  Eccleston's argument hinges on the Hobbs Act's use of the word "by": Eccleston argues that "it is impossible to ascertain if the Hobbs Act outlines means or elements due to the use of the preposition 'by.'"  Motion to Reconsider at 10.  Eccleston cites the Shorter Oxford English Dictionary to define the preposition "by" as "indicating agency, means, cause, attendant circumstance, conditions, manners, effects."  Motion to Reconsider at 10 (quoting By, Shorter Oxford English Dictionary (6th ed. 2007))(emphasis in Motion to Reconsider, but not in the Dictionary).  Eccleston also argues that the Hobbs Act "does not have clearly different subsections and is only one sentence, with the alternatives separated by commas," meaning it describes only a single offense.  Motion to Reconsider at 12.

The Hobbs Act's use of the preposition "by" is not necessarily determinative of its meaning.  The Court looks to the statute as a whole to determine its meaning.  See Corley v. United States, 556 U.S. 303, 314 (2009)(reiterating that "one of the most basic interpretive canons, [is] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'")(quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Even though § 1951(a) uses "by," the statute "list[s] potential offense elements in the alternative," Descamps v. United States, 570 U.S. 254, 260 (2013): "robbery or extortion or attempts or conspires so to do," 18 U.S.C. § 1951(a).  As the Court explained in its MOO:

> [T]he statute's subparts describe alternative crimes as opposed to different ways of committing the same offense.  United States v. Pam, 867 F.3d at 1203 (citing Descamps v. United States, 133 S. Ct. at 2281).  Specifically, conspiracy to commit Hobbs Act robbery includes elements that substantive or attempted Hobbs Act robbery do not.  A conviction under § 1951(b)(1) for substantive robbery requires

a finding of "actual or threatened force, or violence, or fear of injury, immediate or future." 18 U.S.C. § 1951(b)(1). Under § 1951(a), conspiracy to commit Hobbs Act robbery requires: (i) that two or more persons agreed to commit Hobbs Act robbery; (ii) the defendant knew the conspiracy's "essential objectives"; (iii) the defendant knowingly and voluntarily "took part in the conspiracy"; and (iv) "the conspirators were interdependent." United States v. Wright, 506 F.3d 1293, 1297-98 (10th Cir. 2007). The Hobbs Act therefore "list[s] elements in the alternative, and thereby define[s] multiple crimes," rendering it a divisible statute. Mathis v. United States, 136 S. Ct. at 2249.

MOO, 2020 WL 4336361, at *14.

Other courts have found statutes that use the proposition "by" to be divisible. For instance, the United States Court of Appeals for the Ninth Circuit has found an Arizona statute that uses the word "by" is divisible:

Under ARS § 13-1404, "[a] person commits sexual abuse by intentionally or knowingly engaging in sexual contact with any person who is fifteen or more years of age without consent of that person or with any person who is under fifteen years of age if the sexual contact involves only the female breast." As this language demonstrates, a defendant can violate the statute in two distinct ways. First, a defendant violates the statute if he "intentionally or knowingly engag[es] in sexual contact with any person who is fifteen or more years of age without consent of that person." Id. Alternatively, a defendant also violates the statute if he "intentionally or knowingly engag[es] in sexual contact . . . with any person who is under fifteen years of age if the sexual contact involves only the female breast." Id.

Because the Arizona statute "list[s] potential offense elements in the alternative," it is divisible, and the modified categorical approach may be applied to discern the prong under which Quintero-Junco was convicted. See Descamps, 133 S. Ct. at 2283.

United States v. Quintero-Junco, 754 F.3d 746, 752 (9th Cir. 2014). Under Eccleston's reading, the statute at issue in United States v. Quintero-Junco, where the word "by" controls, would have one offense -- "sexual abuse" -- committed by various means. The Ninth Circuit, however, explained that A.R.S. § 13-1404 is divisible into two distinct elements. See United States v. Quintero-Junco, 754 F.3d at 752. The Hobbs Act has a similar, elemental, structure: "Whoever in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts

or conspires so to do . . . ." 18 U.S.C. § 1951(a).  Furthermore, a number of jurisdictions have found the Hobbs Act to be divisible, including the Tenth Circuit.  See, e.g., United States v. O'Connor, 874 F.3d 1147, 1152 (10th Cir. 2017)("The Hobbs Act, for example, is a divisible statute setting out two separate crimes -- Hobbs Act robbery and Hobbs Act extortion.");[19] United States v. Gooch, 850 F.3d 285, 291 (6th Cir. 2017)("[W]e conclude that § 1951 is a divisible statute setting out separate crimes of Hobbs Act robbery and Hobbs Act extortion."); United States v. Mendez, 992 F.2d 1488, 1490 (9th Cir. 1993)("A person may be convicted for violating § 1951 if he interferes with interstate commerce by robbery, extortion, attempting or conspiring to rob or extort, or committing or threatening violence in furtherance of a plan or purpose to violate the statute."); Harrison Johnson v. United States, No. 2:12-cr-00336-JAD-CWH, 2018 WL 3518448, at *3 (D. Nev. July 19, 2018)(Dorsey, J.)(concluding that the Hobbs Act is divisible into six parts); United States v. Hancock, 168 F. Supp. 3d 817, 820 (D. Md. 2016)(Hazel, J.); United States v. Hancock, 168 F. Supp. 3d 817, 821 (D. Md. 2016), aff'd, 788 F. App'x 899 (4th Cir. 2019)("[T]he Hobbs Act is divisible as there are two or more alternative sets of elements.").  Eccleston's focus

_____

[19]Eccleston argues that the Court should not rely on United States v. O'Connor, 874 F.3d at 1152, because there the defendant, like Eccleston, had conceded the Hobbs Act is a divisible statute.  See Motion to Reconsider at 14 (citing appellate briefing in United States v. O'Connor, 873 F.3d 1147).  Even if Eccleston is correct that the defendant's concession in United States v. O'Connor undermines the Honorable Judge Scott M. Matheson, Jr., United States Circuit Judge for the Tenth Circuit's conclusion that the Hobbs Act is divisible, the Court still finds United States v. O'Connor persuasive, because Judge Matheson did not merely rely on the defendant's concession, but cited United States v. Gooch, 850 F.3d 285, 291 (6th Cir. 2017) for the proposition that the Hobbs Act is divisible.  Furthermore, other courts in the Tenth Circuit have relied on United States v. O'Connor to find that the Hobbs Act is divisible.  See United States v. Dubarry, 741 F. App'x 568, 570 (10th Cir.), cert. denied, 139 S. Ct. 577 (2018); Wiseman v. United States, No. 16-CV-00700-JAP/KRS, 2018 WL 3621022, at *3 (D.N.M. July 27, 2018)(Parker, J.)(citing United States v. O'Connor for the proposition that the Hobbs Act is divisible); United States v. Smith, No. 10-CR-00612-CMA, 2017 WL 5900362, at *3 (D. Colo. Nov. 30, 2017)(Arguello, J.)(same).

on the preposition "by" in his Motion to Reconsider, does not persuade the Court that it mistakenly

found that the Hobbs Act is divisible.  The Court reiterates that the Hobbs Act "is a divisible statute

because it 'sets out one or more elements of the offense in the alternative.'" United States v. Pam,

867 F.3d 1191, 1203 (10th Cir. 2017)(quoting Descamps v. United States, 570 U.S. 254, 257

(2013)).

Eccleston argues that, even if the Hobbs Act is divisible, it is only divisible into two parts:

robbery and extortion.  See Motion to Reconsider at 14.  The Court disagrees with Eccleston's

contention.  The Hobbs Act "is divisible, on the one hand, between substantive Hobbs Act robbery

and aiding and abetting Hobbs Act robbery, and, on the other hand, conspiracy to commit Hobbs

Act robbery, because the statute's subparts describe alternative crimes as opposed to different ways

of committing the same offense."  MOO, 2020 WL 4336361, at *14 (citing United States v. Pam,

867 F.3d at 1203).  For example, conspiracy to commit Hobbs Act robbery includes elements that

substantive or attempted Hobbs Act robbery do not:

> To convict on a Hobbs Act robbery, the government must prove a robbery and an
> effect on interstate commerce.  To convict on a Hobbs Act conspiracy, the
> government must show that (1) two or more people agreed to commit a Hobbs Act
> robbery; (2) that the defendant knew of the conspiratorial goal; and (3) that the
> defendant voluntarily participated in furthering that goal.

United States v. Ransfer, 749 F.3d 914, 930 (11th Cir. 2014)(citations omitted).  See United States

v. Edmunson, 153 F. Supp. 3d 857, 860 (D. Md. 2015)(Grimm, J.)(finding that Hobbs Act includes

alternative elements, including conspiracy).  Similarly, attempted Hobbs Act robbery requires

different elements than either substantive Hobbs Act robbery or conspiracy to commit Hobbs Act

robbery.  See United States v. Cornelio-Pena, 435 F.3d 1279, 1286 (10th Cir. 2006).  Attempted

Hobbs Act robbery requires that: (i) the defendant intended to commit Hobbs Act robbery; and (ii)

the defendant took a substantial step towards commission of Hobbs Act robbery.  See United States

v. Cornelio-Pena, 435 F.3d at 1286; United States v. Wilson, 2020 WL 3966310, at *4 ("In order

to be guilty of an attempted Hobbs Act robbery, a defendant must intend to commit every element

of a Hobbs Act robbery and take a substantial step toward committing the crime."); Tenth Circuit

Criminal Pattern Jury Instruction 1.32, at 48 (2011)(Updated Feb. 2018); Model Penal Code §

5.01.

 Eccleston cites several cases for the proposition that Hobbs Act robbery -- § 1951(b)(1) --

is not divisible, meaning that it cannot be subdivided into substantive Hobbs Act robbery,

attempted Hobbs Act robbery, and conspiracy to commit Hobbs Act robbery.  See Motion to

Reconsider at 14-15 (citing cases).  Section 1951(b)(1) defines "robbery" as:

> [T]he unlawful taking or obtaining of personal property from the person or in the
> presence of another, against his will, by means of actual or threatened force, or
> violence, or fear of injury, immediate or future, to his person or property, or
> property in his custody or possession, or the person or property of a relative or
> member of his family or of anyone in his company at the time of the taking or
> obtaining.

The Court agrees that § 1951(b)(1), although disjunctive, is not divisible, because it does not

provide alternative elements; instead, it provides alternative means: robbery is committed "by

means of actual or threatened force, or violence, or fear of injury . . . ."  18 U.S.C. § 1951(b)(1).

See Mathis v. United States, 136 S.Ct. 2243, 2249 (2016)(stating that a statute is not divisible

when it "enumerates various factual means of committing a single element," rather than a

disjunctive list of elements).  The conclusion that § 1951(b)(1) is comprised of factual means --

"actual or threatened force,"  "violence," or "fear of injury" -- does not end the inquiry, however;

the Hobbs Act, § 1951(a), is divisible between alternative elements, which include three separate

robbery offenses: substantive Hobbs Act robbery, attempted Hobbs Act robbery, and conspiracy

to commit Hobbs Act robbery.  18 U.S.C. § 1951(a)("Whoever in any way or degree obstructs,

delays, or affects commerce . . . by robbery . . . or attempts or conspires so to do . . . .").  Eccleston

cites a case that states this proposition, <u>see</u> Motion to Reconsider at 14-15:

> Taken as a whole, the Hobbs Act establishes six different offenses: actual, attempted, and conspiracy to interfere with commerce by robbery (three separate offenses), as well as actual, attempted, and conspiracy to interfere with commerce by extortion (an additional three offenses). . . . [T]he court finds that Hobbs Act robbery—in contrast to the statute as a whole—is an indivisible crime.

<u>United States v. Mendoza</u>, No. 216CR00324LRHGWF, 2017 WL 2200912, at *3 (D. Nev. May

19, 2017)(Hicks, J.).[20]   <u>Accord</u> <u>United States v. Smith</u>, 215 F. Supp. 3d 1026, 1033 (D. Nev.

---

[20]The other cases that Eccleston cites in his Motion to Reconsider at 14-15 do not support his argument for at least one of three reasons.  First, some cases Eccleston cites stand for the proposition that § 1951(a), the Hobbs Act, is divisible, but § 1951(b)(1), Hobbs Act robbery, is not divisible, but do not state that the Hobbs Act precludes attempt and conspiracy offenses.  <u>See</u> <u>United States v. Jefferson</u>, 911 F.3d 1290, 1297 (10th Cir. 2018), <u>judgment vacated in light of the First Step Act of 2018, Pub. L. No. 115-391</u>, 140 S. Ct. 861 (2020)(concluding that, "[b]ecause the statutory alternatives in [Hobbs Act robbery] are means, the pure categorical approach applies," but not deciding whether § 1951(a) is divisible); <u>United States v. Robinson</u>, 844 F.3d 137, 150 (3d Cir. 2016)(Fuentes, J., concurring in part)("The Hobbs Act itself is a divisible statute. . . . [But] Hobbs Act robbery is not a divisible statute[:] . . . a disjunctive list of 'factual means of committing a single element' does not render a statute divisible, whereas a disjunctive list of elements would.")(quoting <u>Mathis v. United States</u>, 136 S. Ct. 2243, 2249 (2016)); <u>United States v. Walker</u>, 314 F. Supp. 3d 400, 409 (E.D.N.Y. 2018)(Weinstein, J.).  The Honorable Jack B. Weinstein, United States District Court Judge for the Eastern District of New York, concluded:

> The Hobbs Act is a divisible statute.  A defendant may be convicted of Hobbs Act Robbery or Hobbs Act extortion.  Hobbs Act Robbery is indivisible; it may be committed through multiple alternative means, robbery or violence in furtherance of a plan to commit robbery, but always as part of a single element.

<u>United States v. Walker</u>, 314 F. Supp. 3d 400, 409.

Second, some of the cases Eccleston cites do not apply here.  <u>See</u> <u>United States v. Hill</u>, 890 F.3d 51, 56 (2d Cir. 2018).  The Honorable Debra Ann Livingston, United States Circuit Judge for the Court of Appeals for the Second Circuit, applied the categorical approach, only because

> [the defendant] agrees that the Hobbs Act is divisible, but argues that Hobbs Act robbery is not, and the Government does not contest this assertion.  To that end, we express no view regarding whether Hobbs Act robbery is itself divisible, and we apply the standard categorical approach to the entire offense as defined in the statute.

2016)(Dorsey, J.)("Section 1951(a) contains disjunctive phrases that essentially create six functionally separate crimes: . . . . Section 1951(b), which further defines 'robbery' for purposes of § 1951(a) is also disjunctive, but it does not contain alternative elements on which a jury must agree.").  See also United States v. Jefferys, No. 18-CR-359(KAM), 2019 WL 5103822, at *6 (E.D.N.Y. Oct. 11, 2019)(Matsumoto, J.)(noting that the Second Circuit distinguishes between substantive Hobbs Act robbery, attempted Hobbs Act robbery, and conspiracy to commit Hobbs Act robbery).

Last, Eccleston contends that courts often consider jury instructions when determining if a statute is divisible and argues that that "jury instructions for the Hobbs Act indicate that the statute is indivisible."  Reply to Motion to Reconsider at 3.  Eccleston is correct that jury instructions are useful.  See United States v. Degeare, 884 F.3d 1241, 1248 (10th Cir. 2018)("[I]f the indictment and jury instructions reiterate the statutory alternatives, that is as clear an indication as any that

---

United States v. Hill, 890 F.3d at 56.

Third, some of the cases Eccleston cites undermine his position.  See United States v. Standberry, 139 F. Supp. 3d 734, 740 (E.D. Va. 2015)(Hudson, J); United States v. Zimmerman, 949 F. Supp. 370, 372 (D.V.I. 1996)(Moore, J.)("[W]e hold that attempted interference with commerce through attempted robbery is a violation of the Hobbs Act."); United States v. Mendoza, No. 216CR00324LRHGWF, 2017 WL 2200912, at *3 (D. Nev. May 19, 2017)(Hicks, J.)(concluding that § 1951(a) is divisible into six separate offenses).  For example, the Honorable Henry E. Hudson, United States District Judge for the Eastern District of Virginia, applied the modified categorical approach to Hobbs Act robbery after determining that:

There is also a plausible argument, not raised by the parties, that the Hobbs Act robbery statute is divisible, necessitating application of the "modified categorical approach," which would widen the scope of inquiry. . . .  The statute, 18 U.S.C. § 1951(a), the sole navigational aid under the categorical approach, provides two distinct methods by which the crime can be committed -- robbery or extortion. Hence, it is arguably divisible.

United States v. Standberry, 139 F. Supp. 3d at 740.

each alternative is only a possible means of commission.")(internal citations and quotations omitted). "The key [to determining whether a statute consists of elements] appears to be how courts typically instruct juries as to the offense of conviction." United States v. Merinord, No. 5:15-CR-136, 2015 WL 6457166, at *3 (E.D.N.C. Oct. 26, 2015)(Boyle, J.)(citing United States v. Royal, 731 F.3d 333, 341 (4th Cir. 2014)).  Eccleston, however, does not cite to any jury instructions showing that § 1951(a) is not divisible.  See Reply to Motion to Reconsider at 3.  Eccleston cites United States v. Merinord, 2015 WL 6457166, at *3, for the proposition that Hobbs Act jury instructions mean the statute is not divisible. See Reply to Motion to Reconsider at 3.  United States v. Merinord, however, confirms what the Court already has concluded, namely, that Hobbs Act robbery -- § 1951(b)(1) -- is not divisible and says nothing about § 1951(a): "It does not appear that [§ 1951(b)(1)] is divisible, as juries need not decide whether the defendant used actual force, threatened force, violence, fear, or acted under color of official right."  2015 WL 6457166, at *3. Indeed, the Tenth Circuit's Criminal Pattern Jury Instructions indicate that § 1951(a) is divisible. The Tenth Circuit's Criminal Pattern Jury Instructions for Hobbs Act robbery state that "[t]he instruction should be modified in the case of an 'attempt.' See Instruction 1.32."  Tenth Circuit Criminal Pattern Jury Instructions 2.70, at 212 (2011)(Updated Feb. 2018)("Tenth Circuit Hobbs Act Jury Instructions").  See Tenth Circuit Criminal Pattern Jury Instructions 1.32, at 48 (2011)(Updated Feb. 2018)("Tenth Circuit Attempt Jury Instructions").  See also Tenth Circuit Criminal Pattern Jury Instructions 2.19, at 97 (2011)(Updated Feb. 2018)("Tenth Circuit Conspiracy Jury Instructions").   In sum, Eccleston has not persuaded the Court that it erred in its MOO when it found that the Hobbs Act is divisible and that, therefore, the modified categorical approach applies.

### III.   **ECCLESTON WAS CONVICTED OF SUBSTANTIVE HOBBS ACT ROBBERY, AND ATTEMPTED HOBBS ACT ROBBERY IS NOT A CRIME OF VIOLENCE.**

Next, Eccleston maintains that the Court has not addressed whether attempted Hobbs Act robbery is a crime of violence, noting that the Tenth Circuit has not yet addressed the issue.  See Motion to Reconsider at 16 (citing United States v. Kayarath, 2020 WL 4360778, at *4 (10th Cir. July 30, 2020)).  Eccleston urges the Court to apply the categorical approach to determine whether attempted Hobbs Act robbery is a crime of violence [21] and contends that the Court should determine whether attempted Hobbs Act robbery is a crime of violence, because Eccleston potentially was convicted of it.  See Motion to Reconsider at 21.  The Court first notes that Eccleston originally conceded that attempted Hobbs Act robbery is categorically a crime of violence, see Motion to Vacate at 5, but now he retracts that concession and argues that the "wealth of case law suggesting that attempted Hobbs Act is not a crime of violence" means the Court should reconsider to prevent manifest injustice.  Reply to Motion to Reconsider at 2.

The Court agrees that, under rule 59(e), it may reconsider its previous rulings to "prevent manifest injustice," Servants of Paraclete v. Does, 204 F.3d at 1012, and that district courts are

---

[21]In his Reply to Motion to Reconsider, Eccleston contends that the Court's "conclusion that Hobbs Act robbery is divisible to only two crimes runs counter to precedent."  Reply to Motion to Reconsider at 4.  In his Motion to Reconsider, however, Eccleston states: "The Court's ruling divided the Hobbs Act six ways."  Motion to Reconsider at 16.  The Court, to help with Eccleston's confusion, reiterates what it states in its MOO:

> The Hobbs Act contains . . . six functionally separate crimes: interference with commerce by robbery, interference with commerce by extortion, attempt to interfere with commerce by robbery, attempt to interfere with commerce by extortion, conspiracy to interfere with commerce by robbery, and conspiracy to interfere with commerce by extortion.  See 18 U.S.C. § 1951(a).

United States v. Eccleston, No. CIV 19-1201 JB\CG, 2020 WL 4336361, at *14 n. 9.  See id. at *13 (finding that "§ 1951(a) provides for at least three separate robbery offenses: robbery, attempted robbery, or conspiracy to commit robbery").

"vested with considerable discretion" to alter or amend their judgments, Brown v. Presbyterian Healthcare Servs., 101 F.3d 1324, 1332 (10th Cir. 1996).  Motions to reconsider, however, are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."  Servants of Paraclete v. Does, 204 F.3d at 1012.  The Supreme Court has recently reiterated this principle:

> Rule [59(e)] gives a district court the chance "to rectify its own mistakes in the period immediately following" its decision.  White v. New Hampshire Dept. of Employment Security, 455 U.S. 445, 450 (1982).  In keeping with that corrective function, "federal courts generally have [used] Rule 59(e) only" to "reconsider[ ] matters properly encompassed in a decision on the merits." Id., at 451.  In particular, courts will not address new arguments or evidence that the moving party could have raised before the decision issued.  See 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2810.1, pp. 163-164 (3d ed. 2012)(Wright & Miller); accord, Exxon Shipping Co. v. Baker, 554 U.S. 471, 485-486, n. 5 (2008)(quoting prior edition).

Banister v. Davis, 140 S. Ct. 1698, 1703 (2020).[22]  Eccleston does not point to any controlling law

---

[22]The Court has previously discussed Banister v. Davis, 140 S. Ct. at 1703:

> The Supreme Court's . . . ruling in Banister v. Davis contains dicta supporting a district court's unrestricted discretion to reconsider its rulings.  In Banister v. Davis, the Supreme Court concluded that filing a motion under rule 59(e) did not constitute a "second or successive habeas corpus application" that 28 U.S.C. § 2244(b) ordinarily prohibits courts from hearing.  Banister v. Davis, 140 S. Ct. at 1702.  It noted that rule 59 derives from a district court's common law power to alter or amend judgments.  See 140 S. Ct. at 1706 (citing Browder v. Director, Dept. of Corr. of Ill., 434 U.S. 257, 270 (1978); Zimmern v. United States, 298 U.S. 167, 169-70 (1936)("The judge had plenary power while the term was in existence to modify his judgment [or] revoke it altogether.")).  The Supreme Court asserted that this common law power's 1946 codification in rule 59(e) "did nothing to narrow the set of judgments amenable to alteration." 140 S. Ct. at 1706.  It also noted that, although habeas courts routinely dismiss rule 60(b) motions for raising repetitive claims, only one habeas court has dismissed a rule 59(e) motion for repetitive arguments rather than reaching a decision on the merits.  See 140 S. Ct. at 1707.  This willingness to engage with 59(e) petitions in habeas cases, the Supreme Court asserted, accords with an "economic and effective appellate process," as it "gives the court a brief chance to fix mistakes before its (single)

as a basis for his motion, see Servants of Paraclete v. Does, 204 F.3d at 1012 (stating that "an intervening change in the controlling law" is a reason to reconsider); he cites only several out-of-circuit district courts and a recent United States Court of Appeals for the Fourth Circuit decision for the proposition that attempted Hobbs Act robbery is not a crime of violence, see Motion to Reconsider at 20 (citing United States v. Culbert, 453 F. Supp. 3d 595 (E.D.N.Y. April 13, 2020)(Cogan, J.); United States v. Cheese, 2020 WL 705217 (E.D.N.Y. Feb. 12, 2020)(Garaufis, J.); United States v. Tucker, 2020 WL 93951, at *6 (E.D.N.Y. Jan. 8, 2020)(Johnson, J.); Lofton v. United States, 2020 WL 362348, at *9 (W.D.N.Y. Jan. 22, 2020)(Telesca, J.)); Tr. at 14:24-25 (Harrison)(citing United States v. Taylor, No. 19-7616, 2020 WL 6053317 (4th Cir. Oct. 14, 2020)).  Eccleston also does not address that three other Courts of Appeals -- the United States Courts of Appeals for the Seventh, Eleventh, and Ninth Circuits -- have found that attempted Hobbs Act robbery qualifies as a "crime of violence."  See United States v. Dominguez, 954 F.3d 1251, 1255 (9th Cir. 2020); United States v. Ingram, 947 F.3d 1021, 1026 (7th Cir. 2020); United States v. St. Hubert, 909 F.3d 335, 351-53 (11th Cir. 2018).  With no in-circuit controlling precedent, and a Court of Appeals split, there is, therefore, no clear and controlling case law that demands the conclusion that the Court committed "manifest error" by failing to address an issue that Eccleston could have raised, but did not.  Servants of Paraclete v. Does, 204 F.3d at 1012.  See Banister v. Davis, 140 S. Ct. at 1703.

Last, even if attempted Hobbs Act robbery is not a crime of violence under § 924(c)(3)(A),

_____

judgment on a (single) habeas application becomes final and thereby triggers the time for appeal." 140 S. Ct. at 1708.

Pueblo of Jemez v. United States, No. CV 12-0800 JB\JFR, 2020 WL 5238734, at *64 (D.N.M. Sept. 2, 2020)(Browning, J.).

the Court need not reconsider its decision, because the Court concludes in its MOO that Eccleston committed substantive Hobbs Act robbery.  See 2020 WL 4336361, at *16-19.  The Court applies the modified categorical approach to determine what the predicate offense was, because the Hobbs Act "'list[s] elements in the alternative, and thereby define[s] multiple crimes.'"  2020 WL 4336361, at *14 (quoting Mathis v. United States, 136 S. Ct. at 2249.).  Under the modified categorical approach, the Court is "allow[ed] . . . to peer around the statute of conviction and examine certain record documents underlying the defendant's prior offense[.]" United States v. Titties, 852 F.3d 1257, 1266 (10th Cir. 2017)).  The Plea Agreement and the PSR show that Eccleston was convicted of substantive Hobbs Act robbery, meaning it is irrelevant whether attempted Hobbs Act robbery is a crime of violence.  See 2020 WL 4336361, at *16-19.  Eccleston challenges the Court's reliance on the Plea Agreement and the PSR, see Motion to Reconsider at 21, and the Court addresses this argument in § IV, infra, of its analysis.  For the sake of thoroughness, however, the Court will examine whether attempted Hobbs Act robbery is categorically a crime of violence under § 924(c)(3)(A).

### A.   ATTEMPTED HOBBS ACT ROBBERY IS NOT A CRIME OF VIOLENCE UNDER § 924(c).

The Tenth Circuit has not yet addressed whether attempted Hobbs Act robbery is a crime of violence under § 924(c).  See United States v. Kayarath, 822 F. App'x 786, 791 (10th Cir. 2020)(declining to address the issue).  Two Tenth Circuit district courts have, however, held that attempted Hobbs Act robbery is a crime of violence.  See United States v. Wilson, 2020 WL 3966310, at *4; United States v. Crawford, 2018 WL 1123879, at *2 (W.D. Okla. Mar. 1, 2018)(Miles-LaGrange, J.)("[A]ttempted Hobbs Act robbery has as an element the attempted use of physical force against the person or property of another and would be a 'crime of violence' for

purposes of 18 U.S.C. § 924(c)(3)(A).").  Recently, the Honorable Gregory K. Frizzel, Chief

United States District Judge for the Northern District of Oklahoma, held that, "[b]ecause an

element of Hobbs Act robbery is the 'use, attempted use, or threatened use of physical force,' an

attempt to commit a Hobbs Act Robbery is necessarily an attempted use of physical force,

triggering § 924(c)'s elements clause."  United States v. Wilson, 2020 WL 3966310, at *4.  Both

district court decisions comport with the United States Courts of Appeals for Seventh, Ninth, and

Eleventh Circuits' decisions.  See United States v. Ingram, 947 F.3d 1021, 1025-26 (7th Cir.

2020)(holding that attempted Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c));

United States v. Dominguez, 954 F.3d 1251, 1261 (9th Cir. 2020)("Because completed Hobbs Act

robbery is a crime of violence under § 924, attempted Hobbs Act robbery is also a crime of

violence."); United States v. St. Hubert, 909 F.3d 335, 351-53 (11th Cir. 2018)("Like completed

Hobbs Act robbery, attempted Hobbs Act robbery qualifies as a crime of violence under §

924(c)(3)(A)'s use-of-force clause because that clause expressly includes "attempted use" of

force.").  The Seventh Circuit, in holding that attempted Hobbs Act robbery is a crime of violence,

reasons:

> First, . . . Hobbs Act robbery constitutes a crime of violence under the elements test contained in 18 U.S.C. § 924(c)(3)(A).

> Second, a jury must find that a defendant had the specific intent to commit Hobbs Act robbery to convict him of attempted Hobbs Act robbery.

> Third, in Hill v. United States, we explained that "[w]hen a substantive offense would be a violent felony under [18 U.S.C.] § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony" so as long as the attempt offense "requires proof of intent to commit all elements of the completed crime." 877 F.3d 717, 719 (7th Cir. 2017); see also United States v. D.D.B., 903 F.3d 684, 691-93 (7th Cir. 2018)(explaining that attempted robbery under Indiana law did not qualify as a crime of violence under Hill because its elements did not include the intent to commit robbery). And, given § 924(e) and § 924(c) use almost identical language, we extend Hill's ruling to § 924(c) as well.

Thus, given (1) Hobbs Act robbery constitutes a crime of violence and (2) the jury had to find that Ingram intended to commit Hobbs Act robbery in order to convict him for attempt, we conclude that [attempted Hobbs Act robbery is a crime of violence].

United States v. Ingram, 947 F.3d at 1025-26 (emphasis in the original)(footnote omitted).

Similarly, the Court of Appeals for the Ninth Circuit holds that "attempted Hobbs Act robbery is . . . a crime of violence[,] . . . [b]ecause completed Hobbs Act robbery is a crime of violence under § 924." United States v. Dominguez, 954 F.3d 1251, 1261 (9th Cir. 2020)(majority opinion). But see id. at 1262 (Nguyen, J., concurring and dissenting in part)(disputing that attempted Hobbs Act robbery is a crime of violence). Writing for the majority, the Honorable Barry G. Silverman, United States Circuit Judge for the Ninth Circuit, explained:

The reasons for this are straightforward. 18 U.S.C. § 924(c)(3)(A) explicitly includes as crimes of violence offenses that have as an element the "attempted use" or "threatened use" of force. In order to be guilty of attempt, a defendant must intend to commit every element of the completed crime. See, e.g., United States v. Nelson, 66 F.3d 1036, 1042 (9th Cir. 1995)(attempt conviction requires evidence that defendant intended to violate the statute). An attempt to commit a crime should therefore be treated as an attempt to commit every element of that crime. Hill v. United States, 877 F.3d 717, 719 (7th Cir. 2017). "When the intent element of the attempt offense includes intent to commit violence against the person of another, . . . it makes sense to say that the attempt crime itself includes violence as an element." Hill, 877 F.3d at 719.

. . .

A criminal who specifically intends to use violence, and then takes a substantial step toward that use, has, by definition, attempted a violent crime, albeit an uncompleted one.

United States v. Dominguez, 954 F.3d at 1261-62. The Honorable Jacqueline H. Nguyen, United States Circuit Judge for the Ninth Circuit, concurred in part, agreeing with the majority that Hobbs Act robbery is a crime of violence, but dissented in part, disagreeing that attempted Hobbs Act robbery is a crime of violence. See United States v. Dominguez, 954 F.3d at 1262. Judge Nguyen argues that attempted Hobbs Act robbery is not a crime of violence, because a defendant may

attempt Hobbs Act Robbery by taking a substantial step that does not involve any actual use, attempted use, or threatened use of physical force.  See United States v. Dominguez, 954 F.3d at 1262-63.  Judge Nguyen provides an example of the "'least serious form' of attempted Hobbs Act robbery" -- where "[a] man plans a robbery, buys the necessary gear, and drives toward the target, but returns home after seeing police in the vicinity."  United States v. Dominguez, 954 F.3d at 1263 (quoting United States v. Gobert, 943 F.3d 878, 881 (9th Cir. 2019)).  Judge Nguyen argues that in the least serious form, "the man does not use, attempt to use, or threaten to use physical force, even though he intended to commit a robbery and took a substantial step toward committing it."  United States v. Dominguez, 954 F.3d at 1263-64.  Judge Nguyen argues that "[o]nly '[i]f the least of the acts criminalized by [a given crime] would be a crime of violence under § 924(c)(3)(A) . . . is [the crime] categorically a crime of violence under the elements clause,'" meaning attempted Hobbs Act robbery does not qualify as a crime of violence under § 924(c).  United States v. Dominguez, 954 F.3d at 1263-64 (quoting United States v. Fultz, 923 F.3d 1192, 1194-95 (9th Cir. 2019)).

In line with the Seventh and Ninth Circuits, the United States Courts of Appeals for the Eleventh Circuit has concluded that attempted Hobbs Act robbery is a crime of violence.  See United States v. St. Hubert, 909 F.3d 335, 351 (11th Cir. 2018), abrogated on other grounds by Davis, 139 S. Ct. at 2323, 2336, cert. denied, 139 S. Ct. 1394 (2019), and cert. denied, 140 S. Ct. 1727 (2020).  The Eleventh Circuit holds that "the Hobbs Act itself prohibits both completed and attempts to commit Hobbs Act robbery, and such attempts are subject to the same penalties as completed Hobbs Act robberies," meaning that "attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause because that clause expressly includes 'attempted use' of force."  United States v. St. Hubert, 909 F.3d at 351 (quoting 18 U.S.C. § 924(c)

and citing 18 U.S.C. § 1951(a)).  In reaching this conclusion, the Eleventh Circuit notes:

> The intent element of a federal attempt offense requires the defendant to have the specific intent to commit each element of the completed federal offense . . . [;] therefore, attempt to commit Hobbs Act robbery requires that [the defendant] intended to commit every element of Hobbs Act robbery, including the taking of property in a forcible manner.

United States v. St. Hubert, 909 F.3d at 351-52.  The Eleventh Circuit also reasons that "the definition of a crime of violence in § 924(c)(3)(A) equates the use of force with attempted force, and thus the text of § 924(c)(3)(A) makes clear that actual force need not be used for a crime to qualify under § 924(c)(3)(A)."  United States v. St. Hubert, 909 F.3d at 352.

In contrast, the Fourth Circuit recently has held that, although substantive Hobbs Act robbery constitutes a crime of violence under the categorical approach, "a straightforward application of the categorical approach to attempted Hobbs Act robbery yields a different result. This is so because, unlike substantive Hobbs Act robbery, attempted Hobbs Act robbery does not invariably require the use, attempted use, or threatened use of physical force." United States v. Taylor, No. 19-7616, 2020 WL 6053317, at *3 (4th Cir. Oct. 14, 2020).  The Fourth Circuit explains its divergence from the other Courts of Appeals:

> Rather than apply the categorical approach -- as directed by the Supreme Court -- [the other three Courts of Appeals] instead rest their conclusion on a rule of their own creation.  Specifically, they hold that "[w]hen a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony." St. Hubert, 909 F.3d at 351 (quoting Hill v. United States, 877 F.3d 717, 719 (7th Cir. 2017)); Ingram, 947 F.3d at 1026 (same); Dominguez, 954 F.3d at 1261 (same).  In doing so, those courts adopt the same flawed premise that the Government recites here: that an attempt to commit a "crime of violence" necessarily constitutes an attempt to use physical force.

United States v. Taylor, 2020 WL 6053317, at *4.  The Fourth Circuit reasons:

> Some crimes of violence can be accomplished merely though the threatened use of force.  The crime at issue here -- attempted Hobbs Act robbery -- is just such a crime.  But an attempt to threaten force does not constitute an attempt to use force.

> A person who attempts to commit Hobbs Act robbery by passing a threatening note
> to a store cashier has attempted the planned robbery without using or attempting to
> use physical force.  He may case the store that he intends to rob, discuss plans with
> a coconspirator, and buy weapons to complete the job.  But none of this conduct
> involves an attempt to use physical force, nor does it involve the use of physical
> force or the threatened use of physical force.  In these circumstances, the defendant
> has merely taken nonviolent substantial steps toward threatening to use physical
> force.  The plain text of § 924(c)(3)(A) does not embrace such activity.

United States v. Taylor, No. 19-7616, 2020 WL 6053317, at *4.

The Court agrees with the Fourth Circuit's decision in United States v. Taylor, 2020 WL

6053317, at *3-4, and Judge Nguyen's partial dissent in United States v. Dominguez, 954 F.3d at

1263.  The Court, therefore, concludes that attempted Hobbs Act robbery is not a crime of violence

under § 924(c), because a person can take a substantial step without "the use, attempted use, or

threatened use of physical force against the person or property of another."  18 U.S.C. §

924(c)(3)(A).

A "crime of violence" is any felony offense that "has as an element the use, attempted use,

or threatened use of physical force against the person or property of another."  18 U.S.C. §

924(c)(3)(A).  The Court uses the categorical approach to determine whether the possible predicate

crime, here attempted Hobbs Act robbery, constitutes a crime of violence under § 924(c).[23]  See

United States v. Melgar-Cabrera, 892 F.3d 1053, 1060 (10th Cir.)(citing United States v. Serafin,

562 F.3d 1105, 1107 (10th Cir. 2009)), cert. denied, 139 S. Ct. 494 (2018).  As the Tenth Circuit

explained in United States v. Serafin:

> Under the categorical approach, [the court] looks "only to the fact of
> conviction and the statutory definition of the prior offense, and do not generally

---

[23]The Court employs the modified categorical approach to determine what the predicate
offense was, if, as here, the statutes is divisible, and the Court then uses the categorical approach
to determine if the offense is a crime of violence.  See United States v. Pam, 867 F.3d at 1203
(citing Descamps v. United States, 133 S. Ct. at 2281); United States v. Melgar-Cabrera, 892 F.3d
at 1060.

> consider the particular facts disclosed by the record of conviction.  That is, we consider whether the elements of the offense are of the type that would justify its inclusion . . . [as a crime of violence], without inquiring into the specific conduct of this particular offender."

562 F.3d at 1107-08 (quoting United States v. West, 550 F.3d 952, 957 (10th Cir. 2008)(citations and quotations omitted)).

The Court looks next to the crime of conviction: § 1951(a) makes it a crime to "obstruct[ ], delay[ ], or affect[ ] commerce . . . by robbery . . . or attempts or conspires so to do . . . ."  18 U.S.C. § 1951(a).  As the Court concluded in its MOO, "§ 1951(a) provides for at least three separate robbery offenses: robbery, attempted robbery, or conspiracy to commit robbery."  MOO, 2020 WL 4336361, at *13.  Section 1951(b)(1) defines the term "robbery" as follows:

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b).  Substantive Hobbs Act robbery, § 1951(b)(1), is a crime of violence pursuant to § 924(c)(3)(A), because substantive Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).  See United States v. Melgar-Cabrera, 892 F.3d at 1060-66.  Accord United States v. Dominguez, 954 F.3d 1251, 1260 (9th Cir. 2020)(collecting cases and noting that "Hobbs Act robbery is a crime of violence under the elements clause. . . .  All of our sister circuits have considered this question too, and have held that Hobbs Act robbery is a crime of violence under the elements clause.").  Similarly, in its MOO, the Court finds that "aiding and abetting Hobbs Act robbery categorically qualifies as a crime of violence under § 924(c)(3)(A)."  2020 WL 4336361, at *15 (citing United States v. Richardson, 948 F.3d 733, 741-42 (6th Cir. 2020)).  In contrast,

"[c]onspiracy to commit Hobbs Act robbery . . . is not categorically a crime of violence."  2020

WL 4336361, at *15 (citing United States v. Brown, 942 F.3d 1069, 1075 (11th Cir. 2019); United

States v. Barrett, 937 F.3d 126, 130 (2d Cir. 2019)).  The Court explains in its MOO:

> Conspiracy to commit Hobbs Act robbery is not categorically a crime of violence
> for two reasons: (i) conspiracy to commit Hobbs Act robbery requires elements that
> substantive Hobbs Act robbery does not require, and does not necessarily require
> violence; and (ii) unlike attempted Hobbs Act robbery, conspiracy does not merge
> with the complete offense. Conspiracy to commit Hobbs Act robbery is not
> categorically a crime of violence, because a conspiracy's elements focus on a
> defendant's agreement to commit a crime but do not require proof of a violent act.
> Under § 1951(a), conspiracy to commit Hobbs Act robbery requires: (i) that two or
> more persons agreed to commit Hobbs Act robbery; (ii) the defendant knew the
> conspiracy's "essential objectives"; (iii) the defendant knowingly and voluntarily
> "took part in the conspiracy"; and (iv) "the conspirators were interdependent."
> United States v. Wright, 506 F.3d 1293, 1297-98 (10th Cir. 2007). Conspiracy to
> commit Hobbs Act robbery, therefore, "may manifest itself in any one of countless
> non-violent ways." Brown v. United States, 942 F.3d at 1075. Substantive Hobbs
> Act robbery, however, "can only be satisfied by violent force." United States v.
> Melgar-Cabrera, 892 F.3d at 1065. Similarly, substantive Hobbs Act robbery, and
> aiding and abetting or attempted Hobbs Act robbery, do not have as an element that
> the defendant and another agreed to commit Hobbs Act robbery. . . . "To be sure,
> these two offenses contain common elements; however, they are not the same.
> While the agreement of two people is necessary for conspiracy, it is not necessary
> for aiding and abetting." United States v. Buchanan, 830 F.2d at 149. Finally,
> unlike attempted Hobbs Act robbery -- the statute's other disjunctive robbery
> offense -- conspiracy does not merge with completed, substantive Hobbs Act
> robbery. See Iannelli v. United States, 420 U.S. at 777 (noting that "the conspiracy
> to commit an offense and the subsequent commission of that crime normally do not
> merge into a single punishable act").

MOO, 2020 WL 4336361, at *15.

Turning to the issue at hand, under § 1951(a), attempted Hobbs Act robbery requires that:

(i) the defendant intended to commit Hobbs Act robbery; and that (ii) the defendant took a

substantial step towards commission of Hobbs Act robbery.  See United States v. Cornelio-Pena,

435 F.3d 1279, 1286 (10th Cir. 2006); United States v. Wilson, 2020 WL 3966310, at *4 ("In order

to be guilty of an attempted Hobbs Act robbery, a defendant must intend to commit every element

of a Hobbs Act robbery and take a substantial step toward committing the crime."); Tenth Circuit,

Criminal Pattern Jury Instructions  1.32, 48 (2011)(Updated Feb. 2018); Model Penal Code § 5.01.

A substantial step is "an act that is strongly corroborative of the firmness of the defendant's

criminal intent." United States v. Haynes, 372 F.3d 1164, 1168 (10th Cir. 2004)(quoting United

States v. Prichard, 781 F.2d 179, 181 (10th Cir. 1986)).  The Tenth Circuit's Criminal Pattern Jury

Instructions define a substantial step as

> something beyond mere preparation.  A substantial step is an act which, in the ordinary and likely course of events, would lead to the commission of the particular crime.  The step must be a strong indication of the defendant's criminal intent, and must unequivocally mark the defendant's acts as criminal.  It should demonstrate commitment to the crime charged.

Tenth Circuit Criminal Pattern Jury Instructions 1.32, at 48 (2011)(Updated Feb. 2018).  See

United States v. Vigil, 506 F. Supp. 2d 544, 557 (D.N.M. 2007)(Browning, J.)(discussing attempt),

aff'd, 523 F.3d 1258 (10th Cir. 2008).[24]

Pursuant to the categorical approach, to determine whether the attempted Hobbs Act

robbery is a crime of violence, the Court examines the offense's elements.  See 18 U.S.C. §

---

[24]Another example of substantial steps that does not qualify as some type of use of force:

> The undisputed testimony . . . established that appellants intended to execute a successful bank robbery.  Moreover, [the defendants], in furtherance of their plan, took substantial steps that strongly corroborated their criminal intent.  They reconnoitered the bank, discussed (on tape) their plan of attack, armed themselves and stole ski masks and surgical gloves.  The getaway car was carefully prepared for destruction.  As [one of the defendants] moved ominously toward the bank and [the other defendant] uttered a verbal signal to his accomplices, a bank robbery was in progress.  A jury could properly find that preparation was long since completed.  All that stood between appellants and success was a group of F.B.I. agents and police officers.  Their timely intervention probably prevented not only a robbery but possible bloodshed in an area crowded with noontime shoppers.

United States v. Stallworth, 543 F.2d 1038, 1041 (2d Cir. 1976).

924(c)(3)(A); Mathis v. United States, 136 S. Ct. at 2248.  The Court "must compare the scope of conduct covered by the elements of the crime . . . with" § 924(c)(3)(A)'s "definition of 'crime of violence.'" United States v. O'Connor, 874 F.3d at 1147, 1151.  The Court must ask whether the conviction can stand if it rests on the "least of the acts criminalized." Moncrieffe v. Holder, 569 U.S. 184, 190-91 (2013)(quoting Johnson, 559 U.S. at 137)(alteration omitted).  See United States v. Winder, 926 F.3d 1251, 1254 (10th Cir. 2019); United States v. Bowen, 936 F.3d 1091, 1103 (10th Cir. 2019)(concluding that "witness retaliation convictions do not qualify as crimes of violence," "because we must presume that [the defendant's] witness retaliation convictions rested upon the least of the acts criminalized . . .").  The Court "follows the Supreme Court's instruction that there must be 'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence." United States v.Melgar-Cabrera, 892 F.3d at 1061 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193  (2007)).

Under § 1951(a), attempted Hobbs Act robbery has two elements: (i) the intent to commit substantive Hobbs Act robbery; and (ii) taking a substantial step towards commission of substantive Hobbs Act robbery.  See United States v. Cornelio-Pena, 435 F.3d at 1286; United States v. Wilson, 2020 WL 3966310, at *4.  Neither of these two elements satisfies § 924(c)(3)(A), because neither element necessarily requires "the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  First, although substantive Hobbs Act robbery is crime of violence, see United States v. Melgar-Cabrera, 892 F.3d at 1060-66, the intent to commit substantive Hobbs Act robbery, is not itself a crime of violence, see Stanley v. Georgia, 394 U.S. 557, 566 (1969)(noting that the government "cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts"); United States v. Balsys, 524 U.S. 666, 713-14 (1998)(Breyer, J., dissenting)("[T]he First

Amendment protects against the prosecution of thought crime.").[25]  The first element, therefore, cannot qualify attempted Hobbs Act robbery as a crime of violence.   Second, although a substantive step towards the commission of substantive Hobbs Act robbery can include some use of physical force -- e.g., threatening a person with a knife or gun, but failing to complete the robbery -- a substantive step does not necessarily require "the use, attempted use, or threatened use of physical force."  18 U.S.C. § 924(c)(3)(A).  If the Court considers the "least of the acts criminalized," Moncrieffe v. Holder, 569 U.S. at 190-91,  there is "'a realistic probability,'" United States v. Melgar-Cabrera, 892 F.3d at 1061 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. at 193), that a person can take several substantial steps that fail to meet § 924(c)(3)(A)'s requirements.  For example, a person can plan a robbery, buy a knife or some other weapon, conduct reconnaissance of a bank, store, or home to be robbed, and drive to the location.  As long as the person does not "use, attempt[] [to] use, or threaten[] . . . physical force" in his or her attempt to commit robbery, however, the conduct does not run afoul of § 924(c)(A)(3).  Attempted Hobbs Act robbery, therefore, "may manifest itself in any one of countless non-violent ways."  Brown v. United States, 942 F.3d at 1075.[26]  Applying the "least of the acts criminalized,"  Moncrieffe v.

---

[25] Blackstone has said that:

[A] fixed design or will to do an unlawful act is almost as heinous as the commission of it, yet, as no temporal tribunal can search the heart, or fathom the intentions of the mind, otherwise than as they are demonstrated by outward actions, it therefore cannot punish for what it cannot know.

4 William Blackstone, Commentaries *21.

[26] Judge Nguyen provides a useful illustration:

Attempted Hobbs Act robbery is not a crime of violence because a substantial step toward completing a Hobbs Act robbery need not involve the use, attempted use, or threatened use of physical force.  Compare three examples:

Holder, 569 U.S. at 190-91, test to attempted Hobbs Act robbery's two elements, demonstrates that the offense does not categorically constitute a crime of violence, see Lofton v. United States, CIV. No. 6:16-CV-06324-MAT, 2020 WL 362348, at *9 (W.D.N.Y. Jan. 22, 2020)(Telesca, J.)(discussing two cases where "none of the actions [by the defendants] were found to constitute a substantial step toward committing Hobbs' Act robbery entailed the use, threatened use, or attempted use of force")(citing United States v. Paris, 578 F. App'x 146, 147 (3d Cir. 2014)(unpublished); United States v. Gonzalez, 441 F. App'x 31 (2d Cir. 2011)); United States v. Holland, 503 F. App'x 737, 743 (11th Cir. 2013)(holding that "sufficient evidence supports [the

---

1.      A man stops an armored vehicle and shoots and injures the driver. But the driver escapes with the money.

2.      A man intercepts an armored vehicle by standing in front of it with his gun pointed at the driver.  He pulls the trigger, intending to strike and injure the driver, but the gun jams.  The driver escapes with the money.

3.      A man plans a robbery, buys the necessary gear, and drives toward the target, but returns home after seeing police in the vicinity.

Each scenario describes an attempted Hobbs Act robbery.  In (1), the man uses physical force.  In (2), the man attempts to use physical force.  In (3), the man does not use, attempt to use, or threaten to use physical force, even though he intended to commit a robbery and took a substantial step toward committing it.  This last scenario -- a possible "least serious form" of attempted Hobbs Act robbery -- shows that an attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause.

United States v. Dominguez, 954 F.3d at 1263-64 (Nguyen, J., concurring and dissenting in part)(footnote omitted).  The Fourth Circuit provided another example: A person

may case the store that he intends to rob, discuss plans with a coconspirator, and buy weapons to complete the job.  But none of this conduct involves an attempt to use physical force, nor does it involve the use of physical force or the threatened use of physical force.  In these circumstances, the defendant has merely taken nonviolent substantial steps toward threatening to use physical force.  The plain text of § 924(c)(3)(A) does not embrace such activity.

United States v. Taylor, No. 19-7616, 2020 WL 6053317, at *4.

defendant's] convictions for conspiracy and attempt to commit a Hobbs Act robbery," where the defendant was arrested when he arrived at the planned location of robbery); United States v. Villegas, 655 F.3d 662, 668-69 (7th Cir. 2011)(concluding that sufficient evidence supported a conviction for attempted Hobbs Act robbery conviction where defendant had discussed robbery plans with co-defendant, arrived at pre-arranged meeting place, obtained get-away equipment, and discussed using a gun); United States v. Stallworth, 543 F.2d 1038, 1041 (2d Cir. 1976)(upholding an attempted bank robbery conviction where the defendants "reconnoitered the bank, discussed (on tape) their plan of attack, armed themselves and stole ski masks and surgical gloves," prepared a getaway car, and "moved ominously toward the bank" before being arrested).

   The Court declines to follow the lead of the Seventh, Ninth, and Eleventh Circuits, because none of these courts apply the categorical approach by examining each element of attempted Hobbs Act robbery.  See United States v. Ingram, 947 F.3d at 1026; United States v. Dominguez, 954 F.3d at 1255; United States v. St. Hubert, 909 F.3d at 351-53.  As the Fourth Circuit explains, "those courts adopt the . . . flawed premise . . . that an attempt to commit a 'crime of violence' necessarily constitutes an attempt to use physical force."  United States v. Taylor, 2020 WL 6053317, at *4.  See United States v. Dominguez, 954 F.3d at 1264 (Nguyen, J., concurring and dissenting in part)("Nowhere in its opinion does the majority apply the categorical approach to attempted Hobbs Act robbery.").  For instance, the majority in United States v. Dominguez argues, without examining the elements of intent, that, "[a] criminal who specifically intends to use violence, and then takes a substantial step toward that use, has, by definition, attempted a violent crime, albeit an uncompleted one."  954 F.3d at 1262.  The Court agrees with this statement, but under the categorical approach, "attempt[ing] a violent crime," is not necessarily a "crime of violence" under the text of § 924(c) if the elements of attempt do not include some physical force.

18 U.S.C. § 924(c)(3)(A).  The confusion arises from § 924(c)(A)(3)'s definition of "crime of violence," which means an offense "has as an element . . . attempted use . . . of physical force." This definition does not mean that every attempt of a violent crime is a "crime of violence," because the categorical approach still requires the court to look at the elements of attempt.  See Mathis v. United States, 136 S. Ct. at 2248; United States v. O'Connor, 874 F.3d at 1147, 1151 (instructing the Court to "compare the scope of conduct covered by the elements of the crime . . . with" § 924(c)(3)(A)'s "definition of 'crime of violence'")(quoting 18 U.S.C. § 924(c)(3)(A)). Moreover, even where a person intends to commit a crime of violence, and has the intent to commit every element of that crime, there are "countless non-violent ways," Brown v. United States, 942 F.3d at 1075, for a person to take a substantial step in an attempt to commit the violent offense, see United States v. Tucker, 2020 WL 93951, at *6 (E.D.N.Y. Jan. 8, 2020)(Johnson, J.)(stating that "an absolute rule (i.e., that an attempt to commit any violent crime will necessarily be itself a violent crime)" would be "at odds with the requirements of the categorical analysis in which the a court must examine the minimum criminal conduct necessary for conviction under a particular statute")(quotation omitted)(emphasis in the original).

The Court concludes that attempted Hobbs Act robbery, like conspiracy to commit Hobbs Act robbery, is not a crime of violence under § 924(c)(3)(A).  The Court's conclusion is of no aid to Eccleston, however, because the Court has concluded in its MOO that Eccleston was convicted of substantive Hobbs Act robbery.  See 2020 WL 4336361, at *16-20.

## IV.   ECCLESTON WAS CONVICTED OF SUBSTANTIVE HOBBS ACT ROBBERY, WHICH IS A CRIME OF VIOLENCE.

Eccleston argues that the Court erred in relying on the factual basis in the Plea Hearing colloquy and in the PSR when the Court determines that Eccleston was convicted of substantive

Hobbs Act robbery.  See Motion to Reconsider at 21; Reply to Motion to Reconsider at 7. Eccleston contends that, "[w]ithout engaging in fact-finding, it is impossible to determine if Mr. Eccleston pled guilty to substantive Hobbs Act robbery or attempted Hobbs Act robbery."  Motion to Reconsider at 21.  Eccleston acknowledges, however, that the Court is allowed to use the modified categorical approach to "'to try to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.'"  Motion to Reconsider at 21-22 (quoting Descamps v. United States, 570 U.S. 254, 269 (2013)).  Eccleston does not show that the Court considered documents that are off limits to determine "which of the statute's alternative [crimes] formed the basis of the prior conviction."  United States v. Titties, 852 F.3d at 1266.

Where a statute is divisible, as § 1951(a) is, "the modified approach serves -- and serves solely -- as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." Mathis v. United States, 136 S. Ct. at 2253.  "The modified categorical approach allows a court to peer around the statute of conviction and examine certain record documents underlying the defendant's prior offense[.]"  United States v. Titties, 852 F.3d at 1266.  Courts may "consult[ ] the trial record -- including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms."  Johnson v. United States, 559 U.S. at 144. "Although the record may reveal factual details of the offense, '[a] court may use the modified approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction.'"  United States v. Titties, 852 F.3d at 1266 (quoting Descamps v. United States, 133 S. Ct. at 2293).[27]

---

[27]Eccleston cites to State v. Loveless, 232 P.3d 510 (Utah 2010), for the proposition that the Court should not look to a defendant's indictment that presents charges in the conjunctive,

In its MOO, the Court consults the Indictment and the Plea agreement, and concludes that "the Indictment and the Plea Agreement's structure suggest strongly that Eccleston was charged with and admitted to substantive Hobbs Act robbery." 2020 WL 4336361, at *17; id at *18 ("The Record . . . supports that Eccleston was convicted of substantive Hobbs Act robbery."). The Court found that "the Indictment alleges substantive Hobbs Act robbery. The Indictment alleges that Eccleston 'did unlawfully take and obtain personal property' by means of 'actual and threatened force, violence, and fear of injury[.]'" 2020 WL 4336361, at *16 (quoting Indictment ¶ 5, at 3-4). Similarly, the Court found that Eccleston, in the Plea Agreement, "admits to substantive Hobbs Act robbery. Eccleston . . . refer[s] to . . . substantive Hobbs Act robbery's constituent elements." 2020 WL 4336361, at *17 (citing Plea Agreement § 7.c., at 4). The Court also found that in the PSR's acceptance of responsibility section, "Eccleston describes the elements of substantive Hobbs Act robbery[,] . . . because Eccleston discusses receiving Kuepers' property and fleeing . . . ." 2020 WL 4336361, at *17 (citing PSR ¶¶ 21-22, at 6). The Court likewise found that "[t]he Plea Hearing colloquy similarly refers specifically to substantive Hobbs Act robbery . . . ." 2020 WL 4336361, at *17. In sum, the Court looked only to the Indictment, the Plea Agreement, the PSR, and the Plea Hearing colloquy to determine what element of § 1951(a) formed the basis of Eccleston's conviction. See United States v. Titties, 852 F.3d at 1266. In its MOO, the Court explains,

> [a]lthough the Indictment includes factual allegations, the Court looks at the Indictment to determine whether it alleges substantive Hobbs Act robbery's

---

because the government should narrow down the defendant's charges prior to the plea agreement. See Motion to Reconsider at 27-28. As a state court case, however, State v. Loveless does not deal with the issues applicable here, namely the suitability of indictments, plea colloquies, or other "comparable judicial record[s]," Shepard v. United States, 544 U.S. 13, 26 (2005), for the purposes of modified categorical approach.

elements.  Similarly, although the Plea Agreement, the Plea Hearing, and the PSR all refer to the facts of Eccleston's offense, the Court looks at the record "only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction."  United States v. Titties, 852 F.3d at 1266.  The Court looks at the record to determine whether Eccleston "necessarily admitted" to the elements of substantive Hobbs Act robbery.  Shepard v. United States, 544 U.S. at 26.

2020 WL 4336361, at *19.  See  United States v. Marcia-Acosta, 780 F.3d 1244, 1251 (9th Cir. 2015)(noting that "sentencing courts' review of plea colloquies or other comparable judicial records for modified categorical approach purposes must be appropriately circumscribed to identify the elements pled to, not the underlying facts" (quotations and alterations omitted)).

Eccleston argues that the Plea Hearing colloquy could refer to attempted Hobbs Act robbery, and that he did not admit to carrying away any possessions.  See Motion to Reconsider a 24.  The record is to the contrary; as the Court stated in its MOO, the sentencing judge,

> Judge Hansen[,] . . . asked Eccleston if he "did take, then, the personal property from the two people at the second motel?"  Plea Tr. at 13:19-20 (Hansen, J.).  Eccleston responded affirmatively.  See Plea Tr. at 13:22 (Eccleston).  In this exchange, . . . [b]oth Judge Hansen and Eccleston refer to substantive Hobbs Act robbery.

2020 WL 4336361, at *18.  There is no indication that the Court relied on the Plea Hearing colloquy's underlying facts; rather, the Court looked to these documents only to "identify the elements pled to."  United States v. Marcia-Acosta, 780 F.3d at 1251.

Eccleston also challenges the Court's reliance on the PSR, contending that that a PSR cannot be used under the modified categorical approach if it based on police reports.  See Motion to Reconsider at 24 (citing United States v. Thrasher, 816 F. App'x 253, 258 (10th Cir. 2020)("[I]n order to rely solely on the PSR to determine the crime of conviction, the PSR must be derived from Shepard documents.")).  According to Shepard v. United States, 544 U.S. 13, 26 (2005), a court is limited to an examination of "the terms of the charging document, the terms of a plea agreement

or transcript of colloquy between judge and defendant in which the factual basis for the plea was

confirmed by the defendant, or to some comparable judicial record of this information."  In United

States v. Taylor, the Tenth Circuit remanded for resentencing, where

> [t]he PSR appears to have relied upon both police reports and "court documents."
> At sentencing the judge commented on the PSR and mentioned a report prepared
> by the probation office.  The record, however, does not tell us what these materials
> were and how they were documented.

413 F.3d 1146, 1157 (10th Cir. 2005).  Eccleston contends that that the PSR fails to provide sources

for most of its information, averring that:

> [m]uch of [PSR] information appears to be based on police reports and victims'
> description of the events, such as the portions about what the police officers were
> doing, see PSR ¶ 11, at 4, what a victim heard, see PSR ¶ 10, at 4, and how the
> victims felt about the crime, see PSR ¶ 17-18, at 5.

Motion to Reconsider at 25.  However, even if the sections that Eccleston cites to are based on

police reports, the Court did not rely on these sections of the PSR.  Instead, the Court relied on

sections in the PSR that do not reference facts from police reports; namely Eccleston's acceptance

of responsibility statement and the section describing the base level offense for Count V:

> The PSR refers to Count V as "Interference with Commerce by Threat of Violence"
> and applies U.S.S.G. § 2B3.1 (1995) to calculate a base offense level of 20 for
> Count V.  PSR ¶ 33, at 8.  See PSR ¶ 24, at 6 (providing that the USPO used the
> 1995 edition of the Guidelines).  The PSR includes Eccleston's statement in which
> he accepts responsibility.  See PSR ¶¶ 20-23, at 6.  In this statement, Eccleston
> describes the elements of substantive Hobbs Act robbery rather than of conspiracy
> to commit Hobbs Act robbery, because Eccleston discusses receiving Kuepers'
> property and fleeing, and not any agreement with Martinez to do these things.  See
> PSR ¶¶ 21-22, at 6.

MOO, 2020 WL 4336361, at *17.  Eccleston points to no impermissible basis for relying on these

sections of the PSR, see United v. Taylor, 413 F.3d at 1157, and even if the Court improperly

relied on the PSR, the Indictment, the Plea Agreement, and the Plea Hearing contain sufficient

evidence that Eccleston was convicted of substantive Hobbs Act robbery.  See MOO, 2020 WL

4336361, at *19.  The Court concludes that it did not err in relying on the factual basis presented in the plea colloquy and the PSR to determine "the elements [Eccleston] pled to."  United States v. Marcia-Acosta, 780 F.3d at 1251.

## V.   JURISTS OF REASON WOULD NOT DISAGREE WITH THE COURT'S RESOLUTION OF ECCLESTON'S CONSTITUTIONAL CLAIMS; THE COURT, THEREFORE, DENIES ECCLESTON'S REQUEST FOR A CERTIFICATE OF APPEALABILITY.

The Court denies Eccleston's request for a certificate of appealability, because "reasonable jurists would [not] find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); Castillo v. Attorney Gen. of New Mexico, 325 F. Supp. 3d 1222, 1226 (D.N.M. 2018)(Browning, J.).  Eccleston raises four possible certificate of appealability issues:

> [i]   The issue of the proper burden of proof in establishing what offense Mr. Eccleston pled guilty to.
>
> [ii]   The issue of whether the categorical approach should have been employed.
>
> [iii]   The issue of whether Count V of the indictment alleged (in whole or in part) conspiracy to commit robbery under the Hobbs Act, and whether conspiracy to commit robbery under that Act is a crime of violence.
>
> [iv]   The issue of whether Count V of the indictment alleged (in whole or in part) attempted robbery under the Hobbs Act, and whether attempted robbery under that Act is a crime of violence.

Motion to Reconsider at 30.  As to the first issue, in his Motion to Reconsider, Eccleston argues the two residual clauses which Johnson and Davis invalidated are distinguishable, meaning the Court should not apply the law related to the burden of proof interchangeably.  See Motion to Reconsider at 6-9.  Although, Eccleston cites several district court decisions distinguishing the two residual clauses, see Motion to Reconsider at 6-7, these decisions are no longer applicable in light of  Sessions v. Dimaya, 138 S. Ct. at 1210, and United States v. Salas, 889 F.3d at 684.  It is appropriate, therefore, to treat the Johnson and Davis residual clauses interchangeably, and the

Court concludes that a reasonable jurist would not debate Eccleston's constitutional claim under this theory.

Second, the Tenth Circuit states that the Hobbs Act, § 1951(a), contrary to Eccleston's claim, is divisible, see United States v. O'Connor, 874 F.3d 1147, 1152 (10th Cir. 2017)("The Hobbs Act . . . is a divisible statute setting out two separate crimes -- Hobbs Act robbery and Hobbs Act extortion."); therefore, the Court concludes that a reasonable jurist would not debate Eccleston's constitutional claim under this theory, see also United States v. Dubarry, 741 F. App'x 568, 570 (10th Cir. 2018)(citing United States v. O'Connor, 874 F.3d at 1152, for the proposition that the Hobbs Act is divisible); Wiseman v. United States, No. 16-CV-00700-JAP/KRS, 2018 WL 3621022, at *3 (D.N.M. July 27, 2018)(Parker, J.)(same); United States v. Smith, No. 10-CR-00612-CMA, 2017 WL 5900362, at *3 (D. Colo. Nov. 30, 2017)(Arguello, J.)(same).

As to the third and fourth issues, the Court concludes in its MOO that Eccleston was convicted of substantive Hobbs Act robbery. See 2020 WL 4336361, at *16-20. The record -- the Indictment, the Plea Agreement, the Plea Hearing Colloquy, and the PSR -- does not support Eccleston's contention that he was convicted of either conspiracy to commit Hobbs Act robbery or attempted Hobbs Act robbery; instead, the record supports the Court's conclusion that Eccleston was convicted of substantive Hobbs Act robbery. See 2020 WL 4336361, at *18. No reasonable jurist would disagree about this factual record. Furthermore, in his Motion to Vacate, Eccleston conceded that attempted Hobbs Act robbery is a crime of violence. See Reply to Motion to Reconsider at 2. Because Eccleston was convicted of substantive Hobbs Act robbery, the Court need not resolve whether either conspiracy to commit Hobbs Act robbery or attempted Hobbs Act robbery are crimes of violence under§ 924(c), even if there is a Court of Appeals split whether attempted Hobbs Act robbery is a crime of violence under § 924(c). Moreover, the Tenth Circuit

should not need to reach these issues to decide Eccleston's motion, thus reasonable jurists would not disagree about these issues needed to deny Eccleston's motions. The Court, therefore, denies Eccleston's request for a certificate of appealability as to the third and fourth issues.[28]

   **IT IS ORDERED** that: the Court will deny: (i) the Defendant's Motion for Rehearing, filed August 17, 2020 (CIV. Doc. 41); (ii) the Defendant's Motion for Rehearing Addendum, filed August 17, 2020 (CIV. Doc. 40); (iii) the Defendant's Motion for Addendum to Motion for Rehearing, filed August 25, 2020 (CIV. Doc. 42); (iv) the Defendant's Motion to Alter or Amend the Judgment and, in the Alternative, for a Certificate Of Appealability, filed August 25, 2020 (CIV. Doc. 43); (v) the Defendant's Addendum to Motion for Rehearing 2255, filed August 31, 2020 (CIV. Doc. 49); and (vi) the Defendant's Addendum to Motion for Rehearing Pursuant to Rule 59(e), filed August 31, 2020 (CIV. Doc. 50).

_____
UNITED STATES DISTRICT JUDGE

---

[28]Eccleston also filed a pro se Application for Issuance of a Certificate of Appealability, raising as an issue, whether the Court violates "the Tenth Amendment of the United States Constitution [by] imping[ing] upon the Sovereign authority of the State of New Mexico to regulate wholly local conduct," because "robbery and attempt and conspiracy [are] . . . purely local crimes that are under State authority and jurisdiction not federal." Application for Issuance of a Certificate of Appealability at 1-3. Congress may regulate robbery, attempted robbery, and conspiracy to commit robbery if they effect interstate commerce. Here, in the plea agreement, Eccleston admitted this element, and he has not provided evidence that his earlier concession is incorrect. Given that he carjacked cars and did so in hotel parking lots, there is strong evidence to support that Eccleston's actions effected interstate commerce. Because Eccleston has not shown how the Tenth Amendment prevents Congress from punishing his conduct, and he did not raise this issue in his Motion to Vacate, the Court also denies Eccleston's pro se request for certificate of appealability on this issue.

*Counsel:*

John C. Anderson
  United States Attorney
David M. Walsh
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Respondent/Plaintiff*

Carter B. Harrison, IV
Harrison & Hart, L.L.C.
Albuquerque, New Mexico

      *Attorney for the Petitioner/Defendant*